Joyce W. Lindauer
Texas State Bar No. 21555700
Paul B. Geilich
Texas State Bar No. 07792500
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, TX 75202
Telephone: (972) 503-4033
joyce@joycelindauer.com
paul@joycelindauer.com

Mark A. Larson
Larson Law Firm, LLC
1400 Main Street, Ste. 201D
Louisville, CO 80027
Telephone:303-228-9414
mark@larsonlawyer.com

ATTORNEYS FOR GALAXY CONSTRUCTION, LLC,
CREDITOR AND PLAN PROPONENT

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **CHEYENNE HOTEL INVESTMENTS, LLC,** | § | **CASE NO. 19-15473-KHT** |
| | § | Chapter 11 |
| | § | |
| Debtor. | § | |

## DISCLOSURE STATEMENT FOR CREDITOR'S
## PLAN OF REORGANIZATION DATED JUNE 24, 2020

## TABLE OF CONTENTS

ARTICLE I – INTRODUCTION ...................................................................................3

ARTICLE II - REPRESENTATIONS.......................................................................10

ARTICLE III - FINANCIAL PICTURE OF THE DEBTOR .......................................11

ARTICLE IV - ANALYSIS AND VALUATION OF PROPERTY...............................12

ARTICLE V- SUMMARY OF THE PLAN ...............................................................14

ARTICLE VI – PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS.........14

ARTICLE VII – MEANS FOR IMPLEMENTATION OF PLAN ...............................20

ARTICLE VIII – TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
    LEASES.............................................................................................................20

ARTICLE IX – FEASIBILITY OF PLAN…………………………………………………21

ARTICLE X – ALTERNATIVES TO CREDITOR'S PLAN…………………………….21

ARTICLE XI - RISKS TO CREDITORS UNDER CREDITOR'S PLAN ................................22

ARTICLE XII - TAX CONSEQUENCES TO THE DEBTOR....................................22

ARTICLE XIII - PENDING LITIGATION ................................................................25

ARTICLE XIV - SUMMARY OF SIGNIFICANT ORDERS ENTERED DURING
    THE CASE.........................................................................................................25

EXHIBITS

    Plan of Reorganization …………………………………….Exhibit A

    Monthly Operating Reports (last three, filed by Debtor) ….Exhibit B

    Projections …………………………………………………Exhibit C

# ARTICLE I
## INTRODUCTION

### Identity of the Debtor

**1.01**     Debtor filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. Section 101, et seq. ("Code") on June 26, 2019 in the United States Bankruptcy Court for the District of Colorado, initiating the above-styled and referenced bankruptcy proceeding. The Debtor is operating its business as Debtor-in-Possession pursuant to Sections 1107 and 1108 of the Code.

**Capitalized words in this Disclosure Statement shall have the meanings ascribed to them in the Creditor's Plan of Reorganization filed in this case.**

### Purpose of This Disclosure; Source of Information

**1.02     CREDITOR GALAXY CONSTRUCTION, LLC ("GALAXY OR PLAN PROPONENT")** submits this Disclosure Statement pursuant to Section 1125 of the Code to all known Claimants of Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for Creditors of, and the Members of, Debtor in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the Galaxy's Plan. A copy of the Plan is attached hereto as *Exhibit "A"* and incorporated herein by this reference. The Plan sets forth in detail the repayment arrangement between the Reorganized Debtor and its creditors. Under this Plan, Galaxy will make capital contributions to the Debtor in exchange for 100% of the equity interests in the Debtor. This Disclosure Statement describes the operations of the Reorganized Debtor contemplated under the Plan. Except as otherwise expressly indicated, the portions of this Disclosure Statement describing the Debtor, its business, properties and management, and the Plan have been prepared from information submitted to the Court by the Debtor.

### Explanation of Chapter 11

**1.03**     Chapter 11 is the principal reorganization chapter of the Code. Pursuant to Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders. Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case. A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor. After a plan of reorganization has been filed, it must be accepted by holders of claims against, or interests in, the debtor. Section 1125 of the Code requires full disclosure before solicitation of acceptances of a plan of reorganization. This Disclosure Statement is presented to Claimants to satisfy the requirements of Section 1125 of the Code.

### Explanation of the Process of Confirmation

**1.04**     Even if all Classes of Claims accept the plan, its confirmation may be refused by the Court. Section 1129 of the Code sets forth the requirements for confirmation and, among other things, requires that a plan of reorganization be in the best interests of Claimants. It generally

requires that the value to be distributed to Claimants and Equity Interest Holders may not be less than such parties would receive if the debtor were liquidated under Chapter 7 of the Code.

1.05     Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan.  Chapter 11 of the Code does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.  The plan, however, must be accepted by:  (i) at least the holder of one (1) class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting; or (ii) at least the holders of one (1) class of allowed interests by two-thirds (2/3) in amount of the allowed interests of such class actually voting.

1.06     The Court may confirm the plan even though less than all of the classes of claims and interests accept it.  The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

1.07     Confirmation makes the plan binding upon the Debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether they have accepted the plan.

### Voting Procedures

1.08     **Unimpaired Class**.  Administrative Claimants are not impaired under the Plan.

1.09     **Impaired Classes**.  The Class 1, 2, 3, 4, 6 and 7 Claimants and Equity Interest Holders are impaired as defined by Section 1124 of the Code.  Galaxy is seeking the acceptance of the Plan by Claimants in Classes 1, 2, 3, 4, 6 and 7.  Each holder of an Allowed Claim in Classes 1, 2, 3, 4, 6 and 7 may vote on the Plan by completing, dating and signing the ballot sent to each holder and filing the ballot as set forth below.  One ballot will be sent to each Claimant or Equity Interest Holder eligible to vote on the Plan.  For all Classes, the ballot must be returned to Galaxy's attorney, Joyce Lindauer, Attorney at Law, 1214 Main St., Suite 500, Dallas, Texas 75202. In order to be counted, ballots must be **RECEIVED** no later than at the time and on the date stated on the ballot.

1.10     **Acceptances**.  Ballots that are signed and returned but fail to indicate either an acceptance or rejection will not be counted.

### Best Interests of Creditors Test

1.11     Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.  If Section 1111(b)(2) of the Code applies to the claims of such class, each holder of a claim

of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.  In order for the Plan to be confirmed, the Court must determine that the Plan is in the best interests of the Debtor's creditors.  Accordingly, the proposed plan must provide the Debtor's creditors with more than they would receive in a Chapter 7 liquidation. Since the Plan proposes to pay all secured creditors in full on their allowed secured claims and the unsecured creditors a 5% dividend, Galaxy believes that the creditors are receiving more than they would receive in a Chapter 7 liquidation.   Accordingly, the Debtor believes that the Plan satisfies the requirements of Section 1129(a)(7).

### Cramdown

1.12     The Court may confirm the Plan even though less than all of the classes of claims and interests accept it.  The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.  Accordingly, Galaxy, as the plan proponent, requests the Court to determine that the Plan does not discriminate unfairly, and is fair and equitable with respect to any objecting creditor. A discussion of the specific requirements for Cramdown of a Plan are set forth starting below.

### Definition of Impairment

1.13     As set forth in section 1124 of the Bankruptcy Code, a class of claims or equity interests is impaired under a plan of reorganization unless, with respect to each claim or equity interest of such class, the plan:

> leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or equity interest; or

> notwithstanding any contractual provision or applicable law that entitles the holder of a claim or equity interest to demand or receive accelerated payment of such claim or equity interest after the occurrence of a default:

> cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; reinstates the maturity of such claim or interest as it existed before such default; compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law; and does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

### Classification and Treatment of Claims and Interests

1.14     The Plan classifies Claims separately in accordance with the Bankruptcy Code and provides different treatment for different classes of Claims.

1.15     Only holders of Allowed Claims are entitled to receive distributions under the Plan.

Allowed Claims are Claims that are not in dispute, are not contingent, are liquidated in amount, and are not subject to objection or estimation.  Initial distributions or other transfers of Cash or other consideration specified in the Plan otherwise available to the holders of Allowed Claims  will be made on the Effective Date, or (b) the date on which such Claim becomes an Allowed Claim), as otherwise provided in the Plan, or as may be ordered by the Bankruptcy Court.

**1.16**   In accordance with the Plan, unless otherwise provided in the Plan or the Confirmation Order, the treatment of any Claim under the Plan will be in full satisfaction, settlement, release, and discharge of and in exchange for each and every Claim.

### Requirements for Confirmation of the Plan

**1.17**   At the confirmation hearing, the Bankruptcy Court must determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan.  As set forth in section 1129 of the Bankruptcy Code, these requirements are as follows:

The plan complies with the applicable provisions of the Bankruptcy Code.

The proponents of the plan comply with the applicable provisions of the Bankruptcy Code.

The plan has been proposed in good faith and not by any means forbidden by law.

Any payment made or promised by the Debtor, by the plan proponents, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with, the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the Bankruptcy Court as reasonable.

The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Debtor under the plan; and (B) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider.

Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the Debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

With respect to each impaired class of claims or interests:

(i) each holder of a claim or interest of such class has (A) accepted the plan or (B) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated on such date under chapter 7 of the Bankruptcy Code on such date; or (ii) if section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, the holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

With respect to each class of claims or interests:

(i) such class has accepted the plan; or

(ii) such class is not impaired under the plan.

Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that:

(i) with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of the Bankruptcy Code, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(ii) with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), 507(a)(5) or 507(a)(6) of the Bankruptcy Code, each holder of a claim of such class will receive: (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

(iii) with respect to a claim of a kind specified in section 507(a)(7) of the Bankruptcy Code, the holder of a claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

If a class of claims is impaired under the plan, at least one class of claims that is impaired has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class.

Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the plan, have been paid or the plan provides for the payments of all such fees on the effective date of the plan.

The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114, at any time prior to confirmation of the plan, for the duration of the period the Debtor has obligated itself to provide such benefits.

Galaxy believes that the Plan satisfies all the statutory requirements of chapter 11 of the Bankruptcy Code, that Galaxy has complied with or will have complied with all the requirements of chapter 11, and that the Plan is proposed in good faith.

At the Confirmation Hearing, the Bankruptcy Court will determine whether holders of Allowed Claims or Allowed Equity Interests would receive greater distributions under the Plan than they would receive in a liquidation under chapter 7.

Galaxy believes that the feasibility requirement for confirmation of the Plan is satisfied by the fact that its contributions to the Debtor and the future operating revenues will be sufficient to satisfy the obligations under the Plan in addition to supporting sustainable growth of the enterprise.  These facts and others demonstrating the confirmability of the Plan will be shown at the Confirmation Hearing.

## **Cramdown**

1.18     The bankruptcy court may confirm a plan of reorganization even though fewer than all the classes of impaired claims and interests accept it.  For a plan of reorganization to be confirmed despite its rejection by a class of impaired claims or interests, the proponents of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or interests that has not accepted the plan.

1.19     "Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims.  As set forth in section 1129(b)(2) of the Bankruptcy Code, those meanings are as follows:

With respect to a class of secured claims, the plan provides:

(a)(i) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the Debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(ii)  that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective

date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(b)   for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subparagraph; or

(c)   the realization by such holders of the "indubitable equivalent" of such claims.

With respect to a class of unsecured claims, the plan provides(a) that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(b)   the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115 subject to the requirements that a) the value, as of effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or (b) the value of property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

With respect to a class of interests, the plan provides:

(a)   that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest; or

(b)   that the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

**1.20**   In the event that one or more classes of impaired Claims reject the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired class of Claims. BECAUSE THE EXISITING EQUITY INTERESTS IN THE DEBTOR ARE CANCELED UNDER THE PLAN, THE PLAN WILL NOT VIOLATE THE ABSOLUTE PRIORITY RULE. The absolute priority rule requires that prior to the Debtor retaining or receiving any non-exempt property the senior classes of claims must be paid in full or vote to accept the Plan.

Galaxy believes the Plan does not discriminate unfairly against, and is fair and equitable with respect to, each impaired class of Claims.

CREDITOR'S DISCLOSURE STATEMENT                                                    Page 9

## ARTICLE II
## <u>REPRESENTATIONS</u>

**2.01**    This Disclosure is provided pursuant to Section 1125 of the Code to all of the Debtor's known Creditors and other parties in interest in connection with the solicitation of acceptance of its Plan of reorganization, as amended or modified.  The purpose of this Disclosure is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of Claims, to make an informed judgment in exercising its rights either to accept or reject the Plan.

**2.02**    The information contained in this Disclosure has been derived from information submitted by the Debtor, unless specifically stated to be from other sources.

**2.03**    No representations concerning Galaxy are authorized by Galaxy other than those set forth in this Disclosure.  Galaxy recommends that any representation or inducement made to secure your acceptance or rejection of the Plan which is not contained in this Disclosure should not be relied upon by you in reaching your decision on how to vote on the Plan.  Any representation or inducement made to you not contained herein should be reported to the attorneys for Galaxy who shall deliver such information to the Court for such action as may be appropriate.

**2.04**    ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE COLORADO SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES.   IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE OR UPON THE MERITS OF THE PLAN.  ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

**2.05**    THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, GALAXY IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE.  THE APPROVAL BY THE COURT OF THIS DISCLOSURE DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

**2.06**    GALAXY BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE ACCEPTED.  CONSEQUENTLY, GALAXY URGES THAT CLAIMANTS VOTE FOR THE PLAN.

**2.07** GALAXY DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.   THE STATEMENTS CONTAINED IN THIS DISCLOSURE ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

## ARTICLE III
## FINANCIAL PICTURE OF THE DEBTOR

### Financial History and Background of the Debtor

**3.01**     The Debtor operates a 104-room hotel formerly flagged as a Homewood Suites by Hilton franchise located on real estate owned by the Debtor at 2875 Zeppelin Road, Colorado Springs, Colorado 80916 (the "Hotel").  It is located near the Colorado Springs Airport in a pocket of hotels.  The Hotel is in good condition, but is currently closed due to the effects of the coronavirus and COVID-19.

**3.02**     In the Schedules of Assets and Liabilities filed in the bankruptcy case, the Debtor lists assets with an aggregate value of $13,887,961.77 as of the Petition Date.  This amount consists of (i) real property in the amount of $12,800,000.00 **(Galaxy disagrees with this figure and believes the value  of the real property is approximately $3,500,000.00)**, (ii) cash and cash equivalents in the amount of $559,961.77 (of which $557,286.85 is stated as a reserve account at Berkadia Commercial Loan Servicing), (iii) accounts receivable in the amount of $0.00, (iv) equipment, furnishings, supplies, and fixtures in the amount of $325,000.00; (v) inventory in the amount of $3,000.00, and (vi) intellectual property in the amount of $200,000.00.  These values were supplied by the Debtor and the actual value of any given asset may be materially different than the amount provided by the Debtor.

In the Schedules of Assets and Liabilities, the Debtor lists aggregate liabilities in the amount of $7,216,615.77 as of the Petition Date.  The claim of Wells Fargo, N.A. is a Secured Claim and is the largest claim in this bankruptcy case.  Wells Fargo filed a Proof of Claim in the amount of $7,074,780.13.  For a complete listing and explanation of the Debtor's liabilities as of the Petition Date, parties should refer to the Schedules of Assets and Liabilities and any amendments thereto filed in this bankruptcy case.

### Current Operations

**3.03**     The Debtor's current operations are reflected in its monthly operating reports filed with the Court.  The last three monthly operating reports filed by the Debtor most accurately describe the Debtor's current operations, and are attached hereto as ***Exhibit "B"***.

### Future Income and Expenses Under the Plan

**3.04**    Galaxy's projections of plan payments is set forth on ***Exhibit "C"*** attached hereto. The Plan will be funded by Galaxy through cash capital contributions it will make to rehabilitate and re-open the Hotel and pay Creditors under the Plan, and by the profits Galaxy will earn through the resumption and continuation of the Debtor's hotel business. Under the Plan, the current equity interests in the Debtor will be cancelled and Galaxy will become the new 100% equity owner of the Debtor.

Future management of the Debtor shall consist of Galaxy and its Managing Member, Jagmohan Dhillon.

### Source of Information for Disclosure Statement

**3.05**    The source of information for this Disclosure Statement is the Debtor's court filings in this case.

### ARTICLE IV
### ANALYSIS AND VALUATION OF PROPERTY

### Real Property

**4.01**    As of the Petition Date, the Debtor owned the 104-room hotel formerly flagged as a Homewood Suites by Hilton franchise located on real estate owned by the Debtor at 2875 Zeppelin Road, Colorado Springs, Colorado 80916 (the "Hotel"). The Debtor scheduled the value of the Hotel as $12,800,000.00 but Galaxy believes the value is approximately $3,500,000.00.

### Personal Property

**4.02**    As of the Petition Date, the Debtor scheduled personal property described as follows:

| | |
|---|---|
| Cash on hand and in bank accounts* | $2,674.92 |
| Furniture, Fixtures and Equipment | $20,000.00 |
| Machinery and Equipment | $305,000.00 |
| Intellectual Property | $200,000.00 |
| Inventory | $3000.00 |
| **Total Personal Property** | **$530,674.92** |

*Does not include $557,286.85 Berkadia reserve account scheduled by the Debtor.

This Analysis is based on the Debtor's opinion of the value of its assets as stated in the Debtor's Schedules.  Galaxy is unaware of any current appraisals of the assets.

## Liquidation Analysis

Taking into account the priority and nonpriority unsecured claims in this case, based on the above analysis a Chapter 7 liquidation would pay nothing to unsecured claims:

## Liabilities

| | | |
|---|---|---|
| Administrative Expenses and UST Fees | | $20,000.00[1] |
| Class 1 | Priority Claim of IRS | $0.00[2] |
| Class 2 | Priority Claim of Colorado Dept. of Rev. | $0.00[2] |
| Class 3 | Priority Claim of El Paso County Treasurer | $162,535.97[3] |
| Class 4 | Secured Claim of Well Fargo | $3,500,000.00[4] |
| Class 5 | Secured Claim of U.S. Bank | $0.00[5] |
| Class 6 | Unsecured Claims | $4,489,141.77[6] |
| Class 7 | Equity Interests | $0.00 |

**Total Liabilities**        **$ 8,171,677.74**

## Assets

| | |
|---|---|
| Real Property | $3,500,000.00[7] |
| Cash on hand and in bank accounts | $2,674.92[8] |
| Furniture, Fixtures and Equipment | $20,000.00[9] |
| Machinery and Equipment | $305,000.00[9] |
| Intellectual Property | $200,000.00[9] |
| Inventory | $3000.00[9] |
| **Total Assets** | **$4,030,674.92** |
| **Less Costs of Sale (20%)** | **$806,134.98** |

**Total Assets less costs of sale**        **$3,224,539.94**

**TOTAL ASSETS LESS TOTAL LIABILITIES**        **-$4,947,137.80**

- **Plan pays 100% to Allowed Secured Claims.**

---

[1] Galaxy's estimate.

[2] The Debtor scheduled the claims of the IRS and Colorado Dept. of Revenue in an unknown and unliquidated amount. The IRS and Colorado Dept. of Revenue have not filed proofs of claims sin the case.  Galaxy is not aware of any such priority tax claims.

[3] The Debtor scheduled the claim of the El Paso County Treasurer in an unknown and unliquidated amount. However, based on Galaxy's investigation of the tax records the claim amount is $162,535.97.

[4] This is the secured portion of Wells Fargo's claim, in Galaxy's opinion.

[5] U.S. Bank filed an allegedly fully secured second lien claim in the amount of $624,399.15. Galaxy believes U.S. Bank would receive nothing on its secured claim in a liquidation because the value of the real property is inadequate to fully cover the first lien claim of Wells Fargo.

[6] Consisting of the unsecured portion of Wells Fargo's claim ($3,574,780.13, in Galaxy's opinion), all of U.S. Bank's claim ($624,399.15), and the unsecured claims as scheduled by the Debtor ($289,962.49).

[7] This is Galaxy's opinion of value.  The Debtor scheduled the real property at $12,800,000.00.

[8] Does not include $557,286.85 Berkadia reserve account as scheduled by the Debtor.

[9] As scheduled by the Debtor.

- **Plan pays 5% to Allowed Unsecured Claims.**
- **In a Chapter 7 Liquidation Unsecured Creditors would receive $0.00.**
-

## ARTICLE V
## SUMMARY OF THE PLAN

Galaxy designates the following Classes of Claims and Interests pursuant to Bankruptcy Code Section 1123. The Debtor shall pay all fees assessed by the Office of the United States Trustee until this Case is closed by the Court or the Debtor is otherwise released from such obligations by the Court.

4.01    **Class 1** consists of any Allowed Priority Tax Claims of the Internal Revenue Service.

4.02    **Class 2** consists of any Allowed Priority Tax Claims of the Colorado Department of Revenue.

4.03    **Class 3** consists of any Allowed Priority Tax Claims of the El Paso County Treasurer.

4.04    **Class 4** consists of the Allowed Secured Claim of Well Fargo Bank.

4.05    **Class 5** consists of the Allowed Secured Claim of U.S. Bank.

4.06    **Class 6** consists of the Allowed Unsecured Claims of Unsecured Creditors.

4.07    **Class 7** consists of the Allowed Interests of Equity Interest Holders.


## ARTICLE VI
## PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS

The Claims and Interests classified in Article IV hereof shall be treated in the manner set forth in this Article V.

5.01    **Administrative Claims**.    Each holder of an Administrative Claim other than Professional Fee Administrative Claims shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which the Debtor and such holder shall have agreed upon in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.  On or before the Effective Date, the Debtor shall pay or have paid in full all Allowed Administrative Claims.   All Allowed Administrative Claims shall be paid by the Reorganized Debtor when they are due until the Bankruptcy Case is closed pursuant to a final decree, order of dismissal, or order of conversion.

Until entry of such an order, the Reorganized Debtor shall file with the Bankruptcy Court and serve upon the United States Trustee a quarterly financial report. Any administrative ad valorem tax claims shall be paid pursuant to otherwise applicable state law.

**5.02** **Professional Fee Administrative Claims.** All persons that are awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with sections 330 or 331 of the Bankruptcy Code or entitled to the priorities established pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code, shall be paid in full, in Cash, the amounts allowed by the Bankruptcy Court on or as soon as reasonably practicable following the later of the Effective Date or the date on which the order allowing such Claim becomes a Final Order, or upon such other terms as may be mutually agreed upon between such holder of an Allowed Professional Fee Claim and the Reorganized Debtor.

**5.03** **Class 1: Allowed Priority Claim of the Internal Revenue Service**

Class 1 shall consist of the Allowed Priority Unsecured Claim of the Internal Revenue Service ("IRS"). The Debtor scheduled this Claim in an unknown, unliquidated amount. The IRS has not filed a proof of claim in the case and Galaxy, therefore, estimates the amount of the Class 1 Claim to be zero. In the event the IRS is allowed a Claim in this Class it will be paid as follows:

a. The Class 1 Claim shall be paid in full over sixty (60) months from the Effective Date at an interest rate of 4.21% per annum (calculated pursuant to 26 U.S.C. 6621 as the current Federal Short Term Rate of 1.21% plus 3%). Payments shall commence on the first day of the month following the Effective Date and continue on the first day of each month thereafter until paid in full.

b. Events of Default for IRS. The occurrence of any of the following shall constitute an event of default under the Plan:

1. Failure to Make Payments. Failure on the part of Debtor to pay fully when due any payment required to be made in respect of the Plan debt. Upon any default under the Plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code. As to the IRS:

(A) If the Debtor or its successor in interest fails to make any plan payment, or deposits of any currently accruing employment or sales tax liability; or fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the Debtor or their successor in interest failed to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default.

(B)   If the United States declares the Debtor or the successor in interest to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately upon written demand to the Debtor or the successor in interest.

(C)   If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send two notices of default, and upon the third event of Default, the IRS may proceed to collect on all amounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor. The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan.

(D)   The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the Plan and as set forth above.

The Class 1 Claim is Impaired.

### 5.04   Class 2: Allowed Priority Claim of Colorado Department of Revenue ("CDOR")

Class 2 shall consist of the Allowed Priority Claim of the Colorado Department of Revenue for accrued state tax. The Debtor scheduled this Claim in an unknown, unliquidated amount. CDOR has not filed a proof of claim in the case. Galaxy, therefore, estimates the amount of the Class 2 Claim to be zero. In the event the CDOR is allowed a Claim in this Class it will be paid as follows:

a.   Impairment and Voting. Class 2 is impaired by the Plan.

b.   Treatment. The Class 2 Claim of the CDOR shall be paid in full over 24 months from the Effective Date at an annual interest rate of five percent (5%) plus one-half percent (½%) for each full or partial month the tax remains unpaid, not to exceed a total of twelve percent (12%). Payments shall commence on the first day of the month following the Effective Date and continue on the first day of each month thereafter until paid in full.

Events of Default. The Debtor shall timely and fully make all payments due to CDOR under the Plan. The Debtor shall timely file all tax returns due to CDOR for the duration of the Plan, and shall timely and fully pay all taxes reflected as due on such returns. If

the Reorganized Debtor fails to perform these duties, that failure shall be an event of default. In the event of Default, CDOR agrees to provide the Debtor with a ten (10) day Notice of Default and Opportunity to Cure. If the Debtor fails to cure the default within the cure period, CDOR shall be entitled to initiate collection of the entire balance due from the Debtor at the time of default without the necessity of petitioning the Court for relief. The Reorganized Debtor shall have the opportunity to cure two (2) times over the life of the plan. In the event of a third (3rd) default, CDOR shall be entitled to proceed with all available state law collection remedies without further notice to the Debtor.

The Class 2 Claim is Impaired and the holder of the Class 2 Claim, if any, is entitled to vote to accept or reject the Plan.

### 5.05    Class 3: Allowed Priority Claim of El Paso County Treasurer

Class 3 shall consist of the Allowed Priority Claim of the El Paso County Treasurer in the estimated amount of $162,535.97.

a.   Impairment and Voting. Class 3 is impaired by the Plan.

b.   Treatment. The Class 3 Claim of the El Paso County Treasurer shall be paid in full over 24 months from the Effective Date at an interest rate of 1.0 % per month on the taxes remaining outstanding at the beginning of each month. Payments shall commence on the first day of the month following the Effective Date and continue on the first day of each month thereafter until paid in full.

c.   Events of Default. A failure by the reorganized Debtor to make a payment to the El Paso County Treasurer pursuant to the terms of the Plan shall be an Event of Default. If the reorganized Debtor fails to cure an Event of Default as to such payments within ten (10) days after receipt of written notice of default from El Paso County Treasurer, then the El Paso County Treasurer may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the El Paso County Treasurer may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court. The Reorganized Debtor shall have the opportunity to cure two (2) times over the life of the plan. In the event of the third default, the El Paso County Treasurer may proceed with the state law remedies for collection of all amounts due under state law.

The Class 3 Claim is Impaired.

### 5.06    Class 4: Allowed Secured Claim of Wells Fargo Bank, N.A.

This claim of Wells Fargo shall be treated once allowed as follows:

a.      Wells Fargo filed an allegedly fully secured claim in the amount of $7,074,780.13

(the "Wells Fargo Claim").

b.  Galaxy's opinion of the value of Wells Fargo's Collateral (as described below) is $3,500,000.00. To the extent the Wells Fargo Claim is partially unsecured, the Claim shall be bifurcated into a Class 4 Secured Claim allowed in the amount $3,500,000 and a Class 6 Unsecured Claim allowed in the amount of $3,574,780.13, pursuant to 11 U.S.C. Sec. 506(d).

c.  To the extent a Class 4 Claim is allowed, it shall be amortized over twenty (20) years, bearing interest at the rate of 5.25% per annum.  Monthly payments of both principal and interest shall be made on the Claim beginning on the first day of the first month following confirmation of the Plan, and on the first day of each month thereafter. The Claim shall be due and payable in full upon the expiration of one year from the Effective Date, at which time the Debtor shall refinance the debt with Wells Fargo or another lender. These terms shall be referred to herein as the "Note Modification."

d.  If the Reorganized Debtor fails to cure an Event of Default as to such payments within ten (10) days after receipt of written notice of default from Wells Fargo, then Wells Fargo may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies it may have by agreement or under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.

e.  Wells Fargo Bank, N.A. shall continue to be properly perfected and secured for an Allowed Secured Claim on the Debtor's real and personal property as described in its loan documents and financing statements (the "Collateral"), in the amount of $3,500,000.00.  Without further filings, Wells Fargo Bank, N.A shall retain a first priority mortgage interest and a first priority security interest in the Collateral.

f.  If there is a non-monetary default under the terms of the treatment of the Claim in this Plan or under the loan documents, the Debtor has ten (10) consecutive days to cure the default after notice by Wells Fargo.  If the non-monetary default is not timely cured, Wells Fargo Bank, N.A. is entitled to exercise all of its rights and remedies under the loan documents.

g.  There shall be no prepayment penalty if this Claim is paid early.

h.  The obligations under the Note Modification shall commence as of the Effective Date.

i.  Should this Section of the Plan for treatment of Wells Fargo Bank's Allowed Secured Claim contradict any other provision in the Plan, the provisions of this Section shall control.

j.  All terms of the loan documents not otherwise modified in this Section shall remain in full force and effect.

This Claim is Impaired and the holder of this Claim is entitled to vote to accept or reject the Plan.

**5.07    Class 5: Allowed Secured Claim of U.S. Bank National Association, as Trustee ("U.S. Bank").**

This Claim will be treated once Allowed as follows:

a.   U.S. Bank filed an allegedly fully secured claim in the amount of $624,399.15 (the "U.S. Bank Claim").

b.   Galaxy's opinion of the value of U.S.'s Collateral is $0.  To the extent the U.S. Bank Claim is fully unsecured, the Claim shall be disallowed as a Secured Claim and allowed as a Class 6 Unsecured Claim in the amount of $624,399.15 pursuant to 11 U.S.C. Sec. 506(d), and U.S. Bank's asserted liens shall be extinguished.

c.   To the extent a Class 5 Claim is allowed, it shall be amortized over twenty (20) years, bearing interest at the rate of 5.25% per annum.  Monthly payments of both principal and interest shall be made on the Claim beginning on the first day of the first month following confirmation of the Plan, and on the first day of each month thereafter.  The Claim shall be due and payable in full at the expiration of one year from the Effective Date, at which time the Debtor shall refinance the debt with U.S. Bank or another lender. If the Plan Proponent fails to cure an Event of Default as to such payments within ten (10) days after receipt of written notice of default from U.S. Bank, then U.S. Bank may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies it may have by agreement or under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.To the extent a Class 5 Secured Claim is allowed,  U.S. Bank shall continue to be properly perfected and secured for an Allowed Secured Claim on the Debtor's real and personal property as described in its loan documents and financing statements (the "Collateral"), in an amount to be determined by the Court or agreement of the parties.

d.   There shall be no prepayment penalty if this Claim is paid early.

e.   Should this Section of the Plan for treatment of the U.S. Bank's Claim contradict any other provision in the Plan, the provisions of this Section shall control.

This Claim is Impaired and the holder of this Claim is entitled to vote to accept or reject the Plan.

**5.08    Class 6: Allowed General Unsecured Claims**

a.   The total of claims in this class is estimated at $4,489,141.77, including the Unsecured portions of the Claim of Wells Fargo and all of the Claim of U.S. Bank.

b.   To the extent Class 6 Claims are Allowed, they shall be paid a total of five  percent

(5%) of the Allowed Amount of each such Claim, payable in equal monthly installments without interest for twenty-four (24) months, beginning on the Effective Date and continuing on the first day of each month thereafter.

This class is Impaired and any non-Insider holder of a Claim in this class is entitled to vote to accept or reject the Plan. Insiders are not entitled to vote to accept or reject the plan.

### 5.09    Class 7 - Equity Interests

All existing Equity Interests in the Debtor as of the Confirmation Date shall be cancelled and new equity comprising 100% of the equity interests in the Reorganized Debtor shall be issued to Galaxy, the Plan Proponent, as of the Effective Date.  The Debtor's corporate records, stock certificates and stock register shall be amended and re-issued to reflect Galaxy as the new holder of all Equity Interests in the Debtor.  These changes are effective as of Confirmation of the Plan and are effective whether the corporate records are amended or not.

The Equity Interest Holders are impaired under this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF PLAN

**6.01    Implementation of Plan**.  This Plan will be implemented, pursuant to § 1123(a)(5) of the Code, by the commencement of payments as called for above.

**6.02    Cash Contributions by Galaxy.**  In exchange for its receipt of 100% of the equity interests in the Debtor, Galaxy or its nominee will make cash contributions to the Reorganized Debtor in an amount sufficient to rehabilitate and re-open the Hotel, obtain a new nationally-recognized brand name franchise for the Hotel, fund the obligations due to creditors under this Plan, and fund the continuing operations of the Hotel to the extent operating revenue is insufficient.  To accomplish these objectives, Galaxy estimates that it will contribute $2,000,000 to $3,000,000.00 to the Debtor within 90 days after the Effective Date of the Plan, with further contributions to follow as needed.

## ARTICLE VIII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01    Rejection of Executory Contracts and Unexpired Leases**.  All of the Debtor's unexpired leases of real property and executory contracts are hereby deemed rejected as of the Effective Date of the Plan unless specifically assumed by separate motion and order prior to the Confirmation Date or as part of Confirmation of a Plan in this case.

**7.02    Reservation of Rights**. Galaxy shall have the right to assume or reject, pursuant to Bankruptcy Code Section 365, prior to the Confirmation Date, any executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code) and to the terms of this Plan.

**7.03**  **Bar Date for Claims Based on Rejection**.  If the rejection of an executory contract or an unexpired lease results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Reorganized Debtor or its properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtor, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; *provided, however*, that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission that such rejection gives rise to or results in a Claim or shall be deemed a waiver of any objections to such Claim if asserted.

## ARTICLE IX
## FEASIBILITY OF PLAN

**8.01**  Galaxy asserts that its Plan is feasible based on ***Exhibits "B" and "C"***.  The funds necessary to fund the Plan will come from Galaxy's cash contributions and the ongoing operations of the Hotel. All causes of action shall remain fully vested in the Reorganized Debtor. The failure to identify a claim or cause of action is not specifically a waiver of such claim or cause of action. To the extent of any recovery on claims and causes of action that belong to the Reorganized Debtor as disclosed herein, if any, such funds will be contributed by the Reorganized Debtor (less costs and expenses associated with any litigation) to pay the Class 6 creditors with allowed claims.

### Procedure for Filing Proofs of Claims and Proofs of Interests

**8.02**  All proofs of claims and proofs of interests must be filed by those Claimants and Equity Interest Holders who have not filed such instruments on or before the Bar Date fixed by the Court.

**8.03**  If Claimants have already filed a proof of claim with the Court or are listed in the Debtor's Schedules as holding non-contingent, liquidated and undisputed claims, a proof of claim need not be filed.  The schedules and amendments thereto are on file with the Court and are open for inspection during regular Court hours.  If the equity security interest of an Equity Interest Holder is properly reflected in the book and records of the Debtor, a proof of interest need not be filed.

## ARTICLE X
## ALTERNATIVES TO DEBTOR'S PLAN

**9.01**  If this Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code.  It is

also the case that the Debtor's case may be dismissed if this Plan is not confirmed.

## ARTICLE XI
## RISKS TO CREDITORS UNDER THE PLAN

**10.01**   Claimants should be aware that there are a number of substantial risks involved in consummation of the Plan.  The Plan contemplates that the cash contributions of Galaxy and the operations of the Hotel will generate income sufficient to pay the Debtor's obligations under the Plan.  Galaxy does not "guarantee" that the expenses will equal those in the projections; however, Galaxy believes that the projections are reasonable.  Galaxy anticipates that the Reorganized Debtor will meet its projections and will be able to pay back its creditors as set forth herein.

## ARTICLE XII
## TAX CONSEQUENCES TO THE DEBTOR

**11.01**   TO ENSURE COMPLIANCE WITH U.S. TREASURY DEPARTMENT CIRCULAR 230, HOLDERS OF CLAIMS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF UNITED STATES FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED OR RELIED UPON, AND CANNOT BE USED OR RELIED UPON, BY HOLDERS OF CLAIMS OR INTERESTS OR ANY OTHER PERSONS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON HOLDERS OF CLAIMS OR ANY OTHER PERSONS UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS INCLUDED HEREIN IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF U.S. TREASURY DEPARTMENT CIRCULAR 230) OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISER.

A. Introduction

The following discussion summarizes certain material U.S. federal income tax consequences of the Plan to the Debtor and holders of Claims and Interests. The summary is provided for general informational purposes only and is based on the United States Internal Revenue Code of 1986, as amended (the "Tax Code"), the treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice, all as in effect as of the date hereof (except as otherwise noted below with regard to the American Recovery and Reinvestment Act of 2009), and all of which are subject to change, possibly with retroactive effect. Changes in any of these authorities or in their interpretation could cause the United States federal income tax consequences of the Plan to differ materially from the consequences described below. The United States federal income tax consequences of the Plan are complex and in important respects uncertain. No ruling has been requested from the Internal Revenue Service (the "Service"); no opinion has been requested from Debtors' or Galaxy's counsel concerning any tax consequence of the Plan; and no tax opinion is given by this Disclosure Statement.

The following discussion does not address all aspects of federal income taxation that may be

relevant to a particular holder of a Claim or Interest in light of its particular facts and circumstances or to particular types of holders of Claims subject to special treatment under the Tax Code. For example, the discussion does not address issues of concern to broker-dealers or other dealers in securities, or foreign (non-U.S.) persons, nor does it address any aspects of state, local, or foreign (non-U.S.) taxation, or the taxation of holders of Interests in a Debtor. In addition, a substantial amount of time may elapse between the Confirmation Date and the receipt of a final distribution under the Plan. Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, court decisions or administrative changes, could affect the federal income tax consequences of the Plan and the transactions contemplated hereunder.

**THE DISCUSSION THAT FOLLOWS IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND PROFESSIONAL TAX ADVICE BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH ITS TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.**

B. Certain Definitions

Except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined herein or in the Plan shall have the respective meanings assigned to them in this Article.

"*COD*" shall mean cancellation of indebtedness income.
"*NOL*" shall mean net operating loss.

C. Certain Material Federal Income Tax Consequences to the Debtor

Cancellation of a debtor's debt is generally taxable income to the Debtor. COD is the amount by which the indebtedness of a debtor discharged exceeds any consideration given in exchange therefore. Cancellation of a debt may not necessarily be COD, however. To the extent that a debtor is insolvent, or if a Debtor is in bankruptcy, as is the case here, the Tax Code permits the debtor to exclude the COD from its gross income. The statutory exclusion for COD in a title 11 case generally excludes COD from gross income if the discharge is granted by a court to a debtor under its jurisdiction in a title 11 case, as is sought herein.

The price for the bankruptcy COD exclusion (as well as the insolvency exclusion) is reduction of the debtor's tax attributes to the extent of the COD income, generally in the following order: NOLs for the year of the discharge and NOL carryovers from prior years; general business tax credit carryovers; minimum tax credit available as of the beginning of the year following the year of discharge; net capital loss for the year of discharge and capital loss carryovers from prior years; basis of the debtor's assets; passive activity loss and credit carryovers from the year of discharge; and foreign tax credit carryovers to or from the year of discharge. The reduction of attributes does not occur until after the end of the debtor's tax year in which the COD occurred, so they are available to the debtor in determining the amount of its income, loss and tax liability for the year of discharge.

As a result of the implementation of the Plan, the Debtor may have COD and potential attribute reduction. Because any reduction in tax attributes does not effectively occur until the first day of the taxable year following the taxable year in which the COD is incurred, any resulting COD, on its own, should not impair the ability of the Debtor to use their tax attributes (to the extent otherwise available) to reduce their tax liability, if any, otherwise resulting from the implementation of the Plan.

Under section 382 of the Tax Code, if a corporation undergoes an "ownership shift," the amount of its Pre-Change Losses that may be utilized to offset future taxable income generally is subject to an annual limitation.  The Plan calls for an ownership change and as such any current owner of the Debtor should consult his own tax adviser concerning the effect of the Plan.

The United States federal income tax consequences of payment of Allowed Claims pursuant to the Plan will depend on, among other things, the consideration received, or deemed to have been received, by the holder of the Allowed Claim, whether such holder reports income on the accrual or cash method, whether such holder receives distributions under the Plan in more than one taxable year, whether such holder's Claim is allowed or disputed at the Effective Date, whether such holder has taken a bad debt deduction or worthless security deduction with respect to its Claim.

In general, a holder of a Claim should recognize gain or loss equal to the amount realized under the Plan in respect of its Claim less the amount of such holder's basis in its Claim. Any gain or loss recognized in the exchange may be long-term or short-term capital gain or loss or ordinary income or loss, depending upon the nature of the Claim and the holder, the length of time the holder held the Claim and whether the Claim was acquired at a market discount. If the holder realizes a capital loss, its deduction of the loss may be subject to limitations under the Tax Code. The holder's aggregate tax basis for any property received under the Plan generally will equal the amount realized. The amount realized by a holder generally will equal the sum of the cash and the fair market value of any other property received (or deemed received) by the holder under the Plan on the Effective Date and/or any subsequent distribution date, less the amount (if any) allocable to Claims for interest.  All holders of Allowed Claims are urged to consult their tax advisors.  A holder of a Claim constituting an installment obligation for tax purposes may be required to recognize currently any gain remaining with respect to the obligation if, pursuant to the Plan, the obligation is considered to be satisfied at other than its face value, distributed, transmitted, sold or otherwise disposed of within the meaning of Section 453B of the Tax Code.

If the creditors give up all or a portion of their debt in return for stock the Company would change the debt to equity on its books and the Creditor would own their stock with a cost basis equal to the amount of debt given up to purchase it.

D. Importance of Obtaining Professional Tax Assistance

The foregoing discussion is intended only as a summary of certain U.S. federal income tax consequences of the Plan, and is not a substitute for careful tax planning with a tax professional. The above discussion is for general information purposes only and is not tax advice. The tax consequences are in many cases uncertain and may vary depending on a holder's individual

circumstances.

HOLDERS OF CLAIMS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.

### ARTICLE XIII
### PENDING LITIGATION

**12.01**   As of the date of the filing of this Disclosure the significant matters pending are as follows:  There are no significant pending matters in either the bankruptcy court, nor in state court.

### ARTICLE XIV
### SUMMARY OF SIGNIFICANT ORDERS ENTERED DURING THE CASE

**13.01**   As of the date of the filing of this Disclosure the following significant orders have been entered in this case: Employment of Professionals, Order allowing Hilton Franchise Holdings, LLC to terminate franchise agreement and take actions to de-identify the Hotel as a Hilton-branded property, and those relating to general administration of the case.

**Respectfully Submitted By:**

Joyce Lindauer
Texas Bar No. 21555700
Paul B. Geilich
State Bar No. 07792500
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, TX  75202
Telephone: (972) 503-4033
joyce@joycelindauer.com
paul@joycelindauer.com


/s/ *Mark A. Larson*
Mark A. Larson
Larson Law Firm, LLC
1400 Main Street, Ste. 201D
Louisville, CO 80027
Telephone:303-228-9414
mark@larsonlawyer.com

ATTORNEYS FOR GALAXY CONSTRUCTION, LLC.

*/s/Jagmohan Dhillon*

Managing Member of Galaxy Construction, LLC.,
Creditor and Proponent of the Plan

# EXHIBIT "A"

Joyce W. Lindauer
Texas State Bar No. 21555700
Paul B. Geilich
Texas State Bar No. 07792500
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, TX 75202
Telephone: (972) 503-4033
joyce@joycelindauer.com
paul@joycelindauer.com

Mark A. Larson
Larson Law Firm, LLC
1400 Main Street, Ste. 201D
Louisville, CO 80027
Telephone:303-228-9414
mark@larsonlawyer.com

ATTORNEYS FOR GALAXY CONSTRUCTION, LLC,
CREDITOR AND PLAN PROPONENT

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **CHEYENNE HOTEL INVESTMENTS, LLC,** | § | **CASE NO. 19-15473-KHT** |
| | § | **Chapter 11** |
| | § | |
| Debtor. | § | |

### CREDITOR'S PLAN OF REORGANIZATION DATED JUNE 24, 2020

Comes now Galaxy Construction, LLC ("Galaxy"), and proposes the following Creditor's Plan of Reorganization ("Plan"), pursuant to Chapter 11 of the United States Bankruptcy Code. Galaxy is the assignee and owner of an unsecured claim in this case. Galaxy proposes to fund the Plan through its own cash contributions and the profits it will earn through the resumption and continuation of the Debtor's hotel business The current equity interests in the Debtor shall be cancelled pursuant to the Plan and Galaxy or its nominee shall become the new owner of all equity interests in the Debtor. The contributions to be made and the use of such funds are described in more detail in the Disclosure Statement accompanying this Plan. Periodic financial reports will be filed with the Court, as required by the Code, covering the profitability, projections of cash receipts and disbursements for a reasonable period. These reports shall be available on the Court's PACER site using the Debtor's name and/or case number as referenced above.

## <u>TABLE OF CONTENTS</u>

ARTICLE I - DEFINITIONS AND USE OF TERMS ................................................................ 3

ARTICLE II - CONCEPT OF THE PLAN .................................................................. 6

ARTICLE III - GENERAL TERMS AND CONDITIONS ........................................................ 7

ARTICLE IV - DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS...................... 8

ARTICLE V- PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS.............. 8

ARTICLE VI - MEANS FOR IMPLEMENTATION OF PLAN  ................................................ 15

ARTICLE VII - TREATMENT OF EXECUTORY CONTRACTS
        AND UNEXPIRED LEASES  ............................................................................ 14

ARTICLE VIII - ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS ........ 15

ARTICLE IX - EFFECT OF CONFIRMATION ......................................................... 16

ARTICLE X - MISCELLANEOUS PROVISIONS.................................................... 17

ARTICLE XI - MODIFICATION OF THE PLAN ...................................................... 19

ARTICLE XII - RETENTION OF JURISDICTION .................................................... 19

# ARTICLE I
## DEFINITIONS AND USE OF TERMS

**Defined Terms**.  Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this section 1.01.

**1.01.01   Administrative Claim or Expense** means an administrative expense or Claim described in Section 503 of the Bankruptcy Code and entitled to administrative priority pursuant to Section 507(a)(1) of the Bankruptcy Code, including, but not limited to, Claims for compensation of professionals made pursuant to Sections 330 and 331 of the Bankruptcy Code, and all fees and charges assessed against the Debtor and Debtor's property under 28 U.S.C. Section 1930.

**1.01.02   Administrative Tax Claim** means an Unsecured Claim by any governmental unit for taxes (including interest or penalties related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through the Effective Date.

**1.01.03   Allowed Claim** means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that (i) a proof of Claim, proof of Interest, or request for payment was timely Filed or, with leave of the Bankruptcy Court, late Filed, and as to which no objection has been timely Filed or, if Filed, is allowed by a Final Order, unless otherwise provided in this Plan or (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and to which no objection has been timely Filed or, if Filed, is allowed by a Final Order.

**1.01.04   Allowed Secured Claim** means any Allowed Claim secured by a lien, security interest, or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**1.01.05   Bankruptcy Code or Code** means the United States Bankruptcy Code, Title 11 of the United States Code Section 101 et seq., as amended.

**1.01.06   Bankruptcy Court** means the United States Bankruptcy Court for the District of Colorado or such other court that may have jurisdiction with respect to the reorganization of the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

**1.01.07   Bankruptcy Rule** means the Federal Rules of Bankruptcy Procedure.

**1.01.08   Bar Date** means the date after which a proof of pre-petition Claim may not timely be Filed or the date by which proofs of claims held by governmental agencies must be filed.

**1.01.09   Case** means this Chapter 11 Bankruptcy Case in the Bankruptcy Court.

**1.01.10   Claim** shall have the meaning set forth in Bankruptcy Code Section 101(5).

**1.01.11   Claimant** means any person or entity having or asserting a Claim in the case.

     1.01.12   **Class** or **Classes** mean all holders of Claims or Interests that the Debtor has designated pursuant to Section 1123(a)(1) of the Bankruptcy Code as having substantially similar characteristics as described in Article IV of this Plan.

     1.01.13   **Confirmation** means the entry by the Bankruptcy Court of a Confirmation Order confirming this Plan.

     1.01.14   **Confirmation Date** means the date on which the Confirmation Order is entered.

     1.01.15   **Confirmation Hearing** means the hearing or hearings held before the Bankruptcy Court in which the Debtor will seek Confirmation of this Plan.

     1.01.16   **Confirmation Order** means the Order of the Court confirming this Plan under Section 1129 of the Bankruptcy Code.

     1.01.17   **Contested** when used with respect to a Claim, means a Claim against the Debtor (a) that is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated; (b) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) as to which an objection has been or may be timely filed and has not been denied by Final Order.  To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

     1.01.18   **Creditor** shall have the meaning specified by Section 101(10) of the Code.

     1.01.19   **Debtor** means Cheyenne Hotel Investments, LLC, the debtor in this case.

     1.01.20   **Disputed Claim** means any Claim that is not an Allowed Claim.

     1.01.21   **Effective Date** means the thirtieth (30th) day after the Confirmation Date.

     1.01.22   **Estate** means the estate created pursuant to Bankruptcy Code Section 541 with respect to the Debtor.

     1.01.23   **Fee Claim** means a Claim under Bankruptcy Code Sections 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in the Debtor's Chapter 11 case.

     1.01.24   **Filed** means delivered to the Clerk of the Bankruptcy Court.

     1.01.25   **Final Order** means an Order as to which any appeal that has been taken has not been stayed following the expiration of the time for appeal or has been resolved, or as to which the time for appeal has expired.

      **1.01.25**   **Galaxy** means Galaxy Construction, LLC, the proponent of this Plan ("Plan Proponent").

      **1.01.26**   **General Unsecured Claim** means Unsecured Claim that is not entitled to priority under Section 507(a) of the Bankruptcy Code.

      **1.01.27**   **Impaired** means the treatment of an Allowed Claim pursuant to the Plan unless, with respect to such Claim, either (i) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim, or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Debtor (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim as such maturity existed before such default; (C) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (iii) the Plan provides that on the Effective Date, the holder of such Claim receives, on account of such Claim, cash equal to the Allowed Amount of such Claim.

      **1.01.28**   **Petition Date** means June 26, 2019, the date the Debtor's petition was filed commencing this bankruptcy case.

      **1.01.29**   **Plan** means this Plan of Reorganization, as it may be amended or modified from time to time as permitted herein and by the Bankruptcy Court.

      **1.01.30**   **Pre-petition** means prior to the Petition Date.

      **1.01.31**   **Priority Tax Claim** means a Claim entitled to priority pursuant to Bankruptcy Code Section 507(a)(8).

      **1.01.32**   **Pro Rata** means proportionately, based on the percentage that the amount of an Allowed Claim within a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

      **1.01.33**   **Property of the Estate** means all property in which the Debtor holds a legal or an equitable interest, including all property described in Bankruptcy Code Section 541.

      **1.01.34**   **Reorganized Debtor** means the Debtor as it exists after Confirmation of the Plan.

      **1.01.35**   **Rejection Claim** means any Claim arising pursuant to Bankruptcy Code Section 502(g) by reason of rejection by the Debtor or Galaxy of an executory contract or unexpired lease pursuant to Bankruptcy Code Sections 365 or 1123(b)(2).

      **1.01.36**   **Secured Claim** means any Claim secured by a lien, security interest, or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof

(determined in accordance with Bankruptcy Code Section 506(a)).

      **1.01.37**   <u>**Secured Tax Claim**</u> means any Tax Claim which is secured by real or personal property.

      **1.01.38**   <u>**Secured Creditor**</u> or <u>**Secured Claimant**</u> means any Claimant holding a Secured Claim.

      **1.01.39**   <u>**Unimpaired**</u> means not Impaired.

      **1.01.40**   <u>**Unsecured Claim**</u> means any Claim not collateralized (or the extent not fully collateralized) by assets of the Debtor.

      **1.01.41**   <u>**Unsecured Claimant**</u> or <u>**Unsecured Creditor**</u> means any holder of an Unsecured Claim.

      **1.01.42**   <u>**Voidable Transfer**</u> means all transfers voidable under Sections 544, 545, 547, 548, 549 and/or 550 of the Code or any other state or federal transfer.

      **1.01.43**   <u>**Number and Gender of Words**</u>. Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context. Words of any gender shall include each other gender where appropriate.

      **1.01.44**   <u>**Terms Defined in the Bankruptcy Code**</u>. Capitalized terms not specifically defined in section 1.01 of the Plan shall have the definitions given those terms, if applicable, in the Bankruptcy Code.

      **1.01.45**   <u>**Headings**</u>. The headings and captions used in this Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

      **1.01.46**   <u>**Time Computation**</u>. In computing any period of time prescribed herein, the provisions of Federal Rule of Bankruptcy Procedure Rule 9006(a) shall apply.

**ARTICLE II**
<u>**CONCEPT OF THE PLAN**</u>

      **2.01**   <u>**Generally.**</u> The Plan is a plan of reorganization. The Debtor shall continue its business after the Confirmation Date. The Debtor operates a 104-room hotel formerly flagged as a Homewood Suites by Hilton franchise located on real estate owned by the Debtor at 2875 Zeppelin Road, Colorado Springs, Colorado 80916 (the "Hotel"). It is located near the Colorado Springs Airport in a pocket of hotels. The Hotel is in good condition, but is currently closed due to the effects of the coronavirus and COVID-19.

      **2.02**   The Plan will be funded by Galaxy through cash capital contributions it will make to rehabilitate and re-open the Hotel and pay Creditors under the Plan, and by the profits Galaxy

will earn through the resumption and continuation of the Debtor's hotel business. Under the Plan, the current equity interests in the Debtor will be cancelled and Galaxy will become the new 100% equity owner of the Debtor.

## ARTICLE III
## GENERAL TERMS AND CONDITIONS

**3.01    Treatment of Claims**.  This Plan is intended to resolve all Claims against the Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to Bankruptcy Code Section 502(a).  However, only Allowed Claims will receive treatment afforded by the Plan.  The Plan is designed to ensure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

**3.02    Time for Filing Claims**.  The holder of any Administrative Claim other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by the Debtor, or (iii) an Allowed Administrative Claim, must file with the Bankruptcy Court and serve on the Debtor and its respective counsel, notice of such Administrative Claim within thirty (30) days after the Effective Date.  At a minimum, such notice must identify (i) the name of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim.  Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

Each Person asserting an Administrative Expense that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on the Debtor's counsel and the U. S. Trustee, a Fee Application within sixty (60) days after the Effective Date.

A person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

Liabilities incurred from the Petition Date through the Effective Date in the ordinary course of business shall be paid in the ordinary course of business by the Debtor.

**3.03    Modification to the Plan**.  In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified or amended upon application of the Debtor, or corrected prior to the Confirmation Date, provided that notice and an opportunity for hearing have been given to any affected party. The Plan may be modified at any time after Confirmation and before the Effective Date, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, the circumstances warrant such modification and Debtor consents thereto in writing.

## ARTICLE IV
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The Debtor designates the following Classes of Claims and Interests pursuant to Bankruptcy Code Section 1123. The Debtor shall pay all fees assessed by the Office of the United States Trustee until this Case is closed by the Court or the Debtor is otherwise released from such obligations by the Court.

| CLASSIFICATION OF CLAIMS |
| --- |
| Class 1: Priority Claim of Internal Revenue Service |
| Class 2: Priority Claim of Colorado Department of Revenue |
| Class 3: Priority Claim of El Paso County Treasurer |
| Class 4: Secured Claim of Wells Fargo Bank, NA as Trustee |
| Class 5: Secured Claim of U.S. Bank, NA as Trustee |
| Class 6: General Unsecured Claims |
| Class 7: Equity Interests |

## ARTICLE V
## PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS

The Claims and Interests classified in Article IV hereof shall be treated in the manner set forth in this Article V.

**5.01    Administrative Claims**.  Each holder of an Administrative Claim other than Professional Fee Administrative Claims shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which the Debtor and such holder shall have agreed upon in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.  On or before the Effective Date, the Debtor or Reorganized Debtor shall pay or have paid in full all Allowed Administrative Claims. All Allowed Administrative Claims shall be paid by the Reorganized Debtor when they are due until the Bankruptcy Case is closed pursuant to a final decree, order of dismissal, or order of conversion.  Until entry of such an order, the Reorganized Debtor shall file with the Bankruptcy Court and serve upon the United States Trustee a quarterly financial report.  Any administrative ad valorem tax claims shall be paid pursuant to otherwise applicable state law.

**5.02    Professional Fee Administrative Claims.**    All persons that are awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with sections 330 or 331 of the Bankruptcy Code or entitled to the priorities established pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code, shall be paid in full, in Cash, the amounts allowed by the Bankruptcy Court on or as soon as reasonably practicable following the later of the Effective Date or the date on which the order allowing such Claim becomes a Final Order, or upon such other terms as may be mutually agreed upon between such holder of an

Allowed Professional Fee Claim and the Reorganized Debtor.

### Treatment of Allowed Administrative Expenses

Allowed Administrative Expenses will be paid in full once Allowed, on or before the Effective Date, or at a later date as set by the Court if the allowance process extends beyond the Effective Date.  Provided, however, that the holder of an Allowed Administrative Expense may agree to a different treatment.

### Treatment of Allowed Priority Claims

Allowed Priority Claims will be paid by the Reorganized Debtor as stated below. There are three priority claims.

### Title 28 U.S.C. Section 1930 Fees

The Reorganized Debtor shall pay all post-Confirmation fees assessed by the Office of the United States Trustee until this Case is closed by the Court or the Reorganized Debtor is otherwise released from such obligations by the Court.

### <u>Class 1: Allowed Priority Claim of the Internal Revenue Service</u>

Class 1 shall consist of the Allowed Priority Unsecured Claim of the Internal Revenue Service ("IRS").  The Debtor scheduled this Claim in an unknown, unliquidated amount. The IRS has not filed a proof of claim in the case and Galaxy, therefore, estimates the amount of the Class 1 Claim to be zero.  Galaxy is not aware of any Claims in this Class.  In the event the IRS is allowed a Claim in this Class it will be paid as follows:

a.     The Class 1 Claim shall be paid in full over sixty (60) months from the Effective Date at an interest rate of 4.21% per annum (calculated pursuant to 26 U.S.C. 6621 as the current Federal Short Term Rate of 1.21% plus 3%).  Payments shall commence on the first day of the month following the Effective Date and continue on the first day of each month thereafter until paid in full.

b.     Events of Default for IRS.  The occurrence of any of the following shall constitute an event of default under the Plan:

1.     Failure to Make Payments.  Failure on the part of Debtor to pay fully when due any payment required to be made in respect of the Plan debt.  Upon any default under the Plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code.  As to the IRS:

(A)    If the Reorganized Debtor or its successor in interest fails to make any plan payment, or deposits of any currently accruing employment or sales

tax liability; or fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the Reorganized Debtor or its successor in interest failed to file any required federal or state tax return by the due date of such return, then the United States may declare that the Reorganized Debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Reorganized Debtor is in default.

(B)     If the United States declares the Reorganized Debtor or the successor in interest to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately upon written demand to the Reorganized Debtor or the successor in interest.

(C)     If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send two notices of default, and upon the third event of Default, the IRS may proceed to collect on all amounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor. The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan. All payments will be sent to: Internal Revenue Service at an address of its choosing.

(D)     The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Reorganized Debtor to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Reorganized Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the Plan and as set forth above.

c.     The Class 1 Claim is Impaired.

## Class 2: Allowed Priority Claim of Colorado Department of Revenue ("CDOR")

Class 2 shall consist of the Allowed Priority Claim of the Colorado Department of Revenue for accrued state tax. The Debtor scheduled this Claim in an unknown, unliquidated amount. CDOR has not filed a proof of claim in the case. Galaxy, therefore, estimates the amount of the Class 2 Claim to be zero. Galaxy is not aware of any Claims in this Class. In the event the CDOR is allowed a Claim in this Class it will be paid as follows:

a.     Impairment. Class 2 is impaired by the Plan.

    b.  <u>Treatment</u>.  The Class 2 Claim of the CDOR shall be paid in full over 24 months from the Effective Date at an annual interest rate of five percent (5%) plus one-half percent (½%) for each full or partial month the tax remains unpaid, not to exceed a total of twelve percent (12%).  Payments shall commence on the first day of the month following the Effective Date and continue on the first day of each month thereafter until paid in full.

    c.  <u>Events of Default</u>.  The Reorganized Debtor shall timely and fully make all payments due to CDOR under the Plan.  The Reorganized Debtor shall timely file all tax returns due to CDOR for the duration of the Plan, and shall timely and fully pay all taxes reflected as due on such returns.  If the Reorganized Debtor fails to perform these duties, that failure shall be an event of default.  In the event of Default, CDOR agrees to provide the Reorganized Debtor with a ten (10) day Notice of Default and Opportunity to Cure. If the Debtor fails to cure the default within the cure period, CDOR shall be entitled to initiate collection of the entire balance due from the Reorganized Debtor at the time of default without the necessity of petitioning the Court for relief.  The Reorganized Debtor shall have the opportunity to cure two (2) times over the life of the plan.  In the event of a third (3ʳᵈ) default, CDOR shall be entitled to proceed with all available state law collection remedies without further notice to the Reorganized Debtor.

## Class 3: Allowed Priority Claim of El Paso County Treasurer

    Class 3 shall consist of the Allowed Priority Claim of the El Paso County Treasurer in the estimated amount of $162,535.97.

    a.  <u>Impairment</u>.  Class 3 is impaired by the Plan.

    b.  <u>Treatment</u>.  The Class 3 Claim of the El Paso County Treasurer shall be paid in full over 24 months from the Effective Date at an interest rate of 1.0 % per month on the taxes remaining outstanding at the beginning of each month.  Payments shall commence on the first day of the month following the Effective Date and continue on the first day of each month thereafter until paid in full.

    c.  <u>Events of Default</u>.  A failure by the Reorganized Debtor to make a payment to the El Paso County Treasurer pursuant to the terms of the Plan shall be an Event of Default. If the Reorganized Debtor fails to cure an Event of Default as to such payments within ten (10) days after receipt of written notice of default from El Paso County Treasurer, then the El Paso County Treasurer may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the El Paso County Treasurer may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.  The Reorganized Debtor shall have the opportunity to cure two (2) times over the life of the plan.  In the event of the third default, the City of Texarkana may proceed with the state law remedies for collection of all amounts due under state law.

## **Class 4: Allowed Secured Claim of Wells Fargo Bank, N.A. as Trustee ("Well Fargo")**

This claim of Wells Fargo shall be treated once allowed as follows:

a.   Wells Fargo filed an allegedly fully secured firs lien claim in the amount of $7,074,780.13 (the "Wells Fargo Claim").

b.   Galaxy's opinion of the value of Wells Fargo's Collateral (as described below) is $3,500,000.00. To the extent the Wells Fargo Claim is partially unsecured, the Claim shall be bifurcated into a Class 4 Secured Claim allowed in the amount $3,500,000 and a Class 6 Unsecured Claim allowed in the amount of $3,574,780.13, pursuant to 11 U.S.C. Sec. 506(d).

c.   To the extent a Class 4 Claim is allowed, it shall be amortized over twenty (20) years, bearing interest at the rate of 5.25% per annum.  Monthly payments of both principal and interest shall be made by the Reorganized on the Claim beginning on the first day of the first month following confirmation of the Plan, and on the first day of each month thereafter. The Claim shall be due and payable in full upon the expiration of one year from the Effective Date, at which time the Reorganized Debtor shall refinance the debt with Wells Fargo or another lender. These terms shall be referred to herein as the "Note Modification."

d.   If the Reorganized Debtor fails to cure an Event of Default as to such payments within ten (10) days after receipt of written notice of default from Wells Fargo, then Wells Fargo may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies it may have by agreement or under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.

e.   Wells Fargo Bank, N.A. shall continue to be properly perfected and secured for an Allowed Secured Claim on the Debtor's real and personal property as described in its loan documents and financing statements (the "Collateral"), in the amount of $3,500,000.00.  Without further filings, Wells Fargo Bank, N.A shall retain a first priority mortgage interest and a first priority security interest in the Collateral.

f.   If there is a non-monetary default under the terms of the treatment of the Claim in this Plan or under the loan documents, the Debtor has ten (10) consecutive days to cure the default after notice by Wells Fargo.  If the non-monetary default is not timely cured, Wells Fargo Bank, N.A. is entitled to exercise all of its rights and remedies under the loan documents.

g.   The obligations under the Note Modification shall commence as of the Effective Date.

h.   Should this Section of the Plan for treatment of Wells Fargo Bank's Allowed Secured Claim contradict any other provision in the Plan, the provisions of this Section shall control.

i.      All terms of the loan documents not otherwise modified in this Section shall remain in full force and effect.

j.      This Claim is Impaired and the holder of this Claim is entitled to vote to accept or reject the Plan.

## Class 5: Allowed Secured Claim of U.S. Bank National Association, as Trustee ("U.S. Bank").

This Claim will be treated once Allowed as follows:

a.   U.S. Bank filed an allegedly fully secured second-lien claim in the amount of $624,399.15 (the "U.S. Bank Claim").

b.   Galaxy's opinion of the value of U.S. Bank's secured interests in the Debtor's property is $0.  To the extent the U.S. Bank Claim is fully unsecured, the Claim shall be disallowed as a Secured Claim and allowed as a Class 6 Unsecured Claim in the amount of $624,399.15, pursuant to 11 U.S.C. Sec. 506(d), and U.S. Bank's asserted liens shall be extinguished.

c.    To the extent a Class 5 Claim is allowed, it shall be amortized over twenty (20) years, bearing interest at the rate of 5.25% per annum.  Monthly payments of both principal and interest shall be made on the Claim beginning on the first day of the first month following confirmation of the Plan, and on the first day of each month thereafter.  The Claim shall be due and payable in full at the expiration of one year from the Effective Date, at which time the Debtor shall refinance the debt with U.S. Bank or another lender. If the Plan Proponent fails to cure an Event of Default as to such payments within ten (10) days after receipt of written notice of default from U.S. Bank, then U.S. Bank may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies it may have by agreement or under applicable state law; and/or (c) seek such relief as may be appropriate in the Court. To the extent a Class 5 Secured Claim is allowed,  U.S. Bank shall continue to be properly perfected and secured for an Allowed Secured Claim on the Debtor's real and personal property as described in its loan documents and financing statements (the "Collateral"), in an amount to be determined by the Court or agreement of the parties.

d.   There shall be no prepayment penalty if this Claim is paid early.

e.   Should this Section of the Plan for treatment of the U.S. Bank's Claim contradict any other provision in the Plan, the provisions of this Section shall control.

f.   This Claim is Impaired and the holder of this Claim is entitled to vote to accept or reject the Plan.

## Class 6: Allowed General Unsecured Claims

**a.**   To the extent Class 6 Claims are Allowed, they shall be paid a total of five  percent

(5%) of the Allowed Amount of each such Claim, payable in equal monthly installments without interest for twenty-four (24) months, beginning on the Effective Date and continuing on the first day of each month thereafter.

b.   The total of claims in this class is estimated at $4,489,141.77 including the Unsecured portion of the Claim of Wells Fargo and all of the Claim of U.S. Bank.

c.   This class is Impaired and any non-Insider holder of a Claim in this class is entitled to vote to accept or reject the Plan. Insiders are not entitled to vote to accept or reject the plan.

## Class 7 - Equity Interests

All existing Equity Interests in the Debtor as of the Confirmation Date shall be cancelled and new equity comprising 100% of the equity interests in the Reorganized Debtor shall be issued to Galaxy, the Plan Proponent, as of the Effective Date.  The Debtor's corporate records, stock certificates and stock register shall be amended and re-issued to reflect Galaxy as the new holder of all Equity Interests in the Debtor.  These changes are effective as of Confirmation of the Plan and are effective whether the corporate records are amended or not.

The Equity Interest Holders are impaired under this Plan.

Any modification of the Plan will comply with Section 1127.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF PLAN

**6.01   Implementation of Plan**.   This Plan will be implemented, pursuant to Section 1123(a)(5) of the Code, by the commencement of payments as called for above. Projections for this Plan are attached to the Disclosure Statement and incorporated herein by this reference as if set forth in full for all purposes.

Upon the Effective Date, all property of the Debtor and its Estate shall vest in the Reorganized Debtor, subject to the Allowed Secured Claims in this Plan.

**6.02   Cash Contributions by Galaxy.**  In exchange for its receipt of 100% of the equity interests in the Debtor, Galaxy or its nominee will make cash contributions to the Debtor in an amount sufficient to rehabilitate and re-open the Hotel, obtain a new nationally-recognized brand name franchise for the Hotel, fund the obligations due to creditors under this Plan, and fund the continuing operations of the Hotel to the extent operating revenue is insufficient.  To accomplish these objectives, Galaxy estimates that it will contribute $2,000,000 to $3,000,000.00 to the Debtor within 90 days after the Effective Date of the Plan, with further contributions to follow as needed.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01** **Rejection of Executory Contracts and Unexpired Leases**.  The Debtor or Reorganized Debtor shall assume, pursuant to Bankruptcy Code Section 1123(b)(2), by separate Motions the unexpired leases of non-residential real property and executory contracts prior to the Confirmation Date.  All contracts not assumed shall be rejected.

**7.02** **Reservation of Rights**. The Debtor shall have the right to assume or reject, pursuant to Bankruptcy Code Section 365, prior to the Confirmation Date, any executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code).

**7.03** **Bar Date for Claims Based on Rejection**.  If the rejection of an executory contract or an unexpired lease results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Plan Proponent or their properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon the  Reorganized Debtor, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; *provided, however*, that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission that such rejection gives rise to or results in a Claim or shall be deemed a waiver of any objections to such Claim if asserted.

## ARTICLE VIII
## ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS

**8.01** **The Debtor's Causes of Action**.  Except as otherwise released pursuant to the Plan, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of the Debtor or Reorganized Debtor or the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by the Reorganized Debtor for the benefit of the Creditors subsequent to the Effective Date.  This Plan shall not estop the  Debtor or Reorganized Debtor from asserting any claim or cause of action whether disclosed or not.

**8.02** **Objections to Claims.**  Any party authorized by the Bankruptcy Code may object to the allowance of Pre-petition Claims at any time prior to sixty (60) days after the Effective Date and, as to Rejection Claims, at any time prior to sixty (60) days after the filing of any such Rejection Claim. Any proof of Claim filed after the Court sets bar dates shall be of no force and effect and shall be deemed disallowed.  All Contested Claims shall be litigated to Final Order; *provided, however,* that the Debtor or Reorganized Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court.  Notwithstanding the foregoing,

a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim. If a Claim is disputed in whole or in part because the Debtor or Reorganized Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of its Allowed Claim. In addition, any party authorized by the Bankruptcy Code, at any time, may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of any prior objections.

## ARTICLE IX
## EFFECT OF CONFIRMATION

**9.01    Discharge and Release of Debtor**. Pursuant to Bankruptcy Code Section 1141(d), confirmation of this Plan does discharge the Debtor.

**9.02    Released Entities**. None of the officers, financial advisors, attorneys, or employees of the Debtor or Reorganized Debtor (collectively the "Released Entities") shall have any liability for actions taken or omitted to be taken in good faith under or in connection with the Plan.

**9.03    Legal Binding Effect**. The provisions of this Plan, pursuant to the Bankruptcy Code Section 1141 shall bind the Debtor and all Creditors, whether or not they accept this Plan. The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

**9.04    Discharge**. Confirmation of the Plan shall result in the inability to commence or continue any judicial, administrative, or other action or proceeding on account of any Pre-Petition Date Claims against the Debtor or Reorganized Debtor.

Except as provided in the Plan, from and after the Confirmation Date, all holders of Claims against the Debtor are restrained and enjoined by the Confirmation of the Plan: (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor or Reorganized Debtor, or its property; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets or the Debtor or Reorganized Debtor on account of such Claims; (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets, or the Debtor or Reorganized Debtor  on account of such Claims; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor or Reorganized Debtor on account of such Claims; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan on account of such

Claims; provided, however, that each holder of a Contested Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce its rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan.  Creditors shall not pursue claims against non-debtor third parties at the same time as their claims are being paid in full through the Plan.

# ARTICLE X
## MISCELLANEOUS PROVISIONS

**10.01    Request for Relief Under Bankruptcy Code Section 1129**.  In the event any Impaired Class shall fail to accept this Plan in accordance with Bankruptcy Code Section 1129(a), the Plan Proponent reserves the right to, and does hereby request the Bankruptcy Court to confirm the Plan in accordance with Bankruptcy Code Section 1129(b).

**10.02    Revocation**.  The Plan Proponent reserves the right to revoke and withdraw this Plan at any time prior to the Confirmation Date.

**10.03    Effect of Withdrawal or Revocation**.  If the Plan Proponent revokes or withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

**10.04    Due Authorization by Creditors**.  Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim against the Debtor the distributions provided in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

**10.05    Entire Agreement**.  This Plan, as described herein, the Confirmation Order, and all other documents and instruments to effectuate this Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

**10.06    Section 1146 Exemption.**  Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer or exchange or any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of or as contemplated by this Plan or the transfer of any property pursuant to this Plan shall not be taxed under any federal, state or local law imposing a stamp, transfer or similar tax or fee.

**10.07**     **Provisions** **Governing** **Distributions**.  All payments and distributions under the Plan shall be made by the Reorganized Debtor as indicated.  Any payments or distributions to be made by the Plan Proponent pursuant to the Plan shall be made as soon as reasonably practicable after the Effective Date, except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court.  Any payment or distribution by the Reorganized Debtor pursuant to the Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United States Mail.

Payments of Cash to be made by the Reorganized Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of interest is filed).  All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date.  After such date, all unclaimed property shall remain the property of the Reorganized Debtor and the Claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof.  Requests for reissuance of any check shall be made directly to the Plan Proponent by the holder of the Allowed Claim to whom such check originally was issued.  Any claim in respect of such a voided check within ninety (90) days after the date of delivery of such check.  After such date, all Claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall become Unclaimed Property and returned to the Reorganized Debtor.

No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

**10.08**     **Governing** **Law**.     Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Arkansas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**10.09**     **Default**.  Unless otherwise stated in this Plan, if the Reorganized Debtor fails to satisfy any of the obligations under this Plan and such default is not cured within 30 business days of the date of transmission of notice of the default to the Reorganized Debtor , then the defaulted party may pursue all of its remedies outside of the Bankruptcy Court, including, but not limited to, foreclose on its lien(s) on property.  For purposes of this provision, notice shall be provided to the Reorganized Debtor, c/o Joyce Lindauer, Esq. via facsimile at (972) 503-4034 and email at joyce@joycelindauer.com.

## ARTICLE XI
## MODIFICATION OF THE PLAN

**11.01**     The Plan Proponent may propose amendments to or modifications of this Plan at any time prior to Confirmation, upon notice to all parties-in-interest.  After Confirmation, the Reorganized Debtor may, with approval of the Court and so long as it does not materially and adversely affect the interest of creditors, modify to remedy any defect or omission or reconcile any inconsistencies in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of this Plan.

## ARTICLE XII
## RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes:

**12.01**     **Allowance of Claims**.  To hear and determine the allowability of all Claims upon objections to such Claims.

**12.02**     **Executory Contracts and Unexpired Leases Proceedings**.  To act with respect to proceedings regarding the assumption of any executory contract or unexpired lease of the Debtor pursuant to Section 365 and 1123 of the Code and Article VII of the Plan.

**12.03**     **Plan Interpretation**.   To resolve controversies and disputes regarding the interpretation of the Plan.

**12.04**     **Plan Implementation**.  To implement and enforce the provisions of the Plan and enter orders in aid of confirmation and implementation of the Plan.

**12.05**     **Plan Modification**.  To modify the Plan pursuant to Section 1127 of the Code and applicable Bankruptcy Rules.

**12.06**     **Adjudication of Controversies**.  To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against the Debtor.

**12.07**     **Injunctive Relief**.  To issue any injunction or other relief as appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or in the Confirmation Order.

**12.08**     **Interpleader Action**.  To entertain interpleader actions concerning assets to be distributed or other assets of the Estate.

**12.09**     **Correct Minor Defects**.  To correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder or an Allowed Claim are not materially and

adversely affected thereby.

      **12.10**    **Authorization of Fees and Expenses**.  To review and authorize payment of professional fees incurred prior to the Effective Date.

      **12.11**    **Post-Confirmation Orders Regarding Confirmation**.  To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

      **12.12**    **Final Decree**.  To enter a final decree closing the Case pursuant to Bankruptcy Rule 3022.

                         Respectfully Submitted,

                         Joyce W. Lindauer
                         Texas State Bar No. 21555700
                         Paul B. Geilich
                         Texas State Bar No. 07792500
                         Joyce W. Lindauer Attorney, PLLC
                         1412 Main St., Suite 500
                         Dallas, TX 75202
                         Telephone: (972) 503-4033
                         joyce@joycelindauer.com
                         paul@joycelindauer.com

                         */s/ Mark A. Larson*
                         Mark A. Larson
                         Larson Law Firm, LLC
                         1400 Main Street, Ste. 201D
                         Louisville, CO 80027
                         Telephone:303-228-9414
                         mark@larsonlawyer.com

                         **ATTORNEYS FOR GALAXY CONSTRUCTION, LLC.**

                         */s/Jagmohan Dhillon*
                         Managing Member of Galaxy Construction, LLC. Creditor and Proponent of the Plan

# EXHIBIT "B"

DEBTOR:   CHEYENNE HOTEL INVESTMENTS LLC            'HLY OPERATING REI

CASE NUMBER:   19-15473-KHT                                 CHAPTER 11

Form 2-A
COVER SHEET

For Period End Date:   11/30/2019

Accounting Method:   ☐ Accrual Basis   ■ Cash Basis

### THIS REPORT IS DUE 21 DAYS AFTER THE END OF THE MONTH

Mark One Box for Each            Debtor must attach each of the following documents unless the U. S.
Required Document:               has waived the requirement in writing.  File the original with the Cler
                                 Submit a duplicate, with original signature, to the U. S. Trustee.

| Report/Document Attached | Previously Waived | REQUIRED REPORTS/DOCUMENTS |
|---|---|---|
| ■ | ☐ | 1.  Cash Receipts and Disbursements Statement (Form |
| ■ | ☐ | 2.  Balance Sheet (Form 2-C) |
| ■ | ☐ | 3.  Profit and Loss Statement (Form 2-D) |
| ■ | ☐ | 4.  Supporting Schedules (Form 2-E) |
| ■ | ☐ | 5.  Quarterly Fee Summary (Form 2-F) |
| ■ | ☐ | 6.  Narrative (Form 2-G) |
| ■ | ☐ | 7.  Bank Statements for All Bank Accounts<br>*(Redact all but last 4 digits of account number and remov* |
| ■ | ☐ | 8.  Bank Statement Reconciliations for all Bank Accoun |
| ■ | ☐ | 9.  Evidence of insurance for all policies renewed or rej |

*I declare under penalty of perjury that the following Monthly Operating Report, and
attachments thereto are true, accurate and correct to the best of my knowledge an*

Executed on: _____        Print Name: _____Sonia Rathour_____

                              Signature: _____

                              Title: _____Executive Assistant_____

**DEBTOR:**   CHEYENNE HOTEL INVESTMENTS LLC    **MONTHLY OPERATING REPORT**
CHAPTER 11

**CASE NUMBER:**   19-15473-KHT

## Form 2-A
## COVER SHEET

For Period End Date:  11/30/2019

**Accounting Method:**   ☐ Accrual Basis    ■ Cash Basis

### *THIS REPORT IS DUE 21 DAYS AFTER THE END OF THE MONTH*

Mark One Box for Each
Required Document:

Debtor must attach each of the following documents unless the U. S. Trustee
has waived the requirement in writing.  File the original with the Clerk of Court.
Submit a duplicate, with original signature, to the U. S. Trustee.

| Report/Document Attached | Previously Waived | REQUIRED REPORTS/DOCUMENTS |
|:---:|:---:|---|
| ■ | ☐ | 1. Cash Receipts and Disbursements Statement (Form 2-B) |
| ■ | ☐ | 2. Balance Sheet (Form 2-C) |
| ■ | ☐ | 3. Profit and Loss Statement (Form 2-D) |
| ■ | ☐ | 4. Supporting Schedules (Form 2-E) |
| ■ | ☐ | 5. Quarterly Fee Summary (Form 2-F) |
| ■ | ☐ | 6. Narrative (Form 2-G) |
| ■ | ☐ | 7. Bank Statements for All Bank Accounts *(Redact all but last 4 digits of account number and remove check images)* |
| ■ | ☐ | 8. Bank Statement Reconciliations for all Bank Accounts |
| ■ | ☐ | 9. Evidence of insurance for all policies renewed or replaced during month |

*I declare under penalty of perjury that the following Monthly Operating Report, and any attachments thereto are true, accurate and correct to the best of my knowledge and belief.*

**Executed on:** _____

**Print Name:**  Sonia Rathour

**Signature:** _____

**Title:**  Executive Assistant

Rev. 01/01/2018

**DEBTOR:** CHEYENNE HOTEL INVESTMENTS LLC     **CASE NO:** 19-15473-KHT

## Form 2-B
## CASH RECEIPTS AND DISBURSEMENTS STATEMENT
For Period: 11/1/2019 to 11/30/2019

**CASH FLOW SUMMARY**

|  | Current Month | | Accumulated |
|---|---|---|---|
| 1. **Beginning Cash Balance** | $ 842,794 (1) | $ | 259,519 (1) |
| 2. Cash Receipts | | | |
|    Operations | 42,384 | | 974,875 |
|    Sale of Assets | - | | - |
|    Loans/advances | - | | - |
|    Other     Insider Receipts | 3,100 | | 115,687 |
|    Total Cash Receipts | $ 45,484 | $ | 1,090,562 |
| 3. Cash Disbursements | | | |
|    Operations | 14,705 | | 352,385 |
|    Debt Service/Secured loan payment | | | - |
|    Professional fees/U.S. Trustee fees | - | | - |
|    Professional fees paid from retainer (e.g. COLTAF accts) | - | | - |
|    Other     Insider Payments | 24,000 | | 148,123 |
|    Total Cash Disbursements | $ 38,705 | $ | 500,508 |
| 4. Net Cash Flow (Total Cash Receipts less Total Cash Disbursements) | 6,779 | | 590,054 |
| 5 **Ending Cash Balance (to Form 2-C)** | $ 849,573 (2) | $ | 849,573 (2) |

**CASH BALANCE SUMMARY**

| | Financial Institution | Book Balance |
|---|---|---|
| Petty Cash | - | $ 7,611 |
| DIP Operating Account | Key Bank & PB&T | (30,517) |
| DIP State Tax Account | - | - |
| DIP Payroll Account | - | - |
| Other Operating Account | Berkadia - | 872,479 |
| Retainers held by professionals (i.e. COLTAF) | - | - |
| TOTAL (must agree with Ending Cash Balance above) | | $ 849,573 (2) |

*(1) Accumulated beginning cash balance is the cash available at the commencement of the case and retainers.*
*Current month beginning cash balance should equal the previous month's ending balance.*
*(2) All cash balances should be the same.*

Rev. 01/01/2018

DEBTOR(S):     CHEYENNE HOTEL INVESTMENTS LLC        CASE NO:     19-15473-KHT

## Form 2-B
### CASH RECEIPTS AND DISBURSEMENTS STATEMENT
For Period:    11/1/2019    to    11/30/2019

**CASH RECEIPTS DETAIL**        **Account No:**
*(attach additional sheets as necessary)*

| Date | Payer | Description | Amount |
|------|-------|-------------|-------:|
| 11/30/2019 | Berkadia | | 0.28 |
| 11/05/2019 | Samira Khan | | 100.00 |
| 11/12/2019 | Samira Khan | | 700.00 |
| 11/04/2019 | Samira Khan | | 1,000.00 |
| 11/30/2019 | Cash Sales | | 1,258.81 |
| 11/27/2019 | Cheyenne Hotels LLC | | 1,300.00 |
| 11/27/2019 | Merchant Services | | 2,821.80 |
| 11/22/2019 | Merchant Services | | 3,814.37 |
| 11/18/2019 | Merchant Services | | 6,037.07 |
| 11/12/2019 | Merchant Services | | 9,257.49 |
| 11/12/2019 | Merchant Services | | 19,194.70 |
| | | **Total Cash Receipts** | $ 45,484.52 (1) |

*(1) Total for all accounts should agree with total cash receipts listed on Form 2-B, page 1*

Rev. 01/01/2018

DEBTOR(S): CHEYENNE HOTEL INVESTMENTS LLC                    CASE NO: 19-15473-KHT

## Form 2-B
### CASH RECEIPTS AND DISBURSEMENTS STATEMENT
For Period: 11/1/2019 to 11/30/2019

### CASH DISBURSEMENTS DETAIL
*(attach additional sheets as necessary)*

Account No: 0

| Date | Check No. | Payee | Description (Purpose) | Amount |
|------|-----------|-------|----------------------|--------|
| 11/04/2019 | | Sysco | | 683.78 |
| 11/12/2019 | | Sysco | | 555.52 |
| 11/19/2019 | | Sysco | | 517.24 |
| | | | | |
| 11/03/2019 | 5 | U.S. Trustee Payment Center | | 325.00 |
| 11/27/2019 | | | | 12,000.00 |
| 11/22/2019 | | Ascentium Capital LLC. | | 1,470.38 |
| 11/12/2019 | | DirecTV | | 101.99 |
| 11/29/2019 | | USA Today | | 767.97 |
| 11/27/2019 | | USA Today | | 401.18 |
| 11/04/2019 | | | | 3.24 |
| 11/18/2019 | | Colorado Springs Utilities | | 5,005.85 |
| 11/18/2019 | | Colorado Springs Utilities | | 3,129.01 |
| 11/08/2019 | | | | 525.00 |
| 11/05/2019 | | | | 33.00 |
| 11/08/2019 | | | | 33.00 |
| 11/30/2019 | SVCCHRG | | | 0.07 |
| 11/18/2019 | | Jonas Chorum MSI | | 441.16 |
| 11/22/2019 | | Jonas Chorum MSI | | 59.40 |
| 11/12/2019 | | Mercedes Benz Financial | | 652.62 |
| 11/25/2019 | | TRN Corp | | 7,000.00 |
| 11/29/2019 | | TRN Corp | | 5,000.00 |
| | | **Total Cash Disbursements** | | $ 38,705.41 |

*(1) Total for all accounts should agree with total cash disbursements listed on Form 2-B, page 1*

Rev. 01/01/2018

| DEBTOR(S): | CHEYENNE HOTEL INVESTMENTS LLC | CASE NO: | 19-15473-KHT |
|---|---|---|---|

**Form 2-C**
## COMPARATIVE BALANCE SHEET
### For Period Ended: ########

| | | Current Month | | Petition Date (1) |
|---|---|---|---|---|
| ***ASSETS*** | | | | |
| Current Assets: | | | | |
| Cash (from Form 2-B, line 5) (Unrestricted) | $ | (23,171) | $ | (34,473) |
| Cash (from Form 2-B, line 5) (Restricted) | | 872,743 | | 317,753 |
| Accounts Receivable (from Form 2-E) | | 239,494 | | 96,150 |
| Receivable from Officers, Employees, Affiliates | | - | | - |
| Inventory | | | | - |
| Other Current Assets :(List)    Prepaid Expenses | | 14,918 | | 126,029 |
| Total Current Assets | $ | 1,103,985 | $ | 505,459 |
| Fixed Assets: | | | | |
| Land | $ | 875,182 | $ | 875,182 |
| Building | | 8,984,411 | | 8,984,411 |
| Equipment, Furniture and Fixtures | | 1,239,935 | | 1,239,935 |
| Total Fixed Assets | | 11,099,528 | | 11,099,528 |
| Less: Accumulated Depreciation | ( | 2,955,591 ) | ( | 2,953,114 ) |
| Net Fixed Assets | $ | 8,143,937 | $ | 8,146,414 |
| Other Assets (List):    Intangible | | 3,304 | | 4,494 |
|    Rounding | | | | 1 |
| **TOTAL ASSETS** | $ | 9,251,226 | $ | 8,656,367 |
| ***LIABILITIES*** | | | | |
| Post-petition Accounts Payable (from Form 2-E) | $ | 115,006 | $ | - |
| Post-petition Accrued Profesional Fees (from Form 2-E) | | - | | - |
| Post-petition Taxes Payable (from Form 2-E) | | 51,042 | | - |
| Other Post-petition Payable(List): Credit Cards | | 1,736 | | - |
|    Due to Affiliates | | 222,296 | | - |
|    Accrued Interest and Fees | | 868,288 | | - |
| Total Post Petition Liabilities | $ | 1,258,367 | $ | - |
| Pre Petition Liabilities: | | | | |
| Secured Debt | | 6,892,894 | | 6,910,523 |
| Priority Debt | | - | | - |
| Unsecured Debt | | 129,788 | | 129,788 |
| Total Pre Petition Liabilities | $ | 7,022,682 | $ | 7,040,312 |
| **TOTAL LIABILITIES** | $ | 8,281,049 | $ | 7,040,312 |
| ***OWNERS' EQUITY*** | | | | |
| Owner's/Stockholder's Equity | $ | 970,176 | $ | 1,556,780 |
| Retained Earnings - Prepetition | | - | | - |
| Retained Earnings - Post-petition | | - | | - |
| **TOTAL OWNERS' EQUITY** | $ | 970,176 | $ | 1,556,780 |
| **TOTAL LIABILITIES AND OWNERS' EQUITY** | $ | 9,251,226 | $ | 8,597,092 |

*(1) Petition date values are taken from the Debtor's balance sheet as of the petition date or are the values
listed on the Debtor's schedules.*

Rev. 01/01/2018

**DEBTOR(S):**  Cheyenne Hotel Investments, LLC     **CASE NO:** 19-15473-- KHT

### Form 2-D
### PROFIT AND LOSS STATEMENT
**For Period**  11/1/2019 **to**  11/30/2019

|  | Current Month | Accumulated Total (1) |
|---|---|---|
| Gross Operating Revenue | $ 45,036 | $ 974,050 |
| Less: Discounts, Returns and Allowances | ( - ) | ( - ) |
| **Net Operating Revenue** | $ 45,036 | $ 974,050 |
| Cost of Goods Sold | - | - |
| **Gross Profit** | $ 45,036 | $ 974,050 |
| Operating Expenses |  |  |
| Officer Compensation | $ - | $ - |
| Selling, General and Administrative | 50,655 | 602,810 |
| Rents and Leases | 653 | 3,263 |
| Depreciation, Depletion and Amortization | 611 | 3,667 |
| Other (list): | - | - |
|  | - | - |
| Total Operating Expenses | $ 51,919 | $ 609,741 |
| **Operating Income (Loss)** | $ (6,883) | $ 364,309 |
| Non-Operating Income and Expenses |  |  |
| Other Non-Operating Expenses | $ (4,027) | $ (68,996) |
| Gains (Losses) on Sale of Assets | - | - |
| Interest Income | 0 | 0 |
| Interest Expense | (173,658) | (906,348) |
| Other Non-Operating Income | 0 | 311 |
| Net Non-Operating Income or (Expenses) | $ (177,684) | $ (975,033) |
| Reorganization Expenses |  |  |
| Legal and Professional Fees | $ | $ |
| Other Reorganization Expense | 325 | 975 |
| Total Reorganization Expenses | $ 325 | $ 975 |
| **Net Income (Loss) Before Income Taxes** | $ (184,891) | $ (611,699) |
| Federal and State Income Tax Expense (Benefit) | - | - |
| **NET INCOME (LOSS)** | $ (184,891) | $ (611,699) |

*(1) Accumulated Totals include all revenue and expenses since the petition date.*

Rev. 01/01/2018

DEBTOR(S):      CHEYENNE HOTEL INVESTMENTS LLC      CASE NO: 19-15473-KHT

**Form 2-E (Page 1 of 2)**
**SUPPORTING SCHEDULES**

**For Period:** 11/1/2019    to    11/30/2019

| | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| **Summary of Post-Petition Taxes** | | | | |
| Type of tax | Unpaid post-petition taxes from prior reporting month(1) | Post-petition taxes accrued this month (new obligations) | Post-petition tax payments made this reporting month | Unpaid post-petition taxes at end of reporting month (columns 1+2-3) |
| **Federal** | | | | |
| Employee income tax withheld | | | | |
| Employee FICA taxes withheld | | | | |
| Employer FICA taxes | | | | |
| Unemployment taxes | | | | |
| Other: | | | | |
| **State** | | | | |
| Sales, use & excise taxes | 46,623 | 4,419 | | 51,042 |
| Unemployment taxes | | | | |
| Other: | | | | |
| **Local** | | | | |
| Personal property taxes | | | | |
| Real property taxes | | | | |
| Other: | | | | |
| Total unpaid post-petition taxes | | | | 51,042 |

*(1) For first report, the beginning balance in column 1 will be $0; thereafter, beginning balance will be ending balance from prior report.*

| **Insurance Coverage Summary** | | | | |
|---|---|---|---|---|
| Type of insurance | Insurance carrier | Coverage amount | Policy expiration date | Premium paid through date |
| Workers' compensation | Pinnacol Assurance | $1MM/$1MM/$1MM | 11/1/2020 | |
| General liability | Midwest Mutual | $1M/$2M | 1/1/2020 | |
| Property (fire, theft, etc.) | Midwest Mutual | 9,325,900bldg/1,573,000 | 1/1/2020 | |
| Vehicle | Midwest Mutual | 1,000,000 | 1/1/2020 | |
| Other (list): | Midwest Mutual | 9,000,000 umbrella | 1/1/2020 | |
| Other (list): | | | | |
| *If any policies were renewed or replaced during reporting period, attach new certificate of insurance.* | | | | |

Page 1 of 2
Rev. 01/01/2018

DEBTOR(S): CHEYENNE HOTEL INVESTMENTS LLC     CASE NO: 19-15473-KHT

Form 2-E (Page 2 of 2)
SUPPORTING SCHEDULES

For Period: _____ 11/1/2019 _____ to _____ 11/30/2019 _____

### Accounts Receivable Aging Summary (attach detailed aging report)

|  | 30 days or less | 31 to 60 days | 61 to 90 days | Over 90 days | Total at month end |
|---|---|---|---|---|---|
| Pre-petition receivables |  |  |  |  |  |
| Post-petition receivables |  |  |  |  |  |
| Total |  |  |  |  |  |

### Post-Petition Accounts Payable Aging Summary (attach detailed aging report)

|  | 30 days or less | 31 to 60 days | 61 to 90 days | Over 90 days | Total at month end |
|---|---|---|---|---|---|
| Trade Payables | 2,470 | 5,413 | 720 | 106,402 | 115,006 |
| Sales Taxes | 4,419 | 14,452 | 17,390 | 14,780 | 51,042 |
| Credit Cards |  | 1,089 |  | 647 | 1,736 |
| Insider Payables | 11,021 | 34,961 | 45,399 | 130,915 | 222,296 |
| Accrued Interest & Fees | 173,658 | 173,658 | 173,658 | 347,316 | 868,288 |
| Total | 191,568 | 40,374 | 46,119 | 237,317 | 1,258,369 |

### SCHEDULE OF PAYMENTS TO ATTORNEYS AND OTHER PROFESSIONALS

|  | Month-end Retainer Balance | Current Month's Accrual | Paid in Current Month | Court Approval Date | Month-end Balance Due * |
|---|---|---|---|---|---|
| Debtor's Counsel | $ - | $ 4,850.00 | $ - |  | $ 37,636.00 |
| Counsel for Unsecured Creditors' Committee |  |  | $ - |  |  |
| Trustee's Counsel |  |  |  |  |  |
| Accountant | $ - |  | $ - |  | $ - |
| Other: |  |  | $ - |  |  |
| Total | $ - | $ 4,850.00 | $ - |  | $ 37,636.00 |

*Balance due to include fees and expenses incurred but not yet paid.

### SCHEDULE OF PAYMENTS AND TRANSFERS TO PRINCIPALS/EXECUTIVES**

| Payee Name | Position | Nature of Payment | Amount |
|---|---|---|---|
| Samira Khan | Shareholder | Distribution | 12,000 |
| TRN | Affiliate | Operating Expenses | 7,000 |
| TRN | Affiliate | Operating Expenses | 5,000 |
|  |  |  |  |

**List payments and transfers of any kind and in any form made to or for the benefit of any proprietor, owner, partner, shareholder, officer, or director.

Page 2 of 2
Rev. 01/01/2018

DEBTOR(S): **CHEYENNE HOTEL INVESTMENTS LLC**     CASE NO: 19-15473-KHT

**Form 2-F**
**QUARTERLY FEE SUMMARY \***
**For the Month Ended:**  11/30/2019

| Month | Year | Cash Disbursements ** | Quarterly Fee Due | Check No. | Date Paid |
|-------|------|------------------------|-------------------|-----------|-----------|
| January | | $        $0 | | | |
| February | | $0 | | | |
| March | | $0 | | | |
| **TOTAL 1st Quarter** | | $        $0   $ | | | |
| April | | $        $0 | | | |
| May | | $0 | | | |
| June | | $0 | | | |
| **TOTAL 2nd Quarter** | | $        $0   $ | | | |
| July | 19 | $        $276,148 | | | |
| August | 19 | $52,884 | | | |
| September | 19 | $80,611 | | | |
| **TOTAL 3rd Quarter** | | $        $409,642.53   $ | | | |
| October | 19 | $        $48,962.23 | | | |
| November | 19 | $38,705.41 | | | |
| December | | $0.00 | | | |
| **TOTAL 4th Quarter** | | $        $87,667.64   $ | | | |

## FEE SCHEDULE (as of JANUARY 1, 2018)
*Subject to changes that may occur to 28 U.S.C. §1930(a)(6)*

| Quarterly Disbursements | Fee | Quarterly Disbursements | Fee |
|--------------------------|-----|--------------------------|-----|
| $0 to $14,999................... | $325 | $225,000 to $299,999................. | $1,950 |
| $15,000 to $74,999.......... | $650 | $300,000 to $999,999................. | $4,875 |
| $75,000 to $149,999........ | $975 | $1,000,000 or more***................ | 1% of quarterly disbursements or $250,000, whichever is less (subject to change after 9/30/2018)*** |
| $150,000 to $224,999...... | $1,625 | | |

\*   This summary is to reflect the current calendar year's information cumulative to the end of the reporting period

\*\*   Should agree with line 3, Form 2-B.  Disbursements are net of transfers to other debtor in possession bank accounts

\*\*\*   For disbursements in excess of $1,000,000, this amount is subject to annual adjustment. Please refer to
\*\*\*\*

*Failure to pay the quarterly fee is cause for conversion or dismissal of the chapter 11 case. [11 U.S.C. Sec. 1112(b)(10)]*
*In addition, unpaid fees are considered a debt owed to the United States and will be assessed interest under 31 U.S.C. §3717*

Rev. 01/01/2018

DEBTOR:   CHEYENNE HOTEL  INVESTMENTS LLC          CASE NO: 19-15473-KHT

### Form 2-G
# NARRATIVE
#### For Period Ending 11/30/2019

Please provide a brief description of any significant business and legal actions taken by the debtor, its creditors, or the court during the reporting period, any unusual or non-recurring accounting transactions that are reported in the financial statements, and any significant changes in the financial condition of the debtor which have occurred susequent to the report date.

Items in the Column "Petition Date" on Form 2-C are extracted from the Debtor's Schedules of Assets and Liabilities except as noted.   Note (1) is that the Prepetition Priority Debt is entered as -0-, solely because the amounts of the debts were unknown on the petition date.  The amounts shown on the MOR are based upon more recent information than was available on the Petition Date.  For purposes of this Report, the Debtor defined "insiders" pursuant to Section 101(31) of the Bankruptcy Code as: (a) the Manager in control of the Debtor; (b) relatives of the Debtor's Manager, and (c) entities in common control with the Debtor.  The following abbreviations have been adopted to designate certain insiders:  SK = Samira Khan, Manager and sole owner of the Debtor; CH = Cheyenne Hotels, LLC, an entity under common control with the Debtor; TK = TK Hotels, LLC, an entity in which SK holds a controlling interest; and TRN = TRN Management & Development Group, Inc., an entity in which SK holds a controlling interest and which manages the Debtor's Colorado Springs hotel pursuant to a Management Agreement.  Notwithstanding the Debtor's efforts to properly characterize, classify categorize, or designate certain claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements, the Debtor may nevertheless have improperly characterized, classified, categorized, designated, or omitted certain items.  Accordingly, the Debtor reserves all of its rights to re-characterize, reclassify, recategorize, redesignate, add, or delete items reported in this Report at a later time as is necessary or appropriate as additional information becomes available, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired post-petition.  The Debtor reserves all rights to amend or supplement this Report from time to time, in all respects, as may be necessary or appropriate.

Rev. 01/01/2018

Cheynenne Hotel Investments, LLC                    Case No.  19-15473
MOR: 11/30/2019                                         Attachments

# PB&T BANK
Local People Making Local Decisions Since 1889

PB&T Bank
301 W 5th St
Pueblo, CO 81003
(719) 545-1834
(888)728-3550

**STATEMENT OF ACCOUNT**

| ACCOUNT NO. | STATEMENT PERIOD | PAGE |
|---|---|---|
| XXXXX6195 | 11/01/2019 - 11/30/2019 | 1 of 2 |

| | | |
|---|---|---|
| PREVIOUS BALANCE | | 1,118.86 |
| DEPOSITS/CREDITS | (0) | 0.00 |
| CHECKS/DEBITS | (0) | 0.00 |
| ENDING BALANCE | | 1,118.86 |
| DAYS IN STATEMENT PERIOD | | 30 |

Our Castle Rock branch is located at 360 Perry Street
in the heart of downtown Castle Rock.
We are happy to serve you Monday-Friday
8:00 a.m - 5:00 p.m. Please stop in or contact us
at 303-688-3587.

CHEYENNE HOTEL INVESTMENTS LLC
225 E CHEYENNE MTN BLV STE 210
COLORADO SPRINGS CO 80906

| TRANSACTION DATE | TRANSACTION TYPE | DESCRIPTION OF TRANSACTION | AMOUNT |
|---|---|---|---|
| Free Business Checking | | | |
| | | DEPOSITS / OTHER CREDITS | |
| | | WITHDRAWALS / OTHER DEBITS | |
| | | DAILY ENDING BALANCE | |

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 11/01 | 1,118.86 | | | | |

| | Total for this Period | Total Year to Date |
|---|---|---|
| Total overdraft fees | 0.00 | 0.00 |
| Total returned item fees | 0.00 | 87.00 |

# PUEBLO BANK AND TRUST

| ACCOUNT NO. | STATEMENT PERIOD | PAGE |
|---|---|---|
| XXXXX6195 | 11/01/2019 - 11/30/2019 | 2 of 2 |

**IMPORTANT DISCLOSURES TO OUR CONSUMER CUSTOMERS**
**In Case of Errors or Questions About Your Checking or Savings Electronic Transfers**
If you think your statement or receipt is wrong or if you need more information about a transfer listed on your statement or receipt, we must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared. Telephone us at one of the numbers listed or write us at The Pueblo Bank and Trust Company, P.O. Box 639, Pueblo, CO 81002.

- Tell us your name and account number.
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will tell you the results of our investigation within 10 business days and will correct any error promptly. If we need more time, we may take up to 45 days to investigate your complaint or question. In that case, we will provisionally credit your account within 10 business days for the amount you think is in error so that you will have the use of money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not re-credit your account. If we decide there was no error, we will send you a written explanation within 3 business days after we finish our investigation. You may ask for copies of the documents that we used in our investigation. For transfers initiated outside the United States or transfers resulting from point of sale debit card transactions, the time period for provisional credit is 10 business days and the time to resolve the investigation is 90 days.

**CONSUMER BILLING RIGHTS SUMMARY**
**In Case of Errors or Questions About Your Line of Credit Statement**
If you think your statement is wrong, or if you need more information about a transaction on your statement, write us on a separate sheet at P.O Box 639, Pueblo, CO 81002 as soon as possible. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Date the transaction occurred.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about. You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your statement that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

**Special Rule for Credit Card Purchases (This applies when you have a check card and a line of credit)**
If you have a problem with the quality of goods or services that you purchased with a credit card and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. You have this protection only when the purchase price was more than $50 and the purchase was made in your home state or within 100 miles of your mailing address. (If we own or operate the merchant or if we mailed you the advertisement for the property or services, all purchases are covered regardless of amount or location of purchase.)

**RESERVE LINE OF CREDIT**
We figure the FINANCE CHARGE on your account by applying the daily periodic rate to the "average daily balance" of your account (including current transactions) and multiply by the number of days in the statement cycle. To get the "average daily balance" we take the beginning balance of your account each day, add any new advances, and subtract any payments or credits. This gives us the daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. The FINANCE CHARGE begins from the date of each advance.

**IMPORTANT DISCLOSURES TO OUR BUSINESS CUSTOMERS**
Errors related to any transaction on a business account will be governed by any agreement between us and/or all applicable rules and regulations governing such transactions, including the rules of the National Automated Clearing House Association (NACHA Rules) as may be amended from time to time. If you think this statement is wrong, please telephone us at the number listed on the front of this statement immediately.

rev. 4/03

12/4/2019

Cheyenne Hotel Investments LLC

**1005 PB&T Checking 6195, Period Ending 11/30/2019**

**RECONCILIATION REPORT**

Reconciled on: 12/04/2019

Reconciled by: Shelley Sheehan

Any changes made to transactions after this date aren't included in this report.

| Summary | USD |
|---|---|
| Statement beginning balance | 1,118.86 |
| Checks and payments cleared (0) | 0.00 |
| Deposits and other credits cleared (0) | 0.00 |
| Statement ending balance | 1,118.86 |
| | |
| Register balance as of 11/30/2019 | 1,118.86 |



KeyBank
P.O. Box 93885
Cleveland, OH 44101-5885

**Corporate Banking Statement**
**November 30, 2019**
**page 1 of 3**

329681169796

13        T   968 00000 R EM AO

CHEYENNE HOTEL INVESTMENTS, LLC
DBA HOMEWOOD SUITES LB FBO WELLS
FARGO, AS TRUSTEE FOR CSFB 2006-C1
225 E CHEYENNE MOUNTAIN BLVD STE 210
COLORADO SPRINGS CO 80906-3700

*Questions or comments?*
*Call  1-800-821-2829*

Commercial Control Transaction   329681169796
CHEYENNE HOTEL INVESTMENTS, LLC
DBA HOMEWOOD SUITES LB FBO WELLS
FARGO, AS TRUSTEE FOR CSFB 2006-C1

| | |
|---|---:|
| Beginning balance 10-31-19 | $0.00 |
| 3 Additions | +594.24 |
| 1 Subtraction | -3.24 |
| Net fees and charges | -591.00 |
| **Ending balance 11-30-19** | **$0.00** |

## Additions

| Transfers Date | Serial # | Source | | |
|---|---|---|---|---:|
| 11-4 | | Funds Transfer From DDA Account | 329681169788 | $3.24 |
| 11-5 | | Funds Transfer From DDA Account | 329681169788 | 33.00 |
| 11-8 | | Funds Transfer From DDA Account | 329681169788 | 558.00 |
| | | **Total additions** | | **$594.24** |

## Subtractions

| Withdrawals Date | Serial # | Location | |
|---|---|---|---:|
| 11-4 | | Direct Withdrawal, Merchant S 8085102286 | $3.24 |
| | | **Total subtractions** | **$3.24** |

## Fees and charges

| Date | | Quantity | Unit Charge | |
|---|---|---|---|---:|
| 11-5-19 | Returned Item Charge | 1 | 33.00 | -$33.00 |
| 11-8-19 | Oct Analysis Service Chg | 1 | 525.00 | -525.00 |
| 11-8-19 | Returned Item Charge | 1 | 33.00 | -33.00 |
| | **Fees and charges   assessed this period** | | | **-$591.00** |

329681169796 - 03290
6780

**Corporate Banking Statement**
**November 30, 2019**
**page 2 of 3**

329681169796

*See your Account Analysis statement for details.*

329681169796 - 03290
6780



## CUSTOMER ACCOUNT DISCLOSURES

The following disclosures apply only to accounts covered by the Federal Truth-in-Lending Act or the Federal Electronic Funds Transfer Act, as amended, or similar state laws.

**IN CASE OF ERROR OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS:**

Call us at the phone number indicated on the first page of this statement, OR write us at the address listed below*, as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than sixty (60) days after we sent you the FIRST statement on which the problem or error appeared.

* KeyBank
  Customer Disputes
  NY-31-17-0128
  17 Corporate Woods Blvd
  Albany, NY 12211

- Tell us your name and Account number;
- Describe the error or transfer that you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information;
- Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within ten (10) business days.

We will investigate your complaint and will correct any error promptly. If we take more than ten (10) business days to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

**COMMON ELECTRONIC TRANSACTION DESCRIPTIONS:**

| | |
|---|---|
| XFER TO SAV | - Transfer to Savings Account |
| XFER FROM SAV | - Transfer from Savings Account |
| XFER TO CKG | - Transfer to Checking Account |
| XFER FROM CKG | - Transfer from Checking Account |
| PMT TO CR CARD | - Payment to Credit Card |
| ADV CR CARD | - Advance from Credit Card |

**Preauthorized Credits:** If you have arranged to have direct deposits made to your Account at least once every sixty (60) days from the same person or company, you can call us at the number indicated on the reverse side to find out whether or not the deposit has been made.

**IMPORTANT LINE OF CREDIT INFORMATION**

**What To Do If You Think You Find A Mistake on Your Statement:** If you think there is an error on your statement, write us at: KeyBank N.A., P.O Box 93885, Cleveland, OH 44101- 4825.

In your letter, give us the following information:

- Account Information : Your name and account number.
- Dollar Amount : The dollar amount of the suspected error.
- Description of the Problem : If you think there is an error on your bill, describe what you believe is wrong and why you believe it was a mistake.

You must contact us within 60 days after the error appeared on your statement. You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**Explanation of Finance Charge:** Your Finance Charge attributable to interest (hereinafter referred to as interest) is computed using the Average Daily Balance method.

**Average Daily Balance method (Balance Subject to Interest Rate):** Your interest is computed on all purchases and cash advances (collectively "advances") from the date each advance is posted until we receive payment in full (there is no grace period). We figure the interest on your line of credit by multiplying the daily periodic rate by the "Average Daily Balance" of your line of credit (including current transactions) and multiplying by the number of days in the billing cycle. To get the Average Daily Balance we take the beginning balance of your line of credit each day, add any new advances or debits, and subtract any payments and credits, any non-financed fees and unpaid interest. This gives us the daily balance. Then we add up all of your daily balances in the billing cycle and divide this total by the number of days in the billing cycle to get your Average Daily Balance.

**CREDIT INFORMATION:** If you believe we have reported inaccurate information about your account to a credit reporting agency, you may contact the credit reporting agency or write to us at:

Key Credit Research Department
P.O. Box 94518
Cleveland, Ohio 44101-4518

Please include your account number, a copy of your credit report reflecting the inaccurate information, name, address, city, state, and zip code, and an explanation of why you believe the information is inaccurate.

### BALANCING YOUR ACCOUNT

Please examine your statement and paid check information upon receipt. Erasures, alterations or irregularities should be reported promptly in accordance with your account agreement. The suggested steps below will help you balance your account.

**INSTRUCTIONS**

**❶ Verify and check off** in your check register each deposit, check or other transaction shown on this statement.

**Enter into your check register and SUBTRACT:**

- Checks or other deductions shown on our statement that you have *not* already entered.
- The "Service charges", if any, shown on your statement.

**Enter into your check register and ADD:**

- Deposits or other credits shown on your statement that you have *not* already entered.
- The "Interest earned" shown on your statement, if any.

| ❹ List from your check register any checks or other deductions that are *not* shown on your statement. | | ❺ List any deposits from your check register that are *not* shown on your statement. | |
|---|---|---|---|
| Check # or Date | Amount | Date | Amount |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TOTAL → | $ |

| ❻ Enter ending balance shown on your statement. |
|---|
| $ |

| ❼ Add 5 and 6 and enter total here. |
|---|
| $ |

| ❽ Enter total from 4. |
|---|
| $ |

| ❾ Subtract 8 from 7 and enter difference here. |
|---|
| $ |

This amount should agree with your check register balance.

| TOTAL → | $ |
|---|---|

329681169796 - 03290
6780



**PB&T BANK**
Local People Making Local Decisions Since 1889

PB&T Bank
301 W 5th St
Pueblo, CO 81003
(719) 545-1834
(888)728-3550

### STATEMENT OF ACCOUNT

| ACCOUNT NO. | STATEMENT PERIOD | PAGE |
|---|---|---|
| XXXXX6518 | 11/01/2019 - 11/30/2019 | 1 of 2 |

| | | |
|---|---|---|
| **PREVIOUS BALANCE** | | 78.68 |
| **DEPOSITS/CREDITS** | (10) | 44,407.35 |
| **CHECKS/DEBITS** | (16) | 38,245.67 |
| **ENDING BALANCE** | | 6,240.36 |
| **DAYS IN STATEMENT PERIOD** | | 30 |

CHEYENNE HOTEL INVESTMENTS LLC
SAMIRA A KHAN, AUTH SIGN
DBA HOMEWOOD SUITES COLORADO SPGS AIRPOR
225 E CHEYENNE MTN BLV STE 210
COLORADO SPRINGS CO 80906

Our Castle Rock branch is located at 360 Perry Street
in the heart of downtown Castle Rock.
We are happy to serve you Monday-Friday
8:00 a.m - 5:00 p.m. Please stop in or contact us
at 303-688-3587.

| TRANSACTION DATE | TRANSACTION TYPE | DESCRIPTION OF TRANSACTION | AMOUNT |
|---|---|---|---|
| **Free Business Checking** | | | |
| | | **DEPOSITS / OTHER CREDITS** | |
| 11/04/2019 | Online Transfer | INTERNET XFR FRM Classic 50 XXXXXX3271 | 1,000.00 |
| 11/05/2019 | Online Transfer | INTERNET XFR FRM Classic 50 XXXXXX3271 | 100.00 |
| 11/12/2019 | ACH Deposit | 8035484677 MERCHANT SERVICE MERCH DEP | 9,257.49 |
| 11/12/2019 | ACH Deposit | 8035484677 MERCHANT SERVICE MERCH DEP | 19,194.70 |
| 11/12/2019 | Online Transfer | INTERNET XFR FRM Classic 50 XXXXXX3271 | 700.00 |
| 11/18/2019 | ACH Deposit | 8035484677 MERCHANT SERVICE MERCH DEP | 6,037.07 |
| 11/20/2019 | Deposit | | 181.92 |
| 11/22/2019 | ACH Deposit | 8035484677 MERCHANT SERVICE MERCH DEP | 3,814.37 |
| 11/27/2019 | ACH Deposit | 8035484677 MERCHANT SERVICE MERCH DEP | 2,821.80 |
| 11/27/2019 | Online Transfer | INTERNET XFR FRM Free Sm Bu XXXXXX9127 | 1,300.00 |

**CHECK RECAP**

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 1748 | 11/05 | 459.57 | | | | | | |

* SKIP IN CHECK NUMBER SEQUENCE

| | | **WITHDRAWALS / OTHER DEBITS** | |
|---|---|---|---|
| 11/04/2019 | ACH Payment | Cust #721860 SYSCO DENVER     VENDOR PAY | 683.78 |
| 11/12/2019 | ACH Payment | XXXXXXXXX DIRECTV Payment | 101.99 |
| 11/12/2019 | ACH Payment | Cust #721860 SYSCO DENVER     VENDOR PAY | 555.52 |
| 11/12/2019 | ACH Payment | 5001191042 MBFS.COM Auto Pay | 652.62 |
| 11/18/2019 | ACH Payment | 59699382 JonasChorumMSI    PURCHASE | 441.16 |
| 11/18/2019 | ACH Payment | COS UTILITIES UTILITIES 719-448-4800 | 3,129.01 |
| 11/18/2019 | ACH Payment | COS UTILITIES UTILITIES 719-448-4800 | 5,005.85 |
| 11/19/2019 | ACH Payment | Cust #721860 SYSCO DENVER     VENDOR PAY | 517.24 |
| 11/22/2019 | ACH Payment | 59837756 JonasChorumMSI    PURCHASE | 59.40 |
| 11/22/2019 | ACH Payment | 79518 AscentiumCapital LEASECHG | 1,470.38 |
| 11/25/2019 | Online Transfer | INTERNET XFR TO Free Sm Bu XXXXXX7452 | 7,000.00 |
| 11/27/2019 | Withdrawal | | 12,000.00 |
| 11/27/2019 | ACH Payment | 168815 USA TODAY ACH | 401.18 |
| 11/29/2019 | Online Transfer | INTERNET XFR TO Free Sm Bu XXXXXX7452 | 5,000.00 |
| 11/29/2019 | ACH Payment | 168631 USA TODAY ACH | 767.97 |

**DAILY ENDING BALANCE**

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 11/01 | 78.68 | 11/05 | 35.33 | 11/18 | 25,338.44 |
| 11/04 | 394.90 | 11/12 | 27,877.39 | 11/19 | 24,821.20 |

# PUEBLO BANK AND TRUST

| ACCOUNT NO. | STATEMENT PERIOD | PAGE |
|---|---|---|
| XXXXX6518 | 11/01/2019 - 11/30/2019 | 2 of 2 |

| TRANSACTION DATE | TRANSACTION TYPE | DESCRIPTION OF TRANSACTION | AMOUNT |
|---|---|---|---|

### DAILY ENDING BALANCE

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 11/20 | 25,003.12 | 11/25 | 20,287.71 | 11/29 | 6,240.36 |
| 11/22 | 27,287.71 | 11/27 | 12,008.33 | | |

| | Total for this Period | Total Year to Date |
|---|---|---|
| Total overdraft fees | 0.00 | 0.00 |
| Total returned item fees | 0.00 | 0.00 |

**IMPORTANT DISCLOSURES TO OUR CONSUMER CUSTOMERS**
**In Case of Errors or Questions About Your Checking or Savings Electronic Transfers**
If you think your statement or receipt is wrong or if you need more information about a transfer listed on your statement or receipt, we must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared. Telephone us at one of the numbers listed or write us at The Pueblo Bank and Trust Company, P.O. Box 639, Pueblo, CO 81002.
*   Tell us your name and account number.
*   Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
*   Tell us the dollar amount of the suspected error.
We will tell you the results of our investigation within 10 business days and will correct any error promptly. If we need more time, we may take up to 45 days to investigate your complaint or question. In that case, we will provisionally credit your account within 10 business days for the amount you think is in error so that you will have the use of money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not re-credit your account. If we decide there was no error, we will send you a written explanation within 3 business days after we finish our investigation. You may ask for copies of the documents that we used in our investigation. For transfers initiated outside the United States or transfers resulting from point of sale debit card transactions, the time period for provisional credit is 10 business days and the time to resolve the investigation is 90 days.

**CONSUMER BILLING RIGHTS SUMMARY**
**In Case of Errors or Questions About Your Line of Credit Statement**
If you think your statement is wrong, or if you need more information about a transaction on your statement, write us on a separate sheet at P.O Box 639, Pueblo, CO 81002 as soon as possible. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:
*   Your name and account number.
*   The dollar amount of the suspected error.
*   Date the transaction occurred.
*   Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about. You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your statement that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.
**Special Rule for Credit Card Purchases (This applies when you have a check card and a line of credit)**
If you have a problem with the quality of goods or services that you purchased with a credit card and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. You have this protection only when the purchase price was more than $50 and the purchase was made in your home state or within 100 miles of your mailing address. (If we own or operate the merchant or if we mailed you the advertisement for the property or services, all purchases are covered regardless of amount or location of purchase.)

**RESERVE LINE OF CREDIT**
We figure the FINANCE CHARGE on your account by applying the daily periodic rate to the "average daily balance" of your account (including current transactions) and multiply by the number of days in the statement cycle. To get the "average daily balance" we take the beginning balance of your account each day, add any new advances, and subtract any payments or credits. This gives us the daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. The FINANCE CHARGE begins from the date of each advance.

**IMPORTANT DISCLOSURES TO OUR BUSINESS CUSTOMERS**
Errors related to any transaction on a business account will be governed by any agreement between us and/or all applicable rules and regulations governing such transactions, including the rules of the National Automated Clearing House Association (NACHA Rules) as may be amended from time to time. If you think this statement is wrong, please telephone us at the number listed on the front of this statement immediately.

rev. 4/03



KeyBank
P.O. Box 93885
Cleveland, OH 44101-5885

**Corporate Banking Statement**
**November 30, 2019**
**page 1 of 2**

329681169788

13      T   968 00000 R EM AO
CHEYENNE HOTEL INVESTMENTS, LLC
DBA HOMEWOOD SUITES CMA WELLS FARGO
AS TRUSTEE FOR CSFB 2006-C1
225 E CHEYENNE MOUNTAIN BLVD STE 210
COLORADO SPRINGS CO 80906-3700

*Questions or comments?*
*Call 1-800-821-2829*

Commercial Control Transaction   329681169788
CHEYENNE HOTEL INVESTMENTS, LLC
DBA HOMEWOOD SUITES CMA WELLS FARGO
AS TRUSTEE FOR CSFB 2006-C1

| | |
|---|---:|
| Beginning balance 10-31-19 | $859.00 |
| 3 Subtractions | -594.24 |
| **Ending balance 11-30-19** | **$264.76** |

## Subtractions

| Transfers | Date | Serial # | Destination | | |
|---|---|---|---|---|---:|
| | 11-4 | | Funds Transfer To DDA Account | 329681169796 | $3.24 |
| | 11-5 | | Funds Transfer To DDA Account | 329681169796 | 33.00 |
| | 11-8 | | Funds Transfer To DDA Account | 329681169796 | 558.00 |
| | | | **Total subtractions** | | **$594.24** |

## Fees and charges

*See your Account Analysis statement for details.*

page 2 of 2

## CUSTOMER ACCOUNT DISCLOSURES

The following disclosures apply only to accounts covered by the Federal Truth-in-Lending Act or the Federal Electronic Funds Transfer Act, as amended, or similar state laws.

**IN CASE OF ERROR OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS:**

Call us at the phone number indicated on the first page of this statement, OR write us at the address listed below*, as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than sixty (60) days after we sent you the FIRST statement on which the problem or error appeared.

> \* KeyBank
> Customer Disputes
> NY-31-17-0128
> 17 Corporate Woods Blvd
> Albany, NY 12211

- Tell us your name and Account number;
- Describe the error or transfer that you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information;
- Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within ten (10) business days.

We will investigate your complaint and will correct any error promptly. If we take more than ten (10) business days to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

**COMMON ELECTRONIC TRANSACTION DESCRIPTIONS:**

| | |
|---|---|
| XFER TO SAV | - Transfer to Savings Account |
| XFER FROM SAV | - Transfer from Savings Account |
| XFER TO CKG | - Transfer to Checking Account |
| XFER FROM CKG | - Transfer from Checking Account |
| PMT TO CR CARD | - Payment to Credit Card |
| ADV CR CARD | - Advance from Credit Card |

**Preauthorized Credits:** If you have arranged to have direct deposits made to your Account at least once every sixty (60) days from the same person or company, you can call us at the number indicated on the reverse side to find out whether or not the deposit has been made.

**IMPORTANT LINE OF CREDIT INFORMATION**

**What To Do If You Think You Find A Mistake on Your Statement:** If you think there is an error on your statement, write us at: KeyBank N.A., P.O Box 93885, Cleveland, OH 44101- 4825.

In your letter, give us the following information:

- Account Information : Your name and account number.
- Dollar Amount : The dollar amount of the suspected error.
- Description of the Problem : If you think there is an error on your bill, describe what you believe is wrong and why you believe it was a mistake.

You must contact us within 60 days after the error appeared on your statement. You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**Explanation of Finance Charge:** Your Finance Charge attributable to interest (hereinafter referred to as interest) is computed using the Average Daily Balance method.

**Average Daily Balance method (Balance Subject to Interest Rate):** Your interest is computed on all purchases and cash advances (collectively "advances") from the date each advance is posted until we receive payment in full (there is no grace period). We figure the interest on your line of credit by multiplying the daily periodic rate by the "Average Daily Balance" of your line of credit (including current purchases) and multiplying by the number of days in the billing cycle. To get the Average Daily Balance we take the beginning balance of your line of credit each day, add any new advances or debits, and subtract any payments and credits, any non-financed fees and unpaid interest. This gives us the daily balance. Then we add up all of your daily balances in the billing cycle and divide this total by the number of days in the billing cycle to get your Average Daily Balance.

**CREDIT INFORMATION:** If you believe we have reported inaccurate information about your account to a credit reporting agency, you may contact the credit reporting agency or write to us at:

> Key Credit Research Department
> P.O. Box 94518
> Cleveland, Ohio 44101-4518

Please include your account number, a copy of your credit report reflecting the inaccurate information, name, address, city, state, and zip code, and an explanation of why you believe the information is inaccurate.

### BALANCING YOUR ACCOUNT

Please examine your statement and paid check information upon receipt. Erasures, alterations or irregularities should be reported promptly in accordance with your account agreement. The suggested steps below will help you balance your account.

**INSTRUCTIONS**

**❶ Verify and check off in your check register** each deposit, check or other transaction shown on this statement.

**Enter into your check register and SUBTRACT:**
- Checks or other deductions shown on our statement that you have *not* already entered.
- The "Service charges", if any, shown on your statement.

**Enter into your check register and ADD:**
- Deposits or other credits shown on your statement that you have *not* already entered.
- The "Interest earned" shown on your statement, if any.

| ❹ List from your check register any checks or other deductions that are *not* shown on your statement. | | ❺ List any deposits from your check register that are *not* shown on your statement. | |
|---|---|---|---|
| Check # or Date | Amount | Date | Amount |
| | | | |
| | | | |
| | | TOTAL ➔ | $ |
| | | ❻ Enter ending balance shown on your statement. | |
| | | $ | |
| | | ❼ Add 5 and 6 and enter total here. | |
| | | $ | |
| | | ❽ Enter total from 4. | |
| | | $ | |
| | | ❾ Subtract 8 from 7 and enter difference here. | |
| | | $ | |
| TOTAL ➔ | $ | This amount should agree with your check register balance. | |

329681169788 - 03290
6630

Cheyenne Hotel Investments LLC

**1004 KeyBank CMA 9788, Period Ending 11/30/2019**

RECONCILIATION REPORT

Reconciled on: 12/26/2019

Reconciled by: Jessica Niles

Any changes made to transactions after this date aren't included in this report.

|  | USD |
|---|---|
| **Summary** | |
| Statement beginning balance | 859.00 |
| Checks and payments cleared (3) | -594.24 |
| Deposits and other credits cleared (0) | 0.00 |
| Statement ending balance | 264.76 |
| | |
| Register balance as of 11/30/2019 | 264.76 |

**Details**

Checks and payments cleared (3)

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 11/04/2019 | Expense | | | -3.24 |
| 11/05/2019 | Expense | | | -33.00 |
| 11/08/2019 | Expense | | | -558.00 |
| Total | | | | -594.24 |

12/4/2019

Cheyenne Hotel Investments LLC

**1003 KeyBank-LB 9796, Period Ending 11/30/2019**

**RECONCILIATION REPORT**

Reconciled on: 12/04/2019

Reconciled by: Shelley Sheehan

Any changes made to transactions after this date aren't included in this report.

| Summary | USD |
|---|---|
| Statement beginning balance | 0.00 |
| Checks and payments cleared (0) | 0.00 |
| Deposits and other credits cleared (0) | 0.00 |
| Statement ending balance | 0.00 |
| | |
| Register balance as of 11/30/2019 | 0.00 |

1/30/2020

Cheyenne Hotel Investments LLC

**1000 PB&T Checking - 6518, Period Ending 10/31/2019**

**RECONCILIATION REPORT**

Reconciled on: 01/30/2020

Reconciled by: Jessica Niles

Any changes made to transactions after this date aren't included in this report.

| Summary | USD |
|---|---|
| Statement beginning balance | 0.00 |
| Checks and payments cleared (17) | -23,050.47 |
| Deposits and other credits cleared (10) | 23,129.15 |
| Statement ending balance | 78.68 |
| | |
| Uncleared transactions as of 10/31/2019 | -38,600.20 |
| Register balance as of 10/31/2019 | -38,521.52 |
| Cleared transactions after 10/31/2019 | 0.00 |
| Uncleared transactions after 10/31/2019 | 513.83 |
| Register balance as of 01/30/2020 | -38,007.69 |

**Details**

Checks and payments cleared (17)

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 10/01/2019 | Bill Payment | 1743 | Mike's Plumbing and Heating … | -423.75 |
| 10/01/2019 | Bill Payment | | Sysco | -1,097.31 |
| 10/01/2019 | Expense | | Sysco | -403.09 |
| 10/03/2019 | Bill Payment | 1745 | U.S. Trustee Payment Center | -325.00 |
| 10/04/2019 | Bill Payment | | Sysco | -65.68 |
| 10/08/2019 | Bill Payment | | Sysco | -1,087.49 |
| 10/11/2019 | Expense | | Mercedes Benz Financial | -652.62 |
| 10/15/2019 | Expense | | DirecTV | -101.99 |
| 10/16/2019 | Bill Payment | | Sysco | -564.38 |
| 10/17/2019 | Expense | | Jonas Chorum MSI | -5,760.25 |
| 10/22/2019 | Bill Payment | | Sysco | -772.25 |
| 10/24/2019 | Expense | | Ascentium Capital LLC. | -1,754.50 |
| 10/24/2019 | Bill Payment | | Sysco | -62.01 |
| 10/24/2019 | Expense | | Jonas Chorum MSI | -21.79 |
| 10/25/2019 | Expense | | Carbon's Golden Malted | -1,279.56 |
| 10/25/2019 | Bill Payment | | Colorado Springs Utilities | -8,437.56 |
| 10/25/2019 | Expense | | A-B Sales of Southern Colorado | -241.30 |
| Total | | | | -23,050.47 |

Deposits and other credits cleared (10)

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 10/01/2019 | Deposit | | TK Hotels | 1,500.40 |
| 10/02/2019 | Deposit | | TK Hotels | 348.75 |
| 10/02/2019 | Deposit | | Cheyenne Hotels LLC | 400.00 |
| 10/04/2019 | Deposit | | Cheyenne Hotels LLC | 100.00 |
| 10/08/2019 | Deposit | | Cheyenne Hotels LLC | 1,100.00 |
| 10/11/2019 | Deposit | | Cheyenne Hotels LLC | 980.00 |
| 10/15/2019 | Deposit | | Samira Khan | 7,000.00 |
| 10/23/2019 | Deposit | | Samira Khan | 2,000.00 |
| 10/23/2019 | Deposit | | Samira Khan | 9,000.00 |
| 10/25/2019 | Deposit | | Samira Khan | 700.00 |
| Total | | | | 23,129.15 |

**Additional Information**

Uncleared checks and payments as of 10/31/2019

1/30/2020

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 12/31/2017 | Journal | BegBal | | -100.00 |
| 02/13/2018 | Bill Payment | 1417 | Tariq Javed | -782.83 |
| 05/31/2018 | Bill Payment | 1492 | D Rock Landscaping | -280.00 |
| 06/20/2018 | Bill Payment | COSTax0720 | A-B Sales of Southern Colorado | -350.60 |
| 07/06/2018 | Bill Payment | 1514 | Joana Cruz | -200.00 |
| 07/30/2018 | Bill Payment | COSTax0721 | A-B Sales of Southern Colorado | -210.00 |
| 09/28/2018 | Bill Payment | 1587 | A-B Sales of Southern Colorado | -96.75 |
| 09/28/2018 | Bill Payment | 1584 | Cintas Fire | -750.64 |
| 09/28/2018 | Bill Payment | 1591 | Pikes Peak Regional Building … | -257.45 |
| 12/24/2018 | Bill Payment | 1624 | Hotelsigns.com | -488.91 |
| 01/15/2019 | Bill Payment | ACH | Colorado Springs Airport | -25.00 |
| 03/11/2019 | Bill Payment | 1676 | Carin Armstrong | -300.00 |
| 04/30/2019 | Bill Payment | 1704 | Golden Malted | -920.50 |
| 05/08/2019 | Bill Payment | 1702 | ASSA ABLOY Entrance Syste… | -459.57 |
| 05/31/2019 | Bill Payment | 1705 | CenturyLink | -1,408.45 |
| 06/05/2019 | Bill Payment | 1702 | Colorado Springs Utilities | -5,612.61 |
| 06/19/2019 | Bill Payment | 1700 | HD Supply | -6,170.44 |
| 06/22/2019 | Bill Payment | 1716 | Ecolab | -1,067.59 |
| 07/30/2019 | Expense | | Colorado Springs Utilities | -5.85 |
| 10/01/2019 | Bill Payment | 1744 | Tire World | -132.94 |
| 10/01/2019 | Bill Payment | COSTax0731 | Colorado Springs Utilities | -8,431.71 |
| 10/01/2019 | Bill Payment | COSTax0729 | AT&T WiFi Services | -749.00 |
| 10/03/2019 | Bill Payment | COSTax0727 | Cintas Fire | -5,351.40 |
| 10/24/2019 | Bill Payment | 1747 | ASSA ABLOY Entrance Syste… | -459.57 |
| 10/31/2019 | Bill Payment | COSTax0726 | USA Today | -603.64 |
| 10/31/2019 | Bill Payment | COSTax0728 | Ascentium Capital LLC. | -3,384.75 |
| Total | | | | -38,600.20 |

Uncleared deposits and other credits as of 10/31/2019

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 04/17/2018 | Bill Payment | | Royal Media Network, Inc. | 0.00 |
| Total | | | | 0.00 |

Uncleared checks and payments after 10/31/2019

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 11/04/2019 | Bill Payment | | Sysco | -683.78 |
| 11/12/2019 | Expense | | DirecTV | -101.99 |
| 11/12/2019 | Expense | | Mercedes Benz Financial | -652.62 |
| 11/12/2019 | Bill Payment | | Sysco | -555.52 |
| 11/18/2019 | Expense | | Jonas Chorum MSI | -441.16 |
| 11/18/2019 | Expense | | Colorado Springs Utilities | -3,129.01 |
| 11/18/2019 | Expense | | Colorado Springs Utilities | -5,005.85 |
| 11/19/2019 | Bill Payment | | Sysco | -517.24 |
| 11/22/2019 | Expense | | Jonas Chorum MSI | -59.40 |
| 11/22/2019 | Expense | | Ascentium Capital LLC. | -1,470.38 |
| 11/25/2019 | Expense | | TRN Corp | -7,000.00 |
| 11/27/2019 | Expense | | USA Today | -401.18 |
| 11/27/2019 | Expense | | | -12,000.00 |
| 11/29/2019 | Expense | | USA Today | -767.97 |
| 11/29/2019 | Expense | | TRN Corp | -5,000.00 |
| 12/02/2019 | Expense | | Merchant Service Fees | -1,779.44 |
| 12/02/2019 | Expense | | Merchant Service Fees | -1,233.70 |
| 12/02/2019 | Expense | | TRN Corp | -1,000.00 |
| 12/03/2019 | Expense | | TRN Corp | -1,000.00 |
| 12/03/2019 | Bill Payment | 1747 | Bulbs Plus. Inc, | -145.06 |
| 12/04/2019 | Expense | | TRN Corp | -1,000.00 |
| 12/06/2019 | Expense | | TRN Corp | -5,000.00 |
| 12/11/2019 | Expense | | Mercedes Benz Financial | -652.62 |
| 12/11/2019 | Expense | | Merchant Service Fees | -360.51 |

1/30/2020

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 12/12/2019 | Expense | | DirecTV | -101.99 |
| 12/17/2019 | Expense | | TK Hotels | -3,000.00 |
| 12/17/2019 | Expense | | Jonas Chorum MSI | -654.80 |
| 12/23/2019 | Bill Payment | ach | AT&T WiFi Services | -1,498.00 |
| 12/23/2019 | Expense | | TRN Corp | -3,800.00 |
| 12/24/2019 | Expense | | TRN Corp | -1,000.00 |
| 12/26/2019 | Expense | | TRN Corp | -1,000.00 |
| 12/27/2019 | Expense | | TRN Corp | -4,000.00 |
| 12/31/2019 | Expense | | Colorado Department of Reve... | -16.00 |
| 12/31/2019 | Expense | | City of Colorado Springs | -50.00 |
| 12/31/2019 | Expense | | TRN Corp | -500.00 |
| 01/02/2020 | Expense | | TK Hotels | -4,670.42 |
| 01/02/2020 | Expense | | | -6.84 |
| 01/02/2020 | Expense | | | -536.71 |
| 01/06/2020 | Transfer | | | -2,500.00 |
| 01/08/2020 | Expense | | | -702.45 |
| 01/13/2020 | Expense | | DirecTV | -101.99 |
| 01/13/2020 | Expense | | Mercedes Benz Financial | -652.62 |
| 01/16/2020 | Expense | | Jonas Chorum MSI | -635.04 |

Total                                                                                  -75,384.29

Uncleared deposits and other credits after 10/31/2019

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 11/04/2019 | Deposit | | Samira Khan | 1,000.00 |
| 11/05/2019 | Deposit | | Samira Khan | 100.00 |
| 11/12/2019 | Deposit | | | 9,257.49 |
| 11/12/2019 | Deposit | | | 19,194.70 |
| 11/12/2019 | Deposit | | Samira Khan | 700.00 |
| 11/18/2019 | Deposit | | | 6,037.07 |
| 11/20/2019 | Deposit | | | 181.92 |
| 11/22/2019 | Deposit | | | 3,814.37 |
| 11/27/2019 | Deposit | | | 2,821.80 |
| 11/27/2019 | Deposit | | Cheyenne Hotels LLC | 1,300.00 |
| 12/05/2019 | Deposit | | Merchant Service Fees | 5,936.51 |
| 12/11/2019 | Deposit | | Merchant Service Fees | 1,981.28 |
| 12/16/2019 | Deposit | | Merchant Service Fees | 4,086.59 |
| 12/18/2019 | Deposit | | Merchant Service Fees | 2,066.15 |
| 12/20/2019 | Deposit | | Cash Deposit | 3,361.18 |
| 12/26/2019 | Deposit | | Merchant Service Fees | 2,172.95 |
| 12/27/2019 | Deposit | | Merchant Service Fees | 3,002.34 |
| 12/27/2019 | Deposit | | | 661.50 |
| 01/02/2020 | Deposit | | | 3,630.17 |
| 01/06/2020 | Deposit | | Samira Khan | 2,500.00 |
| 01/08/2020 | Deposit | | TK Hotels | 702.45 |
| 01/13/2020 | Deposit | | Cheyenne Hotels LLC | 1,000.00 |
| 01/16/2020 | Deposit | | TK Hotels | 389.65 |

Total                                                                                   75,898.12

Cheyenne Hotel Investments
11/30/2019 MOR:

Case No. 19-15473
Detailed AP Ageing

| Date | Num | Vendor | Due Date | Past Due | Amount | Open Balance |
|------|-----|--------|----------|----------|--------|--------------|
| 02/19/2018 | 700345 | Co Dept of Labor & Employment | 03/06/2018 | 694 | 120.00 | 120.00 |
| 09/17/2018 | | Scott pool & Spa Service | 09/17/2018 | 499 | 782.68 | 782.68 |
| 10/03/2018 | 9166846221 | HD Supply | 10/03/2018 | 483 | 565.64 | 565.64 |
| 10/08/2018 | 9166979144 | HD Supply | 10/08/2018 | 478 | 978.65 | 978.65 |
| 10/10/2018 | 9167041049 | HD Supply | 10/10/2018 | 476 | 326.55 | 326.55 |
| 10/11/2018 | 106,108,110 | HD Supply | 10/11/2018 | 475 | 156.00 | 156.00 |
| 10/15/2018 | 259090023 | Sysco | 10/15/2018 | 471 | 92.16 | 92.16 |
| 10/18/2018 | 9167272714 | HD Supply | 10/18/2018 | 468 | 435.03 | 435.03 |
| 10/18/2018 | 9167296689 | HD Supply | 10/18/2018 | 468 | 355.28 | 355.28 |
| 10/23/2018 | 9167379808 | HD Supply | 10/23/2018 | 463 | 303.65 | 303.65 |
| 11/01/2018 | 5013796 | In The Swim | 11/01/2018 | 454 | 2,780.37 | 2,780.37 |
| 11/27/2018 | 259176866 | Sysco | 11/27/2018 | 428 | 1,042.65 | 1,042.65 |
| 11/29/2018 | | Sears Home Services | 11/29/2018 | 426 | 99.00 | 99.00 |
| 11/30/2018 | 289506 | Travel Click,Inc. | 11/30/2018 | 425 | 207.90 | 207.90 |
| 12/01/2018 | 259190193 | Sysco | 12/01/2018 | 424 | 1,215.82 | 1,215.82 |
| 12/04/2018 | 259193421 | Sysco | 12/04/2018 | 421 | 1,088.08 | 1,088.08 |
| 12/08/2018 | 259203642 | Sysco | 12/08/2018 | 417 | 1,281.50 | 1,281.50 |
| 12/11/2018 | 259206849 | Sysco | 12/11/2018 | 414 | 1,146.45 | 1,146.45 |
| 12/13/2018 | 16071186 | Uniguest | 12/13/2018 | 412 | 85.49 | 85.49 |
| 12/15/2018 | 259217258 | Sysco | 12/15/2018 | 410 | 1,360.30 | 1,360.30 |
| 12/18/2018 | 259220554 | Sysco | 12/18/2018 | 407 | 1,165.55 | 1,165.55 |
| 12/22/2018 | 259230309 | Sysco | 12/22/2018 | 403 | 1,104.63 | 1,104.63 |
| 12/26/2018 | 259233416 | Sysco | 12/26/2018 | 399 | 559.12 | 559.12 |
| 12/29/2018 | 259240623 | Sysco | 12/29/2018 | 396 | 584.32 | 584.32 |
| 01/01/2019 | 259246566 | Sysco | 01/01/2019 | 393 | 587.95 | 587.95 |
| 01/01/2019 | TMCO563O119 | Otis Elevator Company | 01/31/2019 | 363 | 1,363.95 | 1,363.95 |
| 01/03/2019 | 914638182 | Insight Direct USA, Inc | 01/18/2019 | 376 | 875.62 | 875.62 |
| 01/08/2019 | 432338 | J.C. Schultz Enterprises, Inc. | 01/08/2019 | 386 | 201.78 | 201.78 |
| 01/09/2019 | inv.1744,bath tub rep | Miracle Method of Pueblo | 01/09/2019 | 385 | 2,050.00 | 2,050.00 |
| 01/15/2019 | 1459824204 | CenturyLink | 02/14/2019 | 349 | 1,861.66 | 521.70 |
| 01/16/2019 | 20190107-A-2701 | Commtrak | 01/16/2019 | 378 | 184.52 | 184.52 |
| 01/16/2019 | 1051109 | Plasticard-Locktech International | 01/16/2019 | 378 | 136.81 | 136.81 |
| 02/01/2019 | 1773 | Miracle Method of Pueblo | 02/01/2019 | 362 | 1,735.00 | 1,735.00 |
| 02/01/2019 | 801002400 | Tec-Exchange,Inc. | 02/01/2019 | 362 | 127.50 | 127.50 |
| 02/05/2019 | 1055829 | Plasticard-Locktech International | 02/05/2019 | 358 | 514.41 | 514.41 |
| 02/08/2019 | 180386605 | Orkin | 02/08/2019 | 355 | 106.50 | 106.50 |
| 02/19/2019 | N90789 | Harlan Graphic Arts Service, Inc. | 02/19/2019 | 344 | 155.42 | 155.42 |
| 02/20/2019 | 13761204003 | Swire Coca- Cola | 02/20/2019 | 343 | 98.91 | 98.91 |
| 02/20/2019 | | Cintas Fire | 03/22/2019 | 313 | 3,014.01 | 3,014.01 |
| 02/22/2019 | 17397 | RMS Sign Company | 02/22/2019 | 341 | 338.88 | 338.88 |
| 02/26/2019 | 6044 | Whistle Messaging Inc. | 02/26/2019 | 337 | 80.00 | 80.00 |

| 02/26/2019 | 98991631 | Superior Uniform Group | 03/28/2019 | 307 | 2,727.77 | 2,727.77 |
|---|---|---|---|---|---|---|
| 02/27/2019 | 13761204080 | Swire Coca- Cola | 02/27/2019 | 336 | 99.81 | 99.81 |
| 02/28/2019 | INV00309270 | Travel Click,Inc. | 02/28/2019 | 335 | 207.90 | 207.90 |
| 02/28/2019 | 14539753 | USA Today | 03/30/2019 | 305 | 195.00 | 195.00 |
| 03/04/2019 | INV214023 | Uniguest | 03/04/2019 | 331 | 1,631.92 | 1,631.92 |
| 03/05/2019 | | Orkin | 03/05/2019 | 330 | 106.50 | 106.50 |
| 03/06/2019 | 6094054 | The Robert Allen Duralee group | 03/06/2019 | 329 | 4,335.23 | 4,335.23 |
| 03/19/2019 | TMC15831001 | Otis Elevator Company | 04/18/2019 | 286 | 622.50 | 622.50 |
| 03/19/2019 | | CenturyLink | 04/18/2019 | 286 | 52.43 | 52.43 |
| 03/20/2019 | 13761204295 | Swire Coca- Cola | 03/20/2019 | 315 | 49.90 | 49.90 |
| 03/20/2019 | TMC05630419 | Otis Elevator Company | 04/19/2019 | 285 | 1,363.95 | 1,363.95 |
| 03/26/2019 | 5690A | Judd's Glass & Mirror | 03/26/2019 | 309 | 691.18 | 691.18 |
| 03/26/2019 | 5690B | Judd's Glass & Mirror | 03/26/2019 | 309 | 329.90 | 329.90 |
| 03/27/2019 | 186031130 | Orkin | 03/27/2019 | 308 | 1,050.00 | 1,050.00 |
| 03/27/2019 | 914998666 | Insight Direct USA, Inc | 04/11/2019 | 293 | 2,787.42 | 2,787.42 |
| 03/31/2019 | 14590159 | USA Today | 04/30/2019 | 274 | 243.75 | 243.75 |
| 04/01/2019 | 182915261 | Orkin | 04/01/2019 | 303 | 106.50 | 106.50 |
| 04/03/2019 | 13761204435 | Swire Coca- Cola | 04/03/2019 | 301 | 165.97 | 165.97 |
| 04/10/2019 | 99071937 | Superior Uniform Group | 05/10/2019 | 264 | 139.11 | 139.11 |
| 04/11/2019 | 17452 | RMS Sign Company | 04/11/2019 | 293 | 595.05 | 595.05 |
| 04/11/2019 | 17453 | RMS Sign Company | 04/11/2019 | 293 | 70.40 | 70.40 |
| 04/11/2019 | 68983384 | Farmers Brothers CO | 05/11/2019 | 263 | 218.24 | 218.24 |
| 04/17/2019 | 186345813 | Orkin | 04/17/2019 | 287 | 1,500.00 | 1,500.00 |
| 04/18/2019 | 68983419 | Farmers Brothers CO | 05/18/2019 | 256 | 145.64 | 145.64 |
| 04/19/2019 | 186416547 | Orkin | 04/19/2019 | 285 | 1,050.00 | 1,050.00 |
| 04/19/2019 | | CenturyLink | 05/19/2019 | 255 | 47.57 | 47.57 |
| 04/25/2019 | 69007465 | Farmers Brothers CO | 05/25/2019 | 249 | 304.38 | 304.38 |
| 04/28/2019 | 14635845 | USA Today | 05/28/2019 | 246 | 243.75 | 243.75 |
| 04/29/2019 | 42917 | Cintas Fire | 05/29/2019 | 245 | 420.00 | 420.00 |
| 05/01/2019 | 183861614 | Orkin | 05/01/2019 | 273 | 106.50 | 106.50 |
| 05/02/2019 | 69032503 | Farmers Brothers CO | 06/01/2019 | 242 | 145.64 | 145.64 |
| 05/03/2019 | INV0030689 | El Paso County Public Health | 05/03/2019 | 271 | 242.00 | 242.00 |
| 05/07/2019 | A-02799 | Commtrak | 05/07/2019 | 267 | 813.70 | 813.70 |
| 05/09/2019 | 69059202 | Farmers Brothers CO | 06/08/2019 | 235 | 146.99 | 146.99 |
| 05/10/2019 | SEI/01268162 | ASSA ABLOY Entrance Systems US INC. | 06/09/2019 | 234 | 300.56 | 300.56 |
| 05/15/2019 | 13761204900 | Swire Coca- Cola | 05/15/2019 | 259 | 147.79 | 147.79 |
| 05/16/2019 | 69082333 | Farmers Brothers CO | 06/15/2019 | 228 | 74.39 | 74.39 |
| 05/19/2019 | | CenturyLink | 06/18/2019 | 225 | 55.17 | 55.17 |
| 05/23/2019 | 69082378 | Farmers Brothers CO | 06/22/2019 | 221 | 294.26 | 294.26 |
| 05/24/2019 | 1271241 | ASSA ABLOY Entrance Systems US INC. | 06/23/2019 | 220 | 1,324.31 | 1,324.31 |
| 05/28/2019 | SKUA8A | City of Colorado Springs | 05/28/2019 | 246 | 897.60 | 897.60 |
| 05/29/2019 | 13761205044 | Swire Coca- Cola | 05/29/2019 | 245 | 151.67 | 151.67 |
| 05/30/2019 | | Hilton Hotels Corporation | 06/29/2019 | 214 | 36,965.52 | 36,965.52 |
| 05/30/2019 | 69114514 | Farmers Brothers CO | 06/29/2019 | 214 | 218.24 | 218.24 |
| 05/31/2019 | 328345 | Travel Click,Inc. | 05/31/2019 | 243 | 207.90 | 207.90 |

| Date | Ref# | Vendor | Due Date | Days | Amount | Balance |
|---|---|---|---|---|---|---|
| 05/31/2019 | | USA Today | 06/30/2019 | 213 | 234.00 | 234.00 |
| 06/01/2019 | 184813654 | Orkin | 06/01/2019 | 242 | 113.96 | 113.96 |
| 06/04/2019 | | Ridgeway Communication Enterprises | 06/04/2019 | 239 | 2,202.05 | 2,202.05 |
| 06/04/2019 | 100025965 | GM Girvin Marketing | 06/04/2019 | 239 | 279.14 | 279.14 |
| 06/04/2019 | I47673UX8MEO | Golden Malted | 06/04/2019 | 239 | 206.00 | 206.00 |
| 06/05/2019 | 839490 | The Regal Press,Inc. | 06/05/2019 | 238 | 136.74 | 136.74 |
| 06/06/2019 | | Guest Supply | 06/06/2019 | 237 | 2,376.17 | 2,376.17 |
| 06/06/2019 | 69134816 | Farmers Brothers CO | 07/06/2019 | 207 | 145.64 | 145.64 |
| 06/10/2019 | 141368882 | Edward Don&Company | 06/10/2019 | 233 | 60.80 | 60.80 |
| 06/12/2019 | | Oztek Commercial service | 06/12/2019 | 231 | 1,232.73 | 1,232.73 |
| 06/13/2019 | | Colorado Springs Utilities | 07/13/2019 | 200 | 9,613.93 | 9,613.93 |
| 06/13/2019 | 69161100 | Farmers Brothers CO | 07/13/2019 | 200 | 223.01 | 223.01 |
| 06/18/2019 | 10412282 | Guest Supply | 06/18/2019 | 225 | 76.43 | 76.43 |
| 06/19/2019 | 13761205295 | Swire Coca- Cola | 06/19/2019 | 224 | 153.45 | 153.45 |
| 06/19/2019 | | CenturyLink | 07/19/2019 | 194 | 59.11 | 59.11 |
| 06/20/2019 | TMC05630-719 | Otis Elevator Company | 07/20/2019 | 193 | 1,363.95 | 1,363.95 |
| 06/20/2019 | 69184948 | Farmers Brothers CO | 07/20/2019 | 193 | 231.50 | 231.50 |
| 06/21/2019 | 10428014 | Guest Supply | 06/21/2019 | 222 | 1,801.58 | 1,801.58 |
| 06/21/2019 | 10425188 | Guest Supply | 06/21/2019 | 222 | 106.80 | 106.80 |
| 06/25/2019 | 259596429 | Sysco | 06/25/2019 | 218 | 1,431.41 | 1,431.41 |
| | | | | Pre-Petition | | 115,572.19 |
| | | | | | | |
| 06/29/2019 | | Sysco | 06/29/2019 | 214 | 1,798.77 | 50.99 |
| 06/30/2019 | | Hilton Hotels Corporation | 07/30/2019 | 183 | 45,439.85 | 45,439.85 |
| 07/01/2019 | | Johnson Controls, Inc. | 07/01/2019 | 212 | 491.00 | 491.00 |
| 07/01/2019 | | CenturyLink | 07/31/2019 | 182 | 757.76 | 757.76 |
| 07/02/2019 | I47674IIKEPF | Golden Malted | 07/02/2019 | 211 | 509.75 | 509.75 |
| 07/05/2019 | | Ccomputer Techrepair | 07/05/2019 | 208 | 729.42 | 729.42 |
| 07/15/2019 | | CenturyLink | 08/14/2019 | 168 | 1,333.14 | 1,333.14 |
| 07/17/2019 | | ASSA ABLOY Entrance Systems US INC. | 08/16/2019 | 166 | 300.56 | 300.56 |
| 07/19/2019 | | Johnson Controls, Inc. | 07/19/2019 | 194 | 3,339.01 | 3,339.01 |
| 07/19/2019 | 6042391 | Guest Supply | 07/19/2019 | 194 | 2,754.04 | 2,754.04 |
| 07/19/2019 | | CenturyLink | 08/18/2019 | 164 | 59.20 | 59.20 |
| 07/31/2019 | I47674OVKOU5 | Golden Malted | 07/31/2019 | 182 | 354.00 | 354.00 |
| 07/31/2019 | | Hilton Hotels Corporation | 08/30/2019 | 152 | 47,408.28 | 47,408.28 |
| 08/01/2019 | | City of Colorado Springs | 08/01/2019 | 181 | 163.20 | 163.20 |
| 08/01/2019 | 187192318 | Orkin | 08/01/2019 | 181 | 113.96 | 113.96 |
| 08/01/2019 | | CenturyLink | 08/31/2019 | 151 | 605.51 | 605.51 |
| 08/15/2019 | | Rfid Hotel | 08/15/2019 | 167 | 338.59 | 338.59 |
| 08/15/2019 | 1474660328 | CenturyLink | 09/14/2019 | 137 | 1,173.65 | 1,173.65 |
| 08/19/2019 | | CenturyLink | 09/18/2019 | 133 | 62.16 | 62.16 |
| 08/22/2019 | 69356247 | Farmers Brothers CO | 09/21/2019 | 130 | 376.48 | 210.38 |
| 08/31/2019 | 347937 | Travel Click,Inc. | 08/31/2019 | 151 | 207.90 | 207.90 |
| | | | | +90 Days | | 106,402.35 |

| 09/01/2019 | 188455283 | Orkin | 09/01/2019 | 150 | 113.96 | 113.96 |
| 09/01/2019 | | CenturyLink | 10/01/2019 | 120 | 606.28 | 606.28 |
| | | | | 60-90 Days | | 720.24 |
| | | | | | | |
| 10/01/2019 | | Orkin | 10/01/2019 | 120 | 113.96 | 113.96 |
| 10/01/2019 | | CenturyLink | 10/31/2019 | 90 | 606.28 | 606.28 |
| 10/01/2019 | | RR Donnelley | 10/31/2019 | 90 | 164.32 | 164.32 |
| 10/10/2019 | | AT&T WiFi Services | 11/09/2019 | 81 | 374.50 | 374.50 |
| 10/20/2019 | | Otis Elevator Company | 11/19/2019 | 71 | 1,363.95 | 1,363.95 |
| 10/22/2019 | | CenturyLink | 11/21/2019 | 69 | 1,181.17 | 1,181.17 |
| 10/22/2019 | | Farmers Brothers CO | 11/21/2019 | 69 | 814.26 | 814.26 |
| 10/24/2019 | | Farmers Brothers CO | 11/23/2019 | 67 | 71.25 | 71.25 |
| 10/30/2019 | | GFL Environmental | 11/14/2019 | 76 | 232.50 | 232.50 |
| 10/31/2019 | I47675XLBNT7 | Carbon's Golden Malted | 10/31/2019 | 90 | 415.75 | 415.75 |
| 10/31/2019 | 13761206876 | Swire Coca- Cola | 10/31/2019 | 90 | 74.85 | 74.85 |
| | | | | 31-60 Days | | 5,412.79 |
| | | | | | | |
| 11/01/2019 | | Orkin | 11/01/2019 | 89 | 113.96 | 113.96 |
| 11/01/2019 | | CenturyLink | 12/01/2019 | 59 | 737.73 | 737.73 |
| 11/05/2019 | | Carbon's Golden Malted | 11/05/2019 | 85 | 581.25 | 581.25 |
| 11/10/2019 | | AT&T WiFi Services | 12/10/2019 | 50 | 374.50 | 374.50 |
| 11/13/2019 | | Hotel Planner | 11/13/2019 | 77 | 612.84 | 612.84 |
| 11/13/2019 | | Swire Coca- Cola | 11/13/2019 | 77 | 49.90 | 49.90 |
| | | | | 0-30 days | | 2,470.18 |

Total Post-Petition 115,005.56

**DEBTOR:**  CHEYENNE HOTEL  INVESTMENTS LLC          ~HLY OPERATING REI
                                                        CHAPTER 11

**CASE NUMBER:**  19-15473-KHT

### Form 2-A
### COVER SHEET

For Period End Date:  12/31/2019

**Accounting Method:**  ☐ Accrual Basis   ■ Cash Basis

---

#### *THIS REPORT IS DUE 21 DAYS AFTER THE END OF THE MONTH*

Mark One Box for Each
Required Document:

Debtor must attach each of the following documents unless the U. S.
has waived the requirement in writing.  File the original with the Clerl
Submit a duplicate, with original signature, to the U. S. Trustee.

| Report/Document Attached | Previously Waived | REQUIRED REPORTS/DOCUMENTS |
|:---:|:---:|:---|
| ■ | ☐ | 1.  Cash Receipts and Disbursements Statement (Form |
| ■ | ☐ | 2.  Balance Sheet (Form 2-C) |
| ■ | ☐ | 3.  Profit and Loss Statement (Form 2-D) |
| ■ | ☐ | 4.  Supporting Schedules (Form 2-E) |
| ■ | ☐ | 5.  Quarterly Fee Summary (Form 2-F) |
| ■ | ☐ | 6.  Narrative (Form 2-G) |
| ■ | ☐ | 7.  Bank Statements for All Bank Accounts<br>*(Redact all but last 4 digits of account number and remov* |
| ■ | ☐ | 8.  Bank Statement Reconciliations for all Bank Accoun |
| ■ | ☐ | 9.  Evidence of Insurance for all policies renewed or rep |

---

*I declare under penalty of perjury that the following Monthly Operating Report, and*
*attachments thereto are true, accurate and correct to the best of my knowledge an*

Executed on: _____          **Print Name:**  Sonia Rathour

                                   **Signature:**  _Sonia I._

                                   **Title:**  Executive Assistant

Scanned by CamScanner

DEBTOR:   **CHEYENNE HOTEL  INVESTMENTS LLC**          **CASE NO:** _____ 19-15473-KHT _____

## Form 2-B
## CASH RECEIPTS AND DISBURSEMENTS STATEMENT
For Period:  12/1/2019 to   12/31/2019

**CASH FLOW SUMMARY**

|  |  | Current Month |  | Accumulated |
|---|---|---|---|---|
| **1. Beginning Cash Balance** | $ | 849,573 (1) | $ | 259,519 (1) |
| 2. Cash Receipts |  |  |  |  |
| Operations |  | 22,569 |  | 997,445 |
| Sale of Assets |  | - |  | - |
| Loans/advances |  | - |  | - |
| Other           Insider Receipts |  | - |  | 115,687 |
| Total Cash Receipts | $ | 22,569 | $ | 1,113,132 |
| 3. Cash Disbursements |  |  |  |  |
| Operations |  | 7,415 |  | 359,801 |
| Debt Service/Secured loan payment |  |  |  | - |
| Professional fees/U.S. Trustee fees |  | - |  | - |
| Professional fees paid from retainer (e.g. COLTAF accts) |  | - |  | - |
| Other           Insider Payments |  | 22,300 |  | 170,423 |
| Total Cash Disbursements | $ | 29,715 | $ | 530,224 |
| 4. Net Cash Flow (Total Cash Receipts less Total Cash Disbursements) |  | (7,146) |  | 582,908 |
| **5 Ending Cash Balance (to Form 2-C)** | $ | 842,427 (2) | $ | 842,427 (2) |

**CASH BALANCE SUMMARY**

|  | Financial Institution |  | Book Balance |
|---|---|---|---|
| Petty Cash | - | $ | 6,586 |
| DIP Operating Account | Key Bank & PB&T | | (36,305) |
| DIP State Tax Account | - | | - |
| DIP Payroll Account | - | | - |
| Other Operating Account | Berkadia | - | 872,146 |
| Retainers held by professionals (i.e. COLTAF) | - | | - |
| TOTAL (must agree with Ending Cash Balance above) | | $ | 842,427 (2) |

*(1) Accumulated beginning cash balance is the cash available at the commencement of the case and retainers.*
*Current month beginning cash balance should equal the previous month's ending balance.*
*(2) All cash balances should be the same.*

Rev. 01/01/2018

DEBTOR(S):     CHEYENNE HOTEL INVESTMENTS LLC          CASE NO:     19-15473-KHT

**Form 2-B**
**CASH RECEIPTS AND DISBURSEMENTS STATEMENT**
For Period: _____ 12/1/2019 _____ to _____ 12/31/2019 _____

**CASH RECEIPTS DETAIL**             **Account No:**
*(attach additional sheets as necessary)*

| Date | Payer | Description | Amount |
|------|-------|-------------|-------:|
| 12/11/2019 | Merchant Services | | $ 1,981.28 |
| 12/18/2019 | Merchant Services | | 2,066.15 |
| 12/26/2019 | Merchant Services | | 2,172.95 |
| 12/27/2019 | Merchant Services | | 3,002.34 |
| 12/31/2019 | | | 3,322.92 |
| 12/16/2019 | Merchant Services | | 4,086.59 |
| 12/05/2019 | Merchant Services | | 5,936.51 |

**Total Cash Receipts**     $     22,568.74   (1)

*(1) Total for all accounts should agree with total cash receipts listed on Form 2-B, page 1*     Rev. 01/01/2018

**DEBTOR(S):** CHEYENNE HOTEL INVESTMENTS LLC

**CASE NO:** 19-15473-KHT

## Form 2-B
### CASH RECEIPTS AND DISBURSEMENTS STATEMENT
For Period: 12/1/2019 to 12/31/2019

**CASH DISBURSEMENTS DETAIL**
*(attach additional sheets as necessary)*

**Account No:** 0

| Date | Check No. | Payee | Description (Purpose) | Amount |
|------|-----------|-------|----------------------|--------|
| 12/06/2019 | | TRN Corp | | 5,000.00 |
| 12/27/2019 | | TRN Corp | | 4,000.00 |
| 12/23/2019 | | TRN Corp | | 3,800.00 |
| 12/17/2019 | | TK Hotels | | 3,000.00 |
| 12/02/2019 | | Merchant Service Fees | | 1,779.44 |
| 12/23/2019 | ach | AT&T WiFi Services | | 1,498.00 |
| 12/02/2019 | | Merchant Service Fees | | 1,233.70 |
| 12/02/2019 | | TRN Corp | | 1,000.00 |
| 12/03/2019 | | TRN Corp | | 1,000.00 |
| 12/04/2019 | | TRN Corp | | 1,000.00 |
| 12/24/2019 | | TRN Corp | | 1,000.00 |
| 12/26/2019 | | TRN Corp | | 1,000.00 |
| 12/04/2019 | | TRN Corp | | 1,000.00 |
| 12/17/2019 | | Jonas Chorum MSI | | 654.80 |
| 12/11/2019 | | Mercedes Benz Financial | | 652.62 |
| 12/09/2019 | 1 | Key Bank | | 525.00 |
| 12/31/2019 | | TRN Corp | | 500.00 |
| 12/11/2019 | | Merchant Service Fees | | 360.51 |
| 12/03/2019 | 6 | U.S. Trustee Payment Center | | 325.00 |
| 12/03/2019 | 1747 | Bulbs Plus. Inc, | | 145.06 |
| 12/12/2019 | | DirecTV | | 101.99 |
| 12/02/2019 | | Tsys Fees | | 72.63 |
| 12/31/2019 | | City of Colorado Springs | | 50.00 |
| 12/31/2019 | | Colorado Department of Revenue | | 16.00 |
| | | **Total Cash Disbursements** | | $ 29,714.75 |

*(1) Total for all accounts should agree with total cash disbursements listed on Form 2-B, page 1*

Rev. 01/01/2018

DEBTOR(S):  CHEYENNE HOTEL  INVESTMENTS LLC          CASE NO:       19-15473-KHT

**Form 2-C**
## COMPARATIVE BALANCE SHEET
**For Period Ended:      ########**

| | | Current Month | | Petition Date (1) |
|---|---|---:|---|---:|
| **ASSETS** | | | | |
| Current Assets: | | | | |
| Cash (from Form 2-B, line 5) (Unrestricted) | $ | (29,719) | $ | (34,473) |
| Cash (from Form 2-B, line 5) (Restricted) | | 872,146 | | 317,753 |
| Accounts Receivable (from Form 2-E) | | 239,419 | | 96,150 |
| Receivable from Officers, Employees, Affiliates | | - | | - |
| Inventory | | | | - |
| Other Current Assets :(List)    Prepaid Expenses | | - | | 126,029 |
| Total Current Assets | $ | 1,081,846 | $ | 505,459 |
| Fixed Assets: | | | | |
| Land | $ | 875,182 | $ | 875,182 |
| Building | | 8,984,411 | | 8,984,411 |
| Equipment, Furniture and Fixtures | | 1,239,935 | | 1,239,935 |
| Total Fixed Assets | | 11,099,528 | | 11,099,528 |
| Less:  Accumulated Depreciation | ( | 2,956,004 ) | ( | 2,953,114 ) |
| Net Fixed Assets | $ | 8,143,523 | $ | 8,146,414 |
| Other Assets (List):    Intangible | | 3,106 | | 4,494 |
| Rounding | | | | 1 |
| **TOTAL ASSETS** | $ | 9,228,475 | $ | 8,656,367 |
| **LIABILITIES** | | | | |
| Post-petition Accounts Payable (from Form 2-E) | $ | 131,684 | $ | - |
| Post-petition Accrued Profesional Fees (from Form 2-E) | | - | | - |
| Post-petition Taxes Payable (from Form 2-E) | | 52,151 | | - |
| Other Post-petition Payable(List): Credit Cards | | 2,314 | | - |
| Due to Affiliates | | 217,517 | | - |
| Accrued Interest and Fees | | 1,041,945 | | - |
| Total Post Petition Liabilities | $ | 1,445,612 | $ | - |
| Pre Petition Liabilities: | | | | |
| Secured Debt | | 6,892,894 | | 6,910,523 |
| Priority Debt | | - | | - |
| Unsecured Debt | | 129,788 | | 129,788 |
| Total Pre Petition Liabilities | $ | 7,022,682 | $ | 7,040,312 |
| **TOTAL LIABILITIES** | $ | 8,468,294 | $ | 7,040,312 |
| **OWNERS' EQUITY** | | | | |
| Owner's/Stockholder's Equity | $ | 760,181 | $ | 1,556,780 |
| Retained Earnings - Prepetition | | - | | - |
| Retained Earnings - Post-petition | | - | | - |
| **TOTAL OWNERS' EQUITY** | $ | 760,181 | $ | 1,556,780 |
| **TOTAL LIABILITIES AND OWNERS' EQUITY** | $ | 9,228,475 | $ | 8,597,092 |

*(1)  Petition date values are taken from the Debtor's balance sheet as of the petition date or are the values
listed on the Debtor's schedules.*

Rev. 01/01/2018

**DEBTOR(S):**   Cheyenne Hotel Investments, LLC                    **CASE NO:** 19-15473-- KHT

## Form 2-D
## PROFIT AND LOSS STATEMENT
**For Period**   12/1/2019 **to**   12/31/2019

|  | | Current Month | | Accumulated Total (1) |
|---|---|---|---|---|
| Gross Operating Revenue | $ | 21,025 | $ | 995,075 |
| Less: Discounts, Returns and Allowances | ( | - ) | ( | - ) |
| **Net Operating Revenue** | $ | 21,025 | $ | 995,075 |
| Cost of Goods Sold | | - | | - |
| **Gross Profit** | $ | 21,025 | $ | 995,075 |
| Operating Expenses | | | | |
| Officer Compensation | $ | - | $ | - |
| Selling, General and Administrative | | 52,828 | | 655,638 |
| Rents and Leases | | 653 | | 3,916 |
| Depreciation, Depletion and Amortization | | 611 | | 4,278 |
| Other (list): | | - | | - |
| | | - | | - |
| Total Operating Expenses | $ | 54,092 | $ | 663,833 |
| **Operating Income (Loss)** | $ | (33,067) | $ | 331,242 |
| Non-Operating Income and Expenses | | | | |
| Other Non-Operating Expenses | $ | (2,946) | $ | (71,942) |
| Gains (Losses) on Sale of Assets | | - | | - |
| Interest Income | | 0 | | 0 |
| Interest Expense | | (173,658) | | (1,080,005) |
| Other Non-Operating Income | | 0 | | 311 |
| Net Non-Operating Income or (Expenses) | $ | (176,603) | $ | (1,151,637) |
| Reorganization Expenses | | | | |
| Legal and Professional Fees | $ | | $ | |
| Other Reorganization Expense | | 325 | | 1,300 |
| Total Reorganization Expenses | $ | 325 | $ | 1,300 |
| **Net Income (Loss) Before Income Taxes** | $ | (209,995) | $ | (821,695) |
| Federal and State Income Tax Expense (Benefit) | | - | | - |
| **NET INCOME (LOSS)** | $ | (209,995) | $ | (821,695) |

*(1) Accumulated Totals Include all revenue and expenses since the petition date.*

Rev. 01/01/2018

DEBTOR(S):  CHEYENNE HOTEL INVESTMENTS LLC          CASE NO: 19-15473-KHT

## Form 2-E (Page 1 of 2)
### SUPPORTING SCHEDULES

For Period: ___12/1/2019___ to ___12/31/2019___

| Summary of Post-Petition Taxes | | | | |
|---|---|---|---|---|
| | 1 | 2 | 3 | 4 |
| Type of tax | Unpaid post-petition taxes from prior reporting month(1) | Post-petition taxes accrued this month (new obligations) | Post-petition tax payments made this reporting month | Unpaid post-petition taxes at end of reporting month (columns 1+2-3) |
| **Federal** | | | | |
| Employee income tax withheld | | | | |
| Employee FICA taxes withheld | | | | |
| Employer FICA taxes | | | | |
| Unemployment taxes | | | | |
| Other: | | | | |
| **State** | | | | |
| Sales, use & excise taxes | 51,042 | 1,108 | | 52,151 |
| Unemployment taxes | | | | |
| Other: | | | | |
| **Local** | | | | |
| Personal property taxes | | | | |
| Real property taxes | | | | |
| Other: | | | | |
| Total unpaid post-petition taxes | | | | 52,151 |

*(1) For first report, the beginning balance in column 1 will be $0; thereafter, beginning balance will be ending balance from prior report.*

| Insurance Coverage Summary | | | | |
|---|---|---|---|---|
| Type of insurance | Insurance carrier | Coverage amount | Policy expiration date | Premium paid through date |
| Workers' compensation | Pinnacol Assurance | $1MM/$1MM/$1MM | 11/1/2020 | |
| General liability | Midwest Mutual | $1M/$2M | 1/1/2020 | |
| Property (fire, theft, etc.) | Midwest Mutual | 9,325,900bldg/1,573,000 | 1/1/2020 | |
| Vehicle | Midwest Mutual | 1,000,000 | 1/1/2020 | |
| Other (list): | Midwest Mutual | 9,000,000 umbrella | 1/1/2020 | |
| Other (list): | | | | |

*If any policies were renewed or replaced during reporting period, attach new certificate of insurance.*

Page 1 of 2
Rev. 01/01/2018

DEBTOR(S): CHEYENNE HOTEL INVESTMENTS LLC     CASE NO: 19-15473-KHT

### Form 2-E (Page 2 of 2)
### SUPPORTING SCHEDULES
For Period:  12/1/2019  to  12/31/2019

| Accounts Receivable Aging Summary (attach detailed aging report) | | | | | |
|---|---|---|---|---|---|
| | 30 days or less | 31 to 60 days | 61 to 90 days | Over 90 days | Total at month end |
| Pre-petition receivables | | | | | |
| Post-petition receivables | | | | | |
| Total | | | | | |

| Post-Petition Accounts Payable Aging Summary (attach detailed aging report) | | | | | |
|---|---|---|---|---|---|
| | 30 days or less | 31 to 60 days | 61 to 90 days | Over 90 days | Total at month end |
| Trade Payables | 17,428 | 2,096 | 5,038 | 107,123 | 131,684 |
| Sales Taxes | 1,108 | 4,419 | 14,452 | 32,170 | 52,150 |
| Credit Cards | 579 | | 1,089 | 647 | 2,315 |
| Insider Payables | | 6,243 | 34,961 | 176,314 | 217,518 |
| Accrued Interest & Fees | 173,658 | 173,658 | 173,658 | 520,973 | 1,041,945 |
| Total | 192,772 | 8,339 | 39,999 | 283,437 | 1,445,612 |

| SCHEDULE OF PAYMENTS TO ATTORNEYS AND OTHER PROFESSIONALS | | | | | |
|---|---|---|---|---|---|
| | Month-end Retainer Balance | Current Month's Accrual | Paid in Current Month | Court Approval Date | Month-end Balance Due * |
| Debtor's Counsel | $ - | $ 8,375.00 | $ - | | $ 46,011.00 |
| Counsel for Unsecured Creditors' Committee | | | $ - | | |
| Trustee's Counsel | | | | | |
| Accountant | $ - | | $ - | | $ - |
| Other: | | | $ - | | |
| Total | $ - | $ 8,375.00 | $ - | | $ 46,011.00 |

*Balance due to include fees and expenses incurred but not yet paid.

| SCHEDULE OF PAYMENTS AND TRANSFERS TO PRINCIPALS/EXECUTIVES** | | | |
|---|---|---|---|
| Payee Name | Position | Nature of Payment | Amount |
| TRN | Affiliate | Operating Expenses | 5,000 |
| TRN | Affiliate | Operating Expenses | 4,000 |
| TRN | Affiliate | Operating Expenses | 3,800 |
| TRN | Affiliate | Operating Expenses | 1,000 |
| TRN | Affiliate | Operating Expenses | 1,000 |
| TRN | Affiliate | Operating Expenses | 1,000 |
| TRN | Affiliate | Operating Expenses | 1,000 |
| TRN | Affiliate | Operating Expenses | 1,000 |
| TRN | Affiliate | Operating Expenses | 1,000 |
| TRN | Affiliate | Operating Expenses | 500 |
| TK Hotels | Affiliate | Operating Expenses | 3,000 |

**List payments and transfers of any kind and in any form made to or for the benefit of any proprietor, owner, partner, shareholder, officer, or director.

Page 2 of 2
Rev. 01/01/2018

**DEBTOR(S):** <u>CHEYENNE HOTEL  INVESTMENTS LLC</u>     **CASE NO:** <u>19-15473-KHT</u>

## Form 2-F
### QUARTERLY FEE SUMMARY *
**For the Month Ended:** <u>12/31/2019</u>

| Month | Year | Cash Disbursements ** | Quarterly Fee Due | Check No. | Date Paid |
|---|---|---|---|---|---|
| January | _____ $ | $0 | | | |
| February | _____ | $0 | | | |
| March | _____ | $0 | | | |
| TOTAL 1st Quarter | $ | $0 $ | _____ | _____ | _____ |
| April | _____ $ | $0 | | | |
| May | _____ | $0 | | | |
| June | _____ | $0 | | | |
| TOTAL 2nd Quarter | $ | $0 $ | _____ | _____ | _____ |
| July | 19 $ | $276,148 | | | |
| August | 19 | $52,884 | | | |
| September | 19 | $80,611 | | | |
| TOTAL 3rd Quarter | $ | $409,642.53 $ | _____ | _____ | _____ |
| October | 19 $ | $48,962.23 | | | |
| November | 19 | $38,705.41 | | | |
| December | 19 | $29,714.75 | | | |
| TOTAL 4th Quarter | $ | $117,382.39 $ | _____ | _____ | _____ |

### FEE SCHEDULE (as of JANUARY 1, 2018)
*Subject to changes that may occur in 28 U.S.C. §1930(a)(6)*

| Quarterly Disbursements | Fee | | Quarterly Disbursements | Fee |
|---|---|---|---|---|
| $0 to $14,999.................. | $325 | | $225,000 to $299,999................. | $1,950 |
| $15,000 to $74,999.......... | $650 | | $300,000 to $999,999.................. | $4,875 |
| $75,000 to $149,999........ | $975 | | $1,000,000 or more***................. | 1% of quarterly disbursements or $250,000, whichever is less (subject to change after 9/30/2018)*** |
| $150,000 to $224,999...... | $1,625 | | | |

\*   This summary is to reflect the current calendar year's information cumulative to the end of the reporting period

\*\*  Should agree with line 3, Form 2-B.  Disbursements are net of transfers to other debtor in possession bank accounts

\*\*\*  For disbursements in excess of $1,000,000, this amount is subject to annual adjustment. Please refer to
\*\*\*\*

*Failure to pay the quarterly fee is cause for conversion or dismissal of the chapter 11 case. [11 U.S.C. Sec. 1112(b)(10)]*
*In addition, unpaid fees are considered a debt owed to the United States and will be assessed interest under 31 U.S.C. §3717*

Rev. 01/01/2018

**DEBTOR:**   CHEYENNE HOTEL  INVESTMENTS LLC          **CASE NO:** 19-15473-KHT

Form 2-G
## NARRATIVE
**For Period Ending: 12/31/2019**

**Please provide a brief description of any significant business and legal actions taken by the debtor, its creditors, or the court during the reporting period, any unusual or non-recurring accounting transactions that are reported in the financial statements, and any significant changes in the financial condition of the debtor which have occurred susequent to the report date.**

Items in the Column "Petition Date" on Form 2-C are extracted from the Debtor's Schedules of Assets and Liabilities except as noted.   Note (1) is that the Prepetition Priority Debt is entered as -0-, solely because the amounts of the debts were unknown on the petition date.  The amounts shown on the MOR are based upon more recent information than was available on the Petition Date.  For purposes of this Report, the Debtor defined "insiders" pursuant to Section 101(31) of the Bankruptcy Code as: (a) the Manager in control of the Debtor; (b) relatives of the Debtor's Manager, and (c) entities in common control with the Debtor.  The following abbreviations have been adopted to designate certain insiders:  SK = Samira Khan, Manager and sole owner of the Debtor; CH = Cheyenne Hotels, LLC, an entity under common control with the Debtor; TK = TK Hotels, LLC, an entity in which SK holds a controlling interest; and TRN = TRN Management & Development Group, Inc., an entity in which SK holds a controlling interest and which manages the Debtor's Colorado Springs hotel pursuant to a Management Agreement.  Notwithstanding the Debtor's efforts to properly characterize, classify categorize, or designate certain claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements, the Debtor may nevertheless have improperly characterized, classified, categorized, designated, or omitted certain items.  Accordingly, the Debtor reserves all of its rights to re-characterize, reclassify, recategorize, redesignate, add, or delete items reported in this Report at a later time as is necessary or appropriate as additional information becomes available, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired post-petition.  The Debtor reserves all rights to amend or supplement this Report from time to time, in all respects, as may be necessary or appropriate.

Rev. 01/01/2018

Cheynenne Hotel Investments, LLC                           Case No.  19-15473
MOR: 12/31/2019                                               Attachments



KeyBank
P.O. Box 93885
Cleveland, OH 44101-5885

**Corporate Banking Statement**
**December 31, 2019**
**page 1 of 2**

329681169788

13      T   968 00000 R EM AO
CHEYENNE HOTEL INVESTMENTS, LLC
DBA HOMEWOOD SUITES CMA WELLS FARGO
AS TRUSTEE FOR CSFB 2006-C1
225 E CHEYENNE MOUNTAIN BLVD STE 210
COLORADO SPRINGS CO 80906-3700

*Questions or comments?*
*Call 1-800-821-2829*

Commercial Control Transaction   329681169788
CHEYENNE HOTEL INVESTMENTS, LLC
DBA HOMEWOOD SUITES CMA WELLS FARGO
AS TRUSTEE FOR CSFB 2006-C1

| | |
|---|---|
| Beginning balance 11-30-19 | $264.76 |
| 1 Addition | +332.87 |
| 2 Subtractions | -597.63 |
| **Ending balance 12-31-19** | **$0.00** |

**Additions**

| Deposits | Date | Serial # | Source | |
|---|---|---|---|---|
| | 12-17 | 3643 | Wire Deposit   Berkadia Commerc 1400 | $332.87 |
| | | | **Total additions** | **$332.87** |

**Subtractions**

| Transfers | Date | Serial # | Destination | |
|---|---|---|---|---|
| | 12-2 | | Funds Transfer To DDA Account   329681169796 | $72.63 |
| | 12-9 | | Funds Transfer To DDA Account   329681169796 | 525.00 |
| | | | **Total subtractions** | **$597.63** |

**Fees and charges**   *See your Account Analysis statement for details.*

## CUSTOMER ACCOUNT DISCLOSURES

The following disclosures apply only to accounts covered by the Federal Truth-In-Lending Act or the Federal Electronic Funds Transfer Act, as amended, or similar state laws.

**IN CASE OF ERROR OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS:**

Call us at the phone number indicated on the first page of this statement, OR write us at the address listed below*, as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than sixty (60) days after we sent you the FIRST statement on which the problem or error appeared.

* KeyBank
Customer Disputes
NY-31-17-0128
17 Corporate Woods Blvd
Albany, NY 12211

- Tell us your name and Account number;
- Describe the error or transfer that you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information;
- Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within ten (10) business days.

We will investigate your complaint and will correct any error promptly. If we take more than ten (10) business days to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

**COMMON ELECTRONIC TRANSACTION DESCRIPTIONS:**

XFER TO SAV - Transfer to Savings Account
XFER FROM SAV - Transfer from Savings Account
XFER TO CKG - Transfer to Checking Account
XFER FROM CKG - Transfer from Checking Account
PMT TO CR CARD - Payment to Credit Card
ADV CR CARD - Advance from Credit Card

**Preauthorized Credits:** If you have arranged to have direct deposits made to your Account at least once every sixty (60) days from the same person or company, you can call us at the number indicated on the reverse side to find out whether or not the deposit has been made.

## IMPORTANT LINE OF CREDIT INFORMATION

**What To Do If You Think You Find A Mistake on Your Statement:** If you think there is an error on your statement, write us at: KeyBank N.A., P.O Box 93885, Cleveland, OH 44101- 4825.

In your letter, give us the following information:

- Account Information : Your name and account number.
- Dollar Amount : The dollar amount of the suspected error.
- Description of the Problem : If you think there is an error on your bill, describe what you believe is wrong and why you believe it was a mistake.

You must contact us within 60 days after the error appeared on your statement. You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**Explanation of Finance Charge:** Your Finance Charge attributable to interest (hereinafter referred to as interest) is computed using the Average Daily Balance method.

**Average Daily Balance method (Balance Subject to Interest Rate):** Your interest is computed on all purchases and cash advances (collectively "advances") from the date each advance is posted until we receive payment in full (there is no grace period). We figure the interest on your line of credit by multiplying the daily periodic rate by the "Average Daily Balance" of your line of credit (including current transactions) and multiplying by the number of days in the billing cycle. To get the Average Daily Balance we take the beginning balance of your line of credit each day, add any new advances or debits, and subtract any payments and credits, any non-financed fees and unpaid interest. This gives us the daily balance. Then we add up all of your daily balances in the billing cycle and divide this total by the number of days in the billing cycle to get your Average Daily Balance.

**CREDIT INFORMATION:** If you believe we have reported inaccurate information about your account to a credit reporting agency, you may contact the credit reporting agency or write to us at:

Key Credit Research Department
P.O. Box 94518
Cleveland, Ohio 44101-4518

Please include your account number, a copy of your credit report reflecting the inaccurate information, name, address, city, state, and zip code, and an explanation of why you believe the information is inaccurate.

329681169788 - 03290
144

## BALANCING YOUR ACCOUNT

Please examine your statement and paid check information upon receipt. Erasures, alterations or irregularities should be reported promptly in accordance with your account agreement. The suggested steps below will help you balance your account.

### INSTRUCTIONS

**❶** Verify and check off in your check register each deposit, check or other transaction shown on this statement.

Enter into your check register and SUBTRACT:
- Checks or other deductions shown on our statement that you have *not* already entered.
- The "Service charges", if any, shown on your statement.

Enter into your check register and ADD:
- Deposits or other credits shown on your statement that you have *not* already entered.
- The "Interest earned" shown on your statement, if any.

**❹** List from your check register any checks or other deductions that are *not* shown on your statement.

| Check # or Date | Amount |
|---|---|
| | |

**❺** List any deposits from your check register that are *not* shown on your statement.

| Date | Amount |
|---|---|
| | |
| TOTAL → | $ |

**❻** Enter ending balance shown on your statement.

$

**❼** Add 5 and 6 and enter total here.

$

**❽** Enter total from 4.

$

**❾** Subtract 8 from 7 and enter difference here.

$

This amount should agree with your check register balance.

TOTAL → $

# STATEMENT OF ACCOUNT

**PB&T BANK**
Local People Making Local Decisions Since 1889

PB&T Bank
301 W 5th St
Pueblo, CO 81003
(719) 545-1834
(888)728-3550

| ACCOUNT NO. | STATEMENT PERIOD | PAGE |
|---|---|---|
| XXXXX6518 | 12/01/2019 - 12/31/2019 | 1 of 2 |

| | | |
|---|---|---|
| PREVIOUS BALANCE | | 6,240.36 |
| DEPOSITS/CREDITS | (8) | 23,268.50 |
| CHECKS/DEBITS | (21) | 27,925.06 |
| ENDING BALANCE | | 1,583.80 |
| DAYS IN STATEMENT PERIOD | | 31 |

We appreciate you and your business, thank you!
Happy Holidays, from all of us at PB&T Bank.

CHEYENNE HOTEL INVESTMENTS LLC
SAMIRA A KHAN, AUTH SIGN
DBA HOMEWOOD SUITES COLORADO SPGS AIRPOR
225 E CHEYENNE MTN BLV STE 210
COLORADO SPRINGS CO 80906

| TRANSACTION DATE | TRANSACTION TYPE | DESCRIPTION OF TRANSACTION | AMOUNT |
|---|---|---|---|
| Free Business Checking | | | |
| | | **DEPOSITS / OTHER CREDITS** | |
| 12/05/2019 | ACH Deposit | 8035484677 MERCHANT SERVICE MERCH DEP | 5,936.51 |
| 12/11/2019 | ACH Deposit | 8035484677 MERCHANT SERVICE MERCH DEP | 1,981.28 |
| 12/16/2019 | ACH Deposit | 8035484677 MERCHANT SERVICE MERCH DEP | 4,086.59 |
| 12/18/2019 | ACH Deposit | 8035484677 MERCHANT SERVICE MERCH DEP | 2,066.15 |
| 12/20/2019 | Deposit | | 3,361.18 |
| 12/26/2019 | ACH Deposit | 8035484677 MERCHANT SERVICE MERCH DEP | 2,172.95 |
| 12/27/2019 | Deposit | | 661.50 |
| 12/27/2019 | ACH Deposit | 8035484677 MERCHANT SERVICE MERCH DEP | 3,002.34 |

## CHECK RECAP

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 1744 | 12/05 | 132.94 | 1749* | 12/09 | 145.06 | | | |

* SKIP IN CHECK NUMBER SEQUENCE

| | | **WITHDRAWALS / OTHER DEBITS** | |
|---|---|---|---|
| 12/02/2019 | Online Transfer | INTERNET XFR TO Free Sm Bu XXXXXX7452 | 1,000.00 |
| 12/02/2019 | ACH Payment | 8035484677 MERCHANT SERVICE MERCH FEE | 1,233.70 |
| 12/02/2019 | ACH Payment | 8079169911 MERCHANT SERVICE MERCH FEE | 1,779.44 |
| 12/03/2019 | Online Transfer | INTERNET XFR TO Free Sm Bu XXXXXX7452 | 1,000.00 |
| 12/04/2019 | Online Transfer | INTERNET XFR TO Free Sm Bu XXXXXX7452 | 1,000.00 |
| 12/06/2019 | Online Transfer | INTERNET XFR TO Free Sm Bu XXXXXX7452 | 5,000.00 |
| 12/11/2019 | ACH Payment | 8035484677 MERCHANT SERVICE MERCH CHBK | 360.51 |
| 12/11/2019 | ACH Payment | 5001191042 MBFS.COM Auto Pay | 652.62 |
| 12/12/2019 | ACH Payment | XXXXXXXXX DIRECTV Payment | 101.99 |
| 12/17/2019 | Online Transfer | INTERNET XFR TO Free Sm Bu XXXXXX5954 | 3,000.00 |
| 12/17/2019 | ACH Payment | 60492788 JonasChorumMSI    PURCHASE | 654.80 |
| 12/23/2019 | Online Transfer | INTERNET XFR TO Free Sm Bu XXXXXX7452 | 3,800.00 |
| 12/24/2019 | Online Transfer | INTERNET XFR TO Free Sm Bu XXXXXX7452 | 1,000.00 |
| 12/24/2019 | ACH Payment | ATT Payment | 1,498.00 |
| 12/26/2019 | Online Transfer | INTERNET XFR TO Free Sm Bu XXXXXX7452 IRS | 1,000.00 |
| 12/27/2019 | Online Transfer | INTERNET XFR TO Free Sm Bu XXXXXX7452 | 4,000.00 |
| 12/31/2019 | Online Transfer | INTERNET XFR TO Free Sm Bu XXXXXX7452 | 500.00 |
| 12/31/2019 | ACH Payment | COLTAXXXXXXXXX Dept. of Revenue TaxPaymnt T | 16.00 |
| 12/31/2019 | ACH Payment | 303-534-3468 LOCTAXPYMT CO.GO LOCTAXPYMT | 50.00 |

## DAILY ENDING BALANCE

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 12/01 | 6,240.36 | 12/02 | 2,227.22 | 12/03 | 1,227.22 |

# PUEBLO BANK AND TRUST

| ACCOUNT NO. | STATEMENT PERIOD | PAGE |
|---|---|---|
| XXXXX6518 | 12/01/2019 - 12/31/2019 | 2 of 2 |

| TRANSACTION DATE | TRANSACTION TYPE | DESCRIPTION OF TRANSACTION | AMOUNT |
|---|---|---|---|

## DAILY ENDING BALANCE

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 12/04 | 227.22 | 12/12 | 1,751.89 | 12/23 | 3,811.01 |
| 12/05 | 6,030.79 | 12/16 | 5,838.48 | 12/24 | 1,313.01 |
| 12/06 | 1,030.79 | 12/17 | 2,183.68 | 12/26 | 2,485.96 |
| 12/09 | 885.73 | 12/18 | 4,249.83 | 12/27 | 2,149.80 |
| 12/11 | 1,853.88 | 12/20 | 7,611.01 | 12/31 | 1,583.80 |

|  | Total for this Period | Total Year to Date |
|---|---|---|
| Total overdraft fees | 0.00 | 0.00 |
| Total returned item fees | 0.00 | 0.00 |

**IMPORTANT DISCLOSURES TO OUR CONSUMER CUSTOMERS**
**In Case of Errors or Questions About Your Checking or Savings Electronic Transfers**
If you think your statement or receipt is wrong or if you need more information about a transfer listed on your statement or receipt, we must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared. Telephone us at one of the numbers listed or write us at The Pueblo Bank and Trust Company, P.O. Box 639, Pueblo, CO 81002.
- Tell us your name and account number.
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.
We will tell you the results of our investigation within 10 business days and will correct any error promptly. If we need more time, we may take up to 45 days to investigate your complaint or question. In that case, we will provisionally credit your account within 10 business days for the amount you think is in error so that you will have the use of money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not re-credit your account. If we decide there was no error, we will send you a written explanation within 3 business days after we finish our investigation. You may ask for copies of the documents that we used in our investigation. For transfers initiated outside the United States or transfers resulting from point of sale debit card transactions, the time period for provisional credit is 10 business days and the time to resolve the investigation is 90 days.

**CONSUMER BILLING RIGHTS SUMMARY**
**In Case of Errors or Questions About Your Line of Credit Statement**
If you think your statement is wrong, or if you need more information about a transaction on your statement, write us on a separate sheet at P.O Box 639, Pueblo, CO 81002 as soon as possible. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:
- Your name and account number.
- The dollar amount of the suspected error.
- Date the transaction occurred.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about. You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your statement that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.
**Special Rule for Credit Card Purchases (This applies when you have a check card and a line of credit)**
If you have a problem with the quality of goods or services that you purchased with a credit card and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. You have this protection only when the purchase price was more than $50 and the purchase was made in your home state or within 100 miles of your mailing address. (If we own or operate the merchant or if we mailed you the advertisement for the property or services, all purchases are covered regardless of amount or location of purchase.)

**RESERVE LINE OF CREDIT**
We figure the FINANCE CHARGE on your account by applying the daily periodic rate to the "average daily balance" of your account (including current transactions) and multiply by the number of days in the statement cycle. To get the "average daily balance" we take the beginning balance of your account each day, add any new advances, and subtract any payments or credits. This gives us the daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. The FINANCE CHARGE begins from the date of each advance.

**IMPORTANT DISCLOSURES TO OUR BUSINESS CUSTOMERS**
Errors related to any transaction on a business account will be governed by any agreement between us and/or all applicable rules and regulations governing such transactions, including the rules of the National Automated Clearing House Association (NACHA Rules) as may be amended from time to time. If you think this statement is wrong, please telephone us at the number listed on the front of this statement immediately.

rev. 4/03



KeyBank
P.O. Box 93885
Cleveland, OH 44101-5885

**Corporate Banking Statement**
**December 31, 2019**
**page 1 of 3**

329681169796

```
    13        T   968 00000 R EM AO
```
CHEYENNE HOTEL INVESTMENTS, LLC
DBA HOMEWOOD SUITES LB FBO WELLS
FARGO, AS TRUSTEE FOR CSFB 2006-C1
225 E CHEYENNE MOUNTAIN BLVD STE 210
COLORADO SPRINGS CO 80906-3700

*Questions or comments?*
*Call  1-800-821-2829*

Commercial Control Transaction    329681169796
CHEYENNE HOTEL INVESTMENTS, LLC
DBA HOMEWOOD SUITES LB FBO WELLS
FARGO, AS TRUSTEE FOR CSFB 2006-C1

| | |
|---|---:|
| Beginning balance 11-30-19 | $0.00 |
| 2 Additions | +597.63 |
| 1 Subtraction | -72.63 |
| Net fees and charges | -525.00 |
| **Ending balance 12-31-19** | **$0.00** |

## Additions

| Transfers Date | Serial # | Source | | |
|---|---|---|---|---:|
| 12-2 | | Funds Transfer From DDA Account | 329681169788 | $72.63 |
| 12-9 | | Funds Transfer From DDA Account | 329681169788 | 525.00 |
| | | **Total additions** | | **$597.63** |

## Subtractions

| Withdrawals Date | Serial # | Location | | |
|---|---|---|---|---:|
| 12-2 | | Direct Withdrawal, Tsys | Fees Sep | $72.63 |
| | | **Total subtractions** | | **$72.63** |

## Fees and charges

| Date | | Quantity | Unit Charge | |
|---|---|---:|---:|---:|
| 12-9-19 | Nov Analysis Service Chg | 1 | 525.00 | -$525.00 |
| | **Fees and charges  assessed this period** | | | **-$525.00** |

329681169796 - 03290
375

**Corporate Banking Statement**
**December 31, 2019**
**page 2 of 3**

329681169796

*See your Account Analysis statement for details.*



## CUSTOMER ACCOUNT DISCLOSURES

The following disclosures apply only to accounts covered by the Federal Truth-in-Lending Act or the Federal Electronic Funds Transfer Act, as amended, or similar state laws.

**IN CASE OF ERROR OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS:**

Call us at the phone number indicated on the first page of this statement, OR write us at the address listed below*, as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than sixty (60) days after we sent you the FIRST statement on which the problem or error appeared.

> \* KeyBank
> Customer Disputes
> NY-31-17-0128
> 17 Corporate Woods Blvd
> Albany, NY 12211

- Tell us your name and Account number;
- Describe the error or transfer that you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information;
- Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within ten (10) business days.

We will investigate your complaint and will correct any error promptly. If we take more than ten (10) business days to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

**COMMON ELECTRONIC TRANSACTION DESCRIPTIONS:**

| | |
|---|---|
| XFER TO SAV | - Transfer to Savings Account |
| XFER FROM SAV | - Transfer from Savings Account |
| XFER TO CKG | - Transfer to Checking Account |
| XFER FROM CKG | - Transfer from Checking Account |
| PMT TO CR CARD | - Payment to Credit Card |
| ADV CR CARD | - Advance from Credit Card |

Preauthorized Credits: If you have arranged to have direct deposits made to your Account at least once every sixty (60) days from the same person or company, you can call us at the number indicated on the reverse side to find out whether or not the deposit has been made.

**IMPORTANT LINE OF CREDIT INFORMATION**

**What To Do If You Think You Find A Mistake on Your Statement:** If you think there is an error on your statement, write us at: KeyBank N.A., P.O Box 93885, Cleveland, OH 44101- 4825.

In your letter, give us the following information:

- Account Information : Your name and account number.
- Dollar Amount : The dollar amount of the suspected error.
- Description of the Problem : If you think there is an error on your bill, describe what you believe is wrong and why you believe it was a mistake.

You must contact us within 60 days after the error appeared on your statement. You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**Explanation of Finance Charge:** Your Finance Charge attributable to interest (hereinafter referred to as interest) is computed using the Average Daily Balance method.

**Average Daily Balance method (Balance Subject to Interest Rate):** Your interest is computed on all purchases and cash advances (collectively "advances") from the date each advance is posted until we receive payment in full (there is no grace period). We figure the interest on your line of credit by multiplying the daily periodic rate by the "Average Daily Balance" of your line of credit (including current transactions) and multiplying by the number of days in the billing cycle. To get the Average Daily Balance we take the beginning balance of your line of credit each day, add any new advances or debits, and subtract any payments and credits, any non-financed fees and unpaid interest. This gives us the daily balance. Then we add up all of your daily balances in the billing cycle and divide this total by the number of days in the billing cycle to get your Average Daily Balance.

**CREDIT INFORMATION:** If you believe we have reported inaccurate information about your account to a credit reporting agency, you may contact the credit reporting agency or write to us at:

Key Credit Research Department
P.O. Box 94518
Cleveland, Ohio 44101-4518

Please include your account number, a copy of your credit report reflecting the inaccurate information, name, address, city, state, and zip code, and an explanation of why you believe the information is inaccurate.

329681169796 - 03290
375

---

### BALANCING YOUR ACCOUNT

Please examine your statement and paid check information upon receipt. Erasures, alterations or irregularities should be reported promptly in accordance with your account agreement. The suggested steps below will help you balance your account.

#### INSTRUCTIONS

❶ Verify and check off in your check register each deposit, check or other transaction shown on this statement.

Enter into your check register and SUBTRACT:
- Checks or other deductions shown on our statement that you have *not* already entered.
- The "Service charges", if any, shown on your statement.

Enter into your check register and ADD:
- Deposits or other credits shown on your statement that you have *not* already entered.
- The "Interest earned" shown on your statement, if any.

| ❹ List from your check register any checks or other deductions that are *not* shown on your statement. | | ❺ List any deposits from your check register that are *not* shown on your statement. | |
|---|---|---|---|
| Check # or Date | Amount | Date | Amount |
| | | | |
| | | | |
| | | | |
| | | TOTAL ➜ | $ |
| | | ❻ **Enter ending balance shown on your statement.** | |
| | | $ | |
| | | ❼ **Add 5 and 6 and enter total here.** | |
| | | $ | |
| | | ❽ **Enter total from 4.** | |
| | | $ | |
| | | ❾ **Subtract 8 from 7 and enter difference here.** | |
| | | $ | |
| TOTAL ➜ | $ | This amount should agree with your check register balance. | |

# PB&T BANK
*Local People Making Local Decisions Since 1889*

PB&T Bank
301 W 5th St
Pueblo, CO 81003
(719) 545-1834
(888)728-3550

## STATEMENT OF ACCOUNT

| ACCOUNT NO. | STATEMENT PERIOD | PAGE |
|---|---|---|
| XXXXX6195 | 12/01/2019 - 12/31/2019 | 1 of 2 |

| | | |
|---|---|---|
| PREVIOUS BALANCE | | 1,118.86 |
| DEPOSITS/CREDITS | (0) | 0.00 |
| CHECKS/DEBITS | (1) | 1,000.00 |
| ENDING BALANCE | | 118.86 |
| DAYS IN STATEMENT PERIOD | | 31 |

We appreciate you and your business, thank you!
Happy Holidays, from all of us at PB&T Bank.

CHEYENNE HOTEL INVESTMENTS LLC
225 E CHEYENNE MTN BLV STE 210
COLORADO SPRINGS CO 80906

| TRANSACTION DATE | TRANSACTION TYPE | DESCRIPTION OF TRANSACTION | AMOUNT |
|---|---|---|---|
| Free Business Checking | | | |
| | | DEPOSITS / OTHER CREDITS | |
| | | WITHDRAWALS / OTHER DEBITS | |
| 12/04/2019 | Online Transfer | INTERNET XFR TO Free Sm Bu XXXXXX7452 | 1,000.00 |

### DAILY ENDING BALANCE

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 12/01 | 1,118.86 | 12/04 | 118.86 | | |

| | Total for this Period | Total Year to Date |
|---|---|---|
| Total overdraft fees | 0.00 | 0.00 |
| Total returned item fees | 0.00 | 87.00 |

# PUEBLO BANK AND TRUST

| ACCOUNT NO. | STATEMENT PERIOD | PAGE |
|---|---|---|
| XXXXX6195 | 12/01/2019 - 12/31/2019 | 2 of 2 |

**IMPORTANT DISCLOSURES TO OUR CONSUMER CUSTOMERS**
**In Case of Errors or Questions About Your Checking or Savings Electronic Transfers**
If you think your statement or receipt is wrong or if you need more information about a transfer listed on your statement or receipt, we must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared. Telephone us at one of the numbers listed or write us at The Pueblo Bank and Trust Company, P.O. Box 639, Pueblo, CO 81002.
•     Tell us your name and account number.
•     Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
•     Tell us the dollar amount of the suspected error.
We will tell you the results of our investigation within 10 business days and will correct any error promptly. If we need more time, we may take up to 45 days to investigate your complaint or question. In that case, we will provisionally credit your account within 10 business days for the amount you think is in error so that you will have the use of money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not re-credit your account. If we decide there was no error, we will send you a written explanation within 3 business days after we finish our investigation. You may ask for copies of the documents that we used in our investigation. For transfers initiated outside the United States or transfers resulting from point of sale debit card transactions, the time period for provisional credit is 10 business days and the time to resolve the investigation is 90 days.

**CONSUMER BILLING RIGHTS SUMMARY**
**In Case of Errors or Questions About Your Line of Credit Statement**
If you think your statement is wrong, or if you need more information about a transaction on your statement, write us on a separate sheet at P.O Box 639, Pueblo, CO 81002 as soon as possible. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:
•     Your name and account number.
•     The dollar amount of the suspected error.
•     Date the transaction occurred.
•     Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about. You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your statement that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.
**Special Rule for Credit Card Purchases (This applies when you have a check card and a line of credit)**
If you have a problem with the quality of goods or services that you purchased with a credit card and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. You have this protection only when the purchase price was more than $50 and the purchase was made in your home state or within 100 miles of your mailing address. (If we own or operate the merchant or if we mailed you the advertisement for the property or services, all purchases are covered regardless of amount or location of purchase.)

**RESERVE LINE OF CREDIT**
We figure the FINANCE CHARGE on your account by applying the daily periodic rate to the "average daily balance" of your account (including current transactions) and multiply by the number of days in the statement cycle. To get the "average daily balance" we take the beginning balance of your account each day, add any new advances, and subtract any payments or credits. This gives us the daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. The FINANCE CHARGE begins from the date of each advance.

**IMPORTANT DISCLOSURES TO OUR BUSINESS CUSTOMERS**
Errors related to any transaction on a business account will be governed by any agreement between us and/or all applicable rules and regulations governing such transactions, including the rules of the National Automated Clearing House Association (NACHA Rules) as may be amended from time to time. If you think this statement is wrong, please telephone us at the number listed on the front of this statement immediately.

rev. 4/03

Cheyenne Hotel Investments
12/31/2019 MOR

Case No. 19-15473

Detailed AP Ageing

| Date | Num | Vendor | Due Date | Past Due | Amount | Open Balance |
|---|---|---|---|---|---|---|
| 02/19/2018 | 700345 | Co Dept of Labor & Employment | 03/06/2018 | 694 | 120.00 | 120.00 |
| 09/17/2018 | | Scott pool & Spa Service | 09/17/2018 | 499 | 782.68 | 782.68 |
| 10/03/2018 | 9166846221 | HD Supply | 10/03/2018 | 483 | 565.64 | 565.64 |
| 10/08/2018 | 9166979144 | HD Supply | 10/08/2018 | 478 | 978.65 | 978.65 |
| 10/10/2018 | 9167041049 | HD Supply | 10/10/2018 | 476 | 326.55 | 326.55 |
| 10/11/2018 | 106,108,110 | HD Supply | 10/11/2018 | 475 | 156.00 | 156.00 |
| 10/15/2018 | 259090023 | Sysco | 10/15/2018 | 471 | 92.16 | 92.16 |
| 10/18/2018 | 9167272714 | HD Supply | 10/18/2018 | 468 | 435.03 | 435.03 |
| 10/18/2018 | 9167296689 | HD Supply | 10/18/2018 | 468 | 355.28 | 355.28 |
| 10/23/2018 | 9167379808 | HD Supply | 10/23/2018 | 463 | 303.65 | 303.65 |
| 11/01/2018 | 5013796 | In The Swim | 11/01/2018 | 454 | 2,780.37 | 2,780.37 |
| 11/27/2018 | 259176866 | Sysco | 11/27/2018 | 428 | 1,042.65 | 1,042.65 |
| 11/29/2018 | | Sears Home Services | 11/29/2018 | 426 | 99.00 | 99.00 |
| 11/30/2018 | 289506 | Travel Click,Inc. | 11/30/2018 | 425 | 207.90 | 207.90 |
| 12/01/2018 | 259190193 | Sysco | 12/01/2018 | 424 | 1,215.82 | 1,215.82 |
| 12/04/2018 | 259193421 | Sysco | 12/04/2018 | 421 | 1,088.08 | 1,088.08 |
| 12/08/2018 | 259203642 | Sysco | 12/08/2018 | 417 | 1,281.50 | 1,281.50 |
| 12/11/2018 | 259206849 | Sysco | 12/11/2018 | 414 | 1,146.45 | 1,146.45 |
| 12/13/2018 | 16071186 | Uniguest | 12/13/2018 | 412 | 85.49 | 85.49 |
| 12/15/2018 | 259217258 | Sysco | 12/15/2018 | 410 | 1,360.30 | 1,360.30 |
| 12/18/2018 | 259220554 | Sysco | 12/18/2018 | 407 | 1,165.55 | 1,165.55 |
| 12/22/2018 | 259230309 | Sysco | 12/22/2018 | 403 | 1,104.63 | 1,104.63 |
| 12/26/2018 | 259233416 | Sysco | 12/26/2018 | 399 | 559.12 | 559.12 |
| 12/29/2018 | 259240623 | Sysco | 12/29/2018 | 396 | 584.32 | 584.32 |
| 01/01/2019 | 259246566 | Sysco | 01/01/2019 | 393 | 587.95 | 587.95 |
| 01/01/2019 | TMCO563O119 | Otis Elevator Company | 01/31/2019 | 363 | 1,363.95 | 1,363.95 |
| 01/03/2019 | 914638182 | Insight Direct USA, Inc | 01/18/2019 | 376 | 875.62 | 875.62 |
| 01/08/2019 | 432338 | J.C. Schultz Enterprises, Inc. | 01/08/2019 | 386 | 201.78 | 201.78 |
| 01/09/2019 | inv.1744,bath tub rep | Miracle Method of Pueblo | 01/09/2019 | 385 | 2,050.00 | 2,050.00 |
| 01/15/2019 | 1459824204 | CenturyLink | 02/14/2019 | 349 | 1,861.66 | 521.70 |
| 01/16/2019 | 20190107-A-2701 | Commtrak | 01/16/2019 | 378 | 184.52 | 184.52 |
| 01/16/2019 | 1051109 | Plasticard-Locktech International | 01/16/2019 | 378 | 136.81 | 136.81 |
| 02/01/2019 | 1773 | Miracle Method of Pueblo | 02/01/2019 | 362 | 1,735.00 | 1,735.00 |
| 02/01/2019 | 801002400 | Tec-Exchange,Inc. | 02/01/2019 | 362 | 127.50 | 127.50 |
| 02/05/2019 | 1055829 | Plasticard-Locktech International | 02/05/2019 | 358 | 514.41 | 514.41 |
| 02/08/2019 | 180386605 | Orkin | 02/08/2019 | 355 | 106.50 | 106.50 |
| 02/19/2019 | N90789 | Harlan Graphic Arts Service, Inc. | 02/19/2019 | 344 | 155.42 | 155.42 |
| 02/20/2019 | 13761204003 | Swire Coca- Cola | 02/20/2019 | 343 | 98.91 | 98.91 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 02/20/2019 | | Cintas Fire | 03/22/2019 | 313 | 3,014.01 | 3,014.01 |
| 02/22/2019 | 17397 | RMS Sign Company | 02/22/2019 | 341 | 338.88 | 338.88 |
| 02/26/2019 | 6044 | Whistle Messaging Inc. | 02/26/2019 | 337 | 80.00 | 80.00 |
| 02/26/2019 | 98991631 | Superior Uniform Group | 03/28/2019 | 307 | 2,727.77 | 2,727.77 |
| 02/27/2019 | 13761204080 | Swire Coca- Cola | 02/27/2019 | 336 | 99.81 | 99.81 |
| 02/28/2019 | INV00309270 | Travel Click,Inc. | 02/28/2019 | 335 | 207.90 | 207.90 |
| 02/28/2019 | 14539753 | USA Today | 03/30/2019 | 305 | 195.00 | 195.00 |
| 03/04/2019 | INV214023 | Uniguest | 03/04/2019 | 331 | 1,631.92 | 1,631.92 |
| 03/05/2019 | | Orkin | 03/05/2019 | 330 | 106.50 | 106.50 |
| 03/06/2019 | 6094054 | The Robert Allen Duralee group | 03/06/2019 | 329 | 4,335.23 | 4,335.23 |
| 03/19/2019 | TMC15831001 | Otis Elevator Company | 04/18/2019 | 286 | 622.50 | 622.50 |
| 03/19/2019 | | CenturyLink | 04/18/2019 | 286 | 52.43 | 52.43 |
| 03/20/2019 | 13761204295 | Swire Coca- Cola | 03/20/2019 | 315 | 49.90 | 49.90 |
| 03/20/2019 | TMC05630419 | Otis Elevator Company | 04/19/2019 | 285 | 1,363.95 | 1,363.95 |
| 03/26/2019 | 5690A | Judd's Glass & Mirror | 03/26/2019 | 309 | 691.18 | 691.18 |
| 03/26/2019 | 5690B | Judd's Glass & Mirror | 03/26/2019 | 309 | 329.90 | 329.90 |
| 03/27/2019 | 186031130 | Orkin | 03/27/2019 | 308 | 1,050.00 | 1,050.00 |
| 03/27/2019 | 914998666 | Insight Direct USA, Inc | 04/11/2019 | 293 | 2,787.42 | 2,787.42 |
| 03/31/2019 | 14590159 | USA Today | 04/30/2019 | 274 | 243.75 | 243.75 |
| 04/01/2019 | 182915261 | Orkin | 04/01/2019 | 303 | 106.50 | 106.50 |
| 04/03/2019 | 13761204435 | Swire Coca- Cola | 04/03/2019 | 301 | 165.97 | 165.97 |
| 04/10/2019 | 99071937 | Superior Uniform Group | 05/10/2019 | 264 | 139.11 | 139.11 |
| 04/11/2019 | 17452 | RMS Sign Company | 04/11/2019 | 293 | 595.05 | 595.05 |
| 04/11/2019 | 17453 | RMS Sign Company | 04/11/2019 | 293 | 70.40 | 70.40 |
| 04/11/2019 | 68983384 | Farmers Brothers CO | 05/11/2019 | 263 | 218.24 | 218.24 |
| 04/17/2019 | 186345813 | Orkin | 04/17/2019 | 287 | 1,500.00 | 1,500.00 |
| 04/18/2019 | 68983419 | Farmers Brothers CO | 05/18/2019 | 256 | 145.64 | 145.64 |
| 04/19/2019 | 186416547 | Orkin | 04/19/2019 | 285 | 1,050.00 | 1,050.00 |
| 04/19/2019 | | CenturyLink | 05/19/2019 | 255 | 47.57 | 47.57 |
| 04/25/2019 | 69007465 | Farmers Brothers CO | 05/25/2019 | 249 | 304.38 | 304.38 |
| 04/28/2019 | 14635845 | USA Today | 05/28/2019 | 246 | 243.75 | 243.75 |
| 04/29/2019 | 42917 | Cintas Fire | 05/29/2019 | 245 | 420.00 | 420.00 |
| 05/01/2019 | 183861614 | Orkin | 05/01/2019 | 273 | 106.50 | 106.50 |
| 05/02/2019 | 69032503 | Farmers Brothers CO | 05/01/2019 | 242 | 145.64 | 145.64 |
| 05/03/2019 | INV0030689 | El Paso County Public Health | 05/03/2019 | 271 | 242.00 | 242.00 |
| 05/07/2019 | A-02799 | Commtrak | 05/07/2019 | 267 | 813.70 | 813.70 |
| 05/09/2019 | 69059202 | Farmers Brothers CO | 06/08/2019 | 235 | 146.99 | 146.99 |
| 05/10/2019 | SEI/01268162 | ASSA ABLOY Entrance Systems US INC. | 06/09/2019 | 234 | 300.56 | 300.56 |
| 05/15/2019 | 13761204900 | Swire Coca- Cola | 05/15/2019 | 259 | 147.79 | 147.79 |
| 05/16/2019 | 69082333 | Farmers Brothers CO | 06/15/2019 | 228 | 74.39 | 74.39 |
| 05/19/2019 | | CenturyLink | 06/18/2019 | 225 | 55.17 | 55.17 |
| 05/23/2019 | 69082378 | Farmers Brothers CO | 06/22/2019 | 221 | 294.26 | 294.26 |
| 05/24/2019 | 1271241 | ASSA ABLOY Entrance Systems US INC. | 06/23/2019 | 220 | 1,324.31 | 1,324.31 |
| 05/28/2019 | SKUA8A | City of Colorado Springs | 05/28/2019 | 246 | 897.60 | 897.60 |
| 05/29/2019 | 13761205044 | Swire Coca- Cola | 05/29/2019 | 245 | 151.67 | 151.67 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 05/30/2019 | | Hilton Hotels Corporation | 06/29/2019 | 214 | 36,965.52 | 36,965.52 |
| 05/30/2019 | 69114514 | Farmers Brothers CO | 06/29/2019 | 214 | 218.24 | 218.24 |
| 05/31/2019 | 328345 | Travel Click,Inc. | 05/31/2019 | 243 | 207.90 | 207.90 |
| 05/31/2019 | | USA Today | 06/30/2019 | 213 | 234.00 | 234.00 |
| 06/01/2019 | 184813654 | Orkin | 06/01/2019 | 242 | 113.96 | 113.96 |
| 06/04/2019 | | Ridgeway Communication Enterprises | 06/04/2019 | 239 | 2,202.05 | 2,202.05 |
| 06/04/2019 | 100025965 | GM Girvin Marketing | 06/04/2019 | 239 | 279.14 | 279.14 |
| 06/04/2019 | I47673UX8MEO | Golden Malted | 06/04/2019 | 239 | 206.00 | 206.00 |
| 06/05/2019 | 839490 | The Regal Press,Inc. | 06/05/2019 | 238 | 136.74 | 136.74 |
| 06/06/2019 | | Guest Supply | 06/06/2019 | 237 | 2,376.17 | 2,376.17 |
| 06/06/2019 | 69134816 | Farmers Brothers CO | 07/06/2019 | 207 | 145.64 | 145.64 |
| 06/10/2019 | 141368882 | Edward Don&Company | 06/10/2019 | 233 | 60.80 | 60.80 |
| 06/12/2019 | | Oztek Commercial service | 06/12/2019 | 231 | 1,232.73 | 1,232.73 |
| 06/13/2019 | | Colorado Springs Utilities | 07/13/2019 | 200 | 9,613.93 | 9,613.93 |
| 06/13/2019 | 69161100 | Farmers Brothers CO | 07/13/2019 | 200 | 223.01 | 223.01 |
| 06/18/2019 | 10412282 | Guest Supply | 06/18/2019 | 225 | 76.43 | 76.43 |
| 06/19/2019 | 13761205295 | Swire Coca- Cola | 06/19/2019 | 224 | 153.45 | 153.45 |
| 06/19/2019 | | CenturyLink | 07/19/2019 | 194 | 59.11 | 59.11 |
| 06/20/2019 | TMC05630-719 | Otis Elevator Company | 07/20/2019 | 193 | 1,363.95 | 1,363.95 |
| 06/20/2019 | 69184948 | Farmers Brothers CO | 07/20/2019 | 193 | 231.50 | 231.50 |
| 06/21/2019 | 10428014 | Guest Supply | 06/21/2019 | 222 | 1,801.58 | 1,801.58 |
| 06/21/2019 | 10425188 | Guest Supply | 06/21/2019 | 222 | 106.80 | 106.80 |
| 06/25/2019 | 259596429 | Sysco | 06/25/2019 | 218 | 1,431.41 | 1,431.41 |
| | | | | Pre-Petition | | 115,572.19 |
| | | | | | | |
| 06/29/2019 | | Sysco | 06/29/2019 | 214 | 1,798.77 | 50.99 |
| 06/30/2019 | | Hilton Hotels Corporation | 07/30/2019 | 183 | 45,439.85 | 45,439.85 |
| 07/01/2019 | | Johnson Controls, Inc. | 07/01/2019 | 212 | 491.00 | 491.00 |
| 07/01/2019 | | CenturyLink | 07/31/2019 | 182 | 757.76 | 757.76 |
| 07/02/2019 | I47674IIKEPF | Golden Malted | 07/02/2019 | 211 | 509.75 | 509.75 |
| 07/05/2019 | | Ccomputer Techrepair | 07/05/2019 | 208 | 729.42 | 729.42 |
| 07/15/2019 | | CenturyLink | 08/14/2019 | 168 | 1,333.14 | 1,333.14 |
| 07/17/2019 | | ASSA ABLOY Entrance Systems US INC. | 08/16/2019 | 166 | 300.56 | 300.56 |
| 07/19/2019 | | Johnson Controls, Inc. | 07/19/2019 | 194 | 3,339.01 | 3,339.01 |
| 07/19/2019 | 6042391 | Guest Supply | 07/19/2019 | 194 | 2,754.04 | 2,754.04 |
| 07/19/2019 | | CenturyLink | 08/18/2019 | 164 | 59.20 | 59.20 |
| 07/31/2019 | I47674OVKOU5 | Golden Malted | 07/31/2019 | 182 | 354.00 | 354.00 |
| 07/31/2019 | | Hilton Hotels Corporation | 08/30/2019 | 152 | 47,408.28 | 47,408.28 |
| 08/01/2019 | | City of Colorado Springs | 08/01/2019 | 181 | 163.20 | 163.20 |
| 08/01/2019 | 187192318 | Orkin | 08/01/2019 | 181 | 113.96 | 113.96 |
| 08/01/2019 | | CenturyLink | 08/31/2019 | 151 | 605.51 | 605.51 |
| 08/15/2019 | | Rfid Hotel | 08/15/2019 | 167 | 338.59 | 338.59 |
| 08/15/2019 | 1474660328 | CenturyLink | 09/14/2019 | 137 | 1,173.65 | 1,173.65 |
| 08/19/2019 | | CenturyLink | 09/18/2019 | 133 | 62.16 | 62.16 |
| 08/22/2019 | 69356247 | Farmers Brothers CO | 09/21/2019 | 130 | 376.48 | 210.38 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 08/31/2019 | 347937 | Travel Click,Inc. | 08/31/2019 | 151 | 207.90 | 207.90 |
| 09/01/2019 | 188455283 | Orkin | 09/01/2019 | 150 | 113.96 | 113.96 |
| 09/01/2019 | | CenturyLink | 10/01/2019 | 120 | 606.28 | 606.28 |
| | | | | | +90 Days | 107,122.59 |
| | | | | | | |
| 10/01/2019 | | Orkin | 10/01/2019 | 120 | 113.96 | 113.96 |
| 10/01/2019 | | CenturyLink | 10/31/2019 | 90 | 606.28 | 606.28 |
| 10/01/2019 | | RR Donnelley | 10/31/2019 | 90 | 164.32 | 164.32 |
| 10/20/2019 | | Otis Elevator Company | 11/19/2019 | 71 | 1,363.95 | 1,363.95 |
| 10/22/2019 | | CenturyLink | 11/21/2019 | 69 | 1,181.17 | 1,181.17 |
| 10/22/2019 | | Farmers Brothers CO | 11/21/2019 | 69 | 814.26 | 814.26 |
| 10/24/2019 | | Farmers Brothers CO | 11/23/2019 | 67 | 71.25 | 71.25 |
| 10/30/2019 | | GFL Environmental | 11/14/2019 | 76 | 232.50 | 232.50 |
| 10/31/2019 | I47675XLBNT7 | Carbon's Golden Malted | 10/31/2019 | 90 | 415.75 | 415.75 |
| 10/31/2019 | 13761206876 | Swire Coca- Cola | 10/31/2019 | 90 | 74.85 | 74.85 |
| | | | | | 60-90 Days | 5,038.29 |
| | | | | | | |
| 11/01/2019 | | Orkin | 11/01/2019 | 89 | 113.96 | 113.96 |
| 11/01/2019 | | CenturyLink | 12/01/2019 | 59 | 737.73 | 737.73 |
| 11/05/2019 | | Carbon's Golden Malted | 11/05/2019 | 85 | 581.25 | 581.25 |
| 11/13/2019 | | Hotel Planner | 11/13/2019 | 77 | 612.84 | 612.84 |
| 11/13/2019 | | Swire Coca- Cola | 11/13/2019 | 77 | 49.90 | 49.90 |
| | | | | | 31-60 Days | 2,095.68 |
| | | | | | | |
| 12/01/2019 | | Ascentium Capital LLC. | 12/01/2019 | 59 | 1,630.25 | 1,630.25 |
| 12/01/2019 | | Colorado Springs Utilities | 12/31/2019 | 29 | 9,385.71 | 9,385.71 |
| 12/01/2019 | | CenturyLink | 12/31/2019 | 29 | 1,186.87 | 1,186.87 |
| 12/01/2019 | | CenturyLink | 12/31/2019 | 29 | 774.61 | 774.61 |
| 12/01/2019 | | USA Today | 12/31/2019 | 29 | 255.06 | 255.06 |
| 12/11/2019 | 13761207386 | Swire Coca- Cola | 12/11/2019 | 49 | 74.85 | 74.85 |
| 12/12/2019 | | CenturyLink | 01/11/2020 | 18 | 148.52 | 148.52 |
| 12/18/2019 | | Swire Coca- Cola | 12/18/2019 | 42 | 49.90 | 49.90 |
| 12/19/2019 | | Johnson Controls Fire Protection | 12/19/2019 | 41 | 589.24 | 589.24 |
| 12/30/2019 | | AT&T WiFi Services | 01/29/2020 | 0 | 3,707.00 | 3,332.50 |
| | | | | | 0-30 days | 17,427.51 |
| | | | | | | |
| | | | | | Total Post-Petition | 131,684.07 |

**DEBTOR:** CHEYENNE HOTEL INVESTMENTS LLC     **MONTHLY OPERATING REPORT**
                                                CHAPTER 11

**CASE NUMBER:** 19-15473-KHT

### Form 2-A
### COVER SHEET

For Period End Date: 1/31/2020

**Accounting Method:** ☐ Accrual Basis    ☒ Cash Basis

---

### THIS REPORT IS DUE 21 DAYS AFTER THE END OF THE MONTH

Mark One Box for Each
Required Document:

Debtor must attach each of the following documents unless the U. S. Trustee
has waived the requirement in writing. File the original with the Clerk of Court.
Submit a duplicate, with original signature, to the U. S. Trustee.

| Report/Document Attached | Previously Waived | REQUIRED REPORTS/DOCUMENTS |
|:---:|:---:|:---|
| ☒ | ☐ | 1. Cash Receipts and Disbursements Statement (Form 2-B) |
| ☒ | ☐ | 2. Balance Sheet (Form 2-C) |
| ☒ | ☐ | 3. Profit and Loss Statement (Form 2-D) |
| ☒ | ☐ | 4. Supporting Schedules (Form 2-E) |
| ☒ | ☐ | 5. Quarterly Fee Summary (Form 2-F) |
| ☒ | ☐ | 6. Narrative (Form 2-G) |
| ☒ | ☐ | 7. Bank Statements for All Bank Accounts <br> *(Redact all but last 4 digits of account number and remove check images)* |
| ☒ | ☐ | 8. Bank Statement Reconciliations for all Bank Accounts |
| ☒ | ☐ | 9. Evidence of insurance for all policies renewed or replaced during month |

---

*I declare under penalty of perjury that the following Monthly Operating Report, and any
attachments thereto are true, accurate and correct to the best of my knowledge and belief.*

**Executed on:** _____

**Print Name:** Sonia Rathour

**Signature:** *Sonia.*

**Title:** Executive Assistant

Rev. 01/01/2018

Scanned with CamScanner

**DEBTOR:**   CHEYENNE HOTEL  INVESTMENTS LLC          **CASE NO:**          19-15473-KHT

## Form 2-B
### CASH RECEIPTS AND DISBURSEMENTS STATEMENT
For Period:   1/1/2020 to        1/31/2020

**CASH FLOW SUMMARY**

| | | Current Month | | Accumulated |
|---|---|---:|---|---:|
| **1. Beginning Cash Balance** | $ | 842,427  (1) | $ | 259,519  (1) |
| | | | | |
| 2. Cash Receipts | | | | |
| Operations | | 30,065 | | 1,027,510 |
| Sale of Assets | | - | | - |
| Loans/advances | | - | | - |
| Other      Insider Receipts | | 10,142 | | 125,829 |
| | | | | |
| Total Cash Receipts | $ | 40,207 | $ | 1,153,339 |
| | | | | |
| 3. Cash Disbursements | | | | |
| Operations | | 22,514 | | 382,315 |
| Debt Service/Secured loan payment | | | | - |
| Professional fees/U.S. Trustee fees | | - | | - |
| Professional fees paid from retainer (e.g. COLTAF accts) | | - | | - |
| Other      Insider Payments | | 21,036 | | 191,459 |
| | | | | |
| Total Cash Disbursements | $ | 43,550 | $ | 573,774 |
| | | | | |
| 4. Net Cash Flow (Total Cash Receipts less Total Cash Disbursements) | | (3,343) | | 579,565 |
| | | | | |
| **5 Ending Cash Balance (to Form 2-C)** | $ | 839,084  (2) | $ | 839,084  (2) |

**CASH BALANCE SUMMARY**

| | Financial Institution | | Book Balance |
|---|---|---|---:|
| Petty Cash | - | $ | 10,774 |
| DIP Operating Account | Key Bank & PB&T | | (43,836) |
| DIP State Tax Account | - | | - |
| DIP Payroll Account | - | | - |
| Other Operating Account | Berkadia - | | 872,146 |
| Retainers held by professionals (i.e. COLTAF) | - | | - |
| TOTAL (must agree with Ending Cash Balance above) | | $ | 839,084  (2) |

*(1) Accumulated beginning cash balance is the cash available at the commencement of the case and retainers.*
*Current month beginning cash balance should equal the previous month's ending balance.*
*(2)  All cash balances should be the same.*

Rev. 01/01/2018

**DEBTOR(S):**    **CHEYENNE HOTEL  INVESTMENTS LLC**          **CASE NO:**    19-15473-KHT

**Form 2-B**
**CASH RECEIPTS AND DISBURSEMENTS STATEMENT**
For Period: _____ 1/1/2020 _____ to ___ 1/31/2020 ___

**CASH RECEIPTS DETAIL**              **Account No:**
*(attach additional sheets as necessary)*

| Date | Payer | Description | Amount |
|------|-------|-------------|--------|
| 01/01/2020 | Samira Khan | | $ 250.00 |
| 01/06/2020 | Samira Khan | | 2,500.00 |
| 01/30/2020 | Merchant Services | | 818.24 |
| 01/16/2020 | Merchant Services | | 1,139.63 |
| 01/06/2020 | Merchant Services | | 1,648.37 |
| 01/27/2020 | Merchant Services | | 2,702.61 |
| 01/13/2020 | | | 2,964.26 |
| 01/02/2020 | | | 3,630.17 |
| 01/22/2020 | Merchant Services | | 5,845.94 |
| 01/29/2020 | Merchant Services | | 5,902.96 |
| 01/28/2020 | TRN Corp | | 300.00 |
| 01/16/2020 | TK Hotels | | 389.65 |
| 01/08/2020 | TK Hotels | | 702.45 |
| 01/13/2020 | Cheyenne Hotels LLC | | 1,000.00 |
| 01/28/2020 | TK Hotels | | 5,000.00 |
| 01/31/2020 | | | 5,413.22 |

**Total Cash Receipts**      $   40,207.50   (1)

*(1) Total for all accounts should agree with total cash receipts listed on Form 2-B, page 1*         Rev. 01/01/2018

**DEBTOR(S):** CHEYENNE HOTEL INVESTMENTS LLC          **CASE NO:** 19-15473-KHT

**Form 2-B**
**CASH RECEIPTS AND DISBURSEMENTS STATEMENT**
For Period: 1/1/2020 to 1/31/2020

**CASH DISBURSEMENTS DETAIL**          **Account No:** 0
*(attach additional sheets as necessary)*

| Date | Check No. | Payee | Description (Purpose) | Amount |
|---|---|---|---|---|
| 01/31/2020 | | Colorado Springs Utilities | | 10,000.00 |
| 01/22/2020 | | Farmers Brothers CO | | 5,866.00 |
| 01/23/2020 | | TRN Corp | | 5,866.00 |
| 01/02/2020 | | TK Hotels | | 4,670.42 |
| 01/21/2020 | | TRN Corp | | 4,000.00 |
| 01/31/2020 | | TRN Corp | | 4,000.00 |
| 01/06/2020 | | | | 2,500.00 |
| 01/14/2020 | | Ascentium Capital LLC. | | 1,630.25 |
| 01/31/2020 | | Walmart | | 900.00 |
| 01/06/2020 | | GFL Environmental | | 702.45 |
| 01/08/2020 | | | | 702.45 |
| 01/13/2020 | | Mercedes Benz Financial | | 652.62 |
| 01/16/2020 | | Jonas Chorum MSI | | 635.04 |
| 01/02/2020 | | | | 536.71 |
| 01/01/2020 | | U.S. Trustee Payment Center | | 325.00 |
| 01/28/2020 | | Carin Armstrong | | 300.00 |
| 01/01/2020 | | Key Bank | | 113.56 |
| 01/13/2020 | | DirecTV | | 101.99 |
| 01/16/2020 | | Ascentium Capital LLC. | | 38.20 |
| 01/02/2020 | | | | 6.84 |
| 01/31/2020 | | Key Bank | | 3.00 |

**Total Cash Disbursements** $ 43,550.53

*(1) Total for all accounts should agree with total cash disbursements listed on Form 2-B, page 1*          Rev. 01/01/2018

**DEBTOR(S):** CHEYENNE HOTEL INVESTMENTS, LLC    **CASE NO:** 19-15473-KHT

### Form 2-C
### COMPARATIVE BALANCE SHEET
**For Period Ended:** 1/31/2020

|  |  | Current Month |  | Petition Date (1) |
|---|---|---|---|---|
| ***ASSETS*** |  |  |  |  |
| Current Assets: |  |  |  |  |
| Cash (from Form 2-B, line 5) (Unrestricted) | $ | (33,062) | $ | (34,473) |
| Cash (from Form 2-B, line 5) (Restricted) |  | 872,146 |  | 317,753 |
| Accounts Receivable (from Form 2-E) |  | 241,974 |  | 96,150 |
| Receivable from Officers, Employees, Affiliates |  | - |  | - |
| Inventory |  |  |  | - |
| Other Current Assets :(List)   Prepaid Expenses |  | - |  | 126,029 |
| Total Current Assets | $ | 1,081,057 | $ | 505,459 |
| Fixed Assets: |  |  |  |  |
| Land | $ | 875,182 | $ | 875,182 |
| Building |  | 8,984,411 |  | 8,984,411 |
| Equipment, Furniture and Fixtures |  | 1,239,935 |  | 1,239,935 |
| Total Fixed Assets |  | 11,099,528 |  | 11,099,528 |
| Less:  Accumulated Depreciation | ( | 2,956,417 ) | ( | 2,953,114 ) |
| Net Fixed Assets | $ | 8,143,110 | $ | 8,146,414 |
| Other Assets (List):   Intangible |  | 2,908 |  | 4,494 |
| Rounding |  |  |  | 1 |
| **TOTAL ASSETS** | $ | 9,227,075 | $ | 8,656,367 |
| ***LIABILITIES*** |  |  |  |  |
| Post-petition Accounts Payable (from Form 2-E) | $ | 143,972 | $ | - |
| Post-petition Accrued Profesional Fees (from Form 2-E) |  | - |  | - |
| Post-petition Taxes Payable (from Form 2-E) |  | 54,668 |  | - |
| Other Post-petition Payable(List): Credit Cards |  | 2,314 |  | - |
| Due to Affiliates |  | 235,057 |  | - |
| Accrued Interest and Fees |  | 1,041,945 |  | - |
| Total Post Petition Liabilities | $ | 1,477,957 | $ | - |
| Pre Petition Liabilities: |  |  |  |  |
| Secured Debt |  | 6,892,894 |  | 6,910,523 |
| Priority Debt |  | - |  |  |
| Unsecured Debt |  | 129,788 |  | 129,788 |
| Total Pre Petition Liabilities | $ | 7,022,682 | $ | 7,040,312 |
| **TOTAL LIABILITIES** | $ | 8,500,639 | $ | 7,040,312 |
| ***OWNERS' EQUITY*** |  |  |  |  |
| Owner's/Stockholder's Equity | $ | 726,436 | $ | 1,556,780 |
| Retained Earnings - Prepetition |  | - |  | - |
| Retained Earnings - Post-petition |  | - |  | - |
| **TOTAL OWNERS' EQUITY** | $ | 726,436 | $ | 1,556,780 |
| **TOTAL LIABILITIES AND OWNERS' EQUITY** | $ | 9,227,075 | $ | 8,597,092 |

*(1) Petition date values are taken from the Debtor's balance sheet as of the petition date or are the values*
*listed on the Debtor's schedules.*

Rev. 01/01/2018

**DEBTOR(S):**   Cheyenne Hotel Investments, LLC          **CASE NO:**   19-15473-- KHT

## Form 2-D
## PROFIT AND LOSS STATEMENT
### For Period     1/1/2020   to     1/31/2020

|  | | Current Month | | Accumulated Total (1) |
|---|---|---:|---|---:|
| Gross Operating Revenue | $ | 30,102 | $ | 1,025,177 |
| Less:  Discounts, Returns and Allowances | ( | - ) | ( | - ) |
| **Net Operating Revenue** | $ | 30,102 | $ | 1,025,177 |
| Cost of Goods Sold | | - | | - |
| **Gross Profit** | $ | 30,102 | $ | 1,025,177 |
| Operating Expenses | | | | |
| Officer Compensation | $ | - | $ | - |
| Selling, General and Administrative | | 59,154 | | 714,793 |
| Rents and Leases | | 653 | | 4,569 |
| Depreciation, Depletion and Amortization | | 611 | | 4,889 |
| Other (list): | | - | | - |
| | | - | | - |
| Total Operating Expenses | $ | 60,418 | $ | 724,251 |
| **Operating Income (Loss)** | $ | (30,315) | $ | 300,926 |
| Non-Operating Income and Expenses | | | | |
| Other Non-Operating Expenses | $ | (3,355) | $ | (75,297) |
| Gains (Losses) on Sale of Assets | | - | | - |
| Interest Income | | 0 | | 0 |
| Interest Expense | | - | | (1,080,005) |
| Other Non-Operating Income | | 0 | | 311 |
| Net Non-Operating Income or (Expenses) | $ | (3,354) | $ | (1,154,991) |
| Reorganization Expenses | | | | |
| Legal and Professional Fees | $ | | $ | |
| Other Reorganization Expense | | 325 | | 1,625 |
| Total Reorganization Expenses | $ | 325 | $ | 1,625 |
| **Net Income (Loss) Before Income Taxes** | $ | (33,995) | $ | (855,690) |
| Federal and State Income Tax Expense (Benefit) | | - | | - |
| **NET INCOME (LOSS)** | $ | (33,995) | $ | (855,690) |

*(1)  Accumulated Totals include all revenue and expenses since the petition date.*

Rev. 01/01/2018

DEBTOR(S):          CHEYENNE HOTEL  INVESTMENTS LLC          CASE NO: 19-15473-KHT

**Form 2-E (Page 1 of 2)**
**SUPPORTING SCHEDULES**

For Period:  1/1/2020  to  1/31/2020

| Summary of Post-Petition Taxes | | | | |
|---|---|---|---|---|
| | 1 | 2 | 3 | 4 |
| Type of tax | Unpaid post-petition taxes from prior reporting month(1) | Post-petition taxes accrued this month (new obligations) | Post-petition tax payments made this reporting month | Unpaid post-petition taxes at end of reporting month (columns 1+2-3) |
| **Federal** | | | | |
| Employee income tax withheld | | | | |
| Employee FICA taxes withheld | | | | |
| Employer FICA taxes | | | | |
| Unemployment taxes | | | | |
| Other:_____ | | | | |
| **State** | | | | |
| Sales, use & excise taxes | 52,151 | 2,517 | | 54,668 |
| Unemployment taxes | | | | |
| Other:_____ | | | | |
| **Local** | | | | |
| Personal property taxes | | | | |
| Real property taxes | | | | |
| Other:_____ | | | | |
| | | | Total unpaid post-petition taxes | 54,668 |

*(1) For first report, the beginning balance in column 1 will be $0; thereafter, beginning balance will be ending balance from prior report.*

| Insurance Coverage Summary | | | | |
|---|---|---|---|---|
| Type of insurance | Insurance carrier | Coverage amount | Policy expiration date | Premium paid through date |
| Workers' compensation | Pinnacol Assurance | $1MM/$1MM/$1MM | 11/1/2020 | |
| General liability | Midwest Mutual | $1M/$2M | 1/1/2020 | |
| Property (fire, theft, etc.) | Midwest Mutual | 9,325,900bldg/1,573,000 | 1/1/2020 | |
| Vehicle | Midwest Mutual | 1,000,000 | 1/1/2020 | |
| Other (list): | Midwest Mutual | 9,000,000 umbrella | 1/1/2020 | |
| Other (list): | | | | |
| *If any policies were renewed or replaced during reporting period, attach new certificate of insurance.* | | | | |

Page 1 of 2
Rev. 01/01/2018

DEBTOR(S): CHEYENNE HOTEL INVESTMENTS LLC      CASE NO: 19-15473-KHT

**Form 2-E (Page 2 of 2)**
**SUPPORTING SCHEDULES**
For Period: _____ 1/1/2020 _____ to _____ 1/31/2020 _____

| Accounts Receivable Aging Summary (attach detailed aging report) | | | | | |
|---|---|---|---|---|---|
| | 30 days or less | 31 to 60 days | 61 to 90 days | Over 90 days | Total at month end |
| Pre-petition receivables | | | | | |
| Post-petition receivables | | | | | |
| Total | | | | | |

| Post-Petition Accounts Payable Aging Summary (attach detailed aging report) | | | | | |
|---|---|---|---|---|---|
| | 30 days or less | 31 to 60 days | 61 to 90 days | Over 90 days | Total at month end |
| Trade Payables | 13,918 | 15,797 | 2,096 | 112,161 | 143,972 |
| Sales Taxes | 2,517 | 1,108 | 4,419 | 46,622 | 54,667 |
| Credit Cards | | 579 | | 1,736 | 2,315 |
| Insider Payables | 17,540 | 6,243 | 34,961 | 176,314 | 235,058 |
| Accrued Interest & Fees | | 173,658 | 173,658 | 694,631 | 1,041,946 |
| Total | 33,975 | 22,040 | 37,057 | 288,475 | 1,477,957 |

| SCHEDULE OF PAYMENTS TO ATTORNEYS AND OTHER PROFESSIONALS | | | | | |
|---|---|---|---|---|---|
| | Month-end Retainer Balance | Current Month's Accrual | Paid in Current Month | Court Approval Date | Month-end Balance Due * |
| Debtor's Counsel | $          - | $     12,475.00 | $          - | | $     58,486.00 |
| Counsel for Unsecured | | | | | |
|   Creditors' Committee | | | $          - | | |
| Trustee's Counsel | | | | | |
| Accountant | $          - | | $          - | | $          - |
| Other: | | | $          - | | |
| Total | $          - | $     12,475.00 | $          - | | $     58,486.00 |

*Balance due to include fees and expenses incurred but not yet paid.

| SCHEDULE OF PAYMENTS AND TRANSFERS TO PRINCIPALS/EXECUTIVES** | | | |
|---|---|---|---|
| Payee Name | Position | Nature of Payment | Amount |
| TK Hotels | Affiliate | Operating Expenses | 4,670 |
| TRN Corp | Affiliate | Operating Expenses | 4,000 |
| TRN Corp | Affiliate | Operating Expenses | 5,866 |
| TRN Corp | Affiliate | Operating Expenses | 4,000 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**List payments and transfers of any kind and in any form made to or for the benefit of any proprietor, owner, partner, shareholder, officer, or director.

**DEBTOR(S):** CHEYENNE HOTEL INVESTMENTS LLC    **CASE NO:** 19-15473-KHT

**Form 2-F**
**QUARTERLY FEE SUMMARY \***
**For the Month Ended:** 1/31/2020

| Month | Year | | Cash Disbursements ** | Quarterly Fee Due | Check No. | Date Paid |
|---|---|---|---|---|---|---|
| January | 20 | $ | $43,551 | | | |
| February | | | $0 | | | |
| March | | | $0 | | | |
| TOTAL 1st Quarter | | $ | $43,551 $ | | | |
| April | | $ | $0 | | | |
| May | | | $0 | | | |
| June | | | $0 | | | |
| TOTAL 2nd Quarter | | $ | $0 $ | | | |
| July | 19 | $ | $276,148 | | | |
| August | 19 | | $52,884 | | | |
| September | 19 | | $80,611 | | | |
| TOTAL 3rd Quarter | | $ | $409,642.53 $ | | | |
| October | 19 | $ | $48,962.23 | | | |
| November | 19 | | $38,705.41 | | | |
| December | 19 | | $29,714.75 | | | |
| TOTAL 4th Quarter | | $ | $117,382.39 $ | | | |

**FEE SCHEDULE (as of JANUARY 1, 2018)**
*Subject to changes that may occur to 28 U.S.C. §1930(a)(6)*

| Quarterly Disbursements | Fee | Quarterly Disbursements | Fee |
|---|---|---|---|
| $0 to $14,999................... | $325 | $225,000 to $299,999................... | $1,950 |
| $15,000 to $74,999.......... | $650 | $300,000 to $999,999................... | $4,875 |
| $75,000 to $149,999........ | $975 | $1,000,000 or more***................ | 1% of quarterly |
| $150,000 to $224,999...... | $1,625 | | disbursements or |
| | | | $250,000, whichever is |
| | | | less (subject to change |
| | | | after 9/30/2018)*** |

\*   This summary is to reflect the current calendar year's information cumulative to the end of the reporting period

\*\*  Should agree with line 3, Form 2-B.  Disbursements are net of transfers to other debtor in possession bank accounts

\*\*\*  For disbursements in excess of $1,000,000, this amount is subject to annual adjustment. Please refer to
\*\*\*\*

*Failure to pay the quarterly fee is cause for conversion or dismissal of the chapter 11 case. [11 U.S.C. Sec. 1112(b)(10)]*
*In addition, unpaid fees are considered a debt owed to the United States and will be assessed interest under 31 U.S.C. §3717*

Rev. 01/01/2018

**DEBTOR:**   **CHEYENNE HOTEL  INVESTMENTS LLC**          **CASE NO:** 19-15473-KHT

Form 2-G
# NARRATIVE
**For Period Ending:** 1/31/2020

**Please provide a brief description of any significant business and legal actions taken by the debtor, its creditors, or the court during the reporting period, any unusual or non-recurring accounting transactions that are reported in the financial statements, and any significant changes in the financial condition of the debtor which have occurred susequent to the report date.**

Items in the Column "Petition Date" on Form 2-C are extracted from the Debtor's Schedules of Assets and Liabilities except as noted.   Note (1) is that the Prepetition Priority Debt is entered as -0-, solely because the amounts of the debts were unknown on the petition date.  The amounts shown on the MOR are based upon more recent information than was available on the Petition Date.

Attorney fees are disclosed, but not included in AP, because they are not yet approved for payment, and hence, not due.  Current account information for a lockbox account held by a third party as of the date of this Report.   Debtor believes that any changes in that acccount since the data reported herein is immaterial. Debtor's counsel is attempting to obtain current account statements.

c

Rev. 01/01/2018

Cheyenne Hotel Investments,
Case No. 19-15473-KHT

MOR 20200131 Supplement
Accounts Payable Aging

| Date | Num | Vendor | Due Date | Past Due | Amount | Balance |
|---|---|---|---|---|---|---|
| 02/19/2018 | 700345 | Co Dept of Labor & Employment | 03/06/2018 | 715 | 120.00 | 120.00 |
| 09/17/2018 | | Scott pool & Spa Service | 09/17/2018 | 520 | 782.68 | 782.68 |
| 10/03/2018 | 9166846221 | HD Supply | 10/03/2018 | 504 | 565.64 | 565.64 |
| 10/08/2018 | 9166979144 | HD Supply | 10/08/2018 | 499 | 978.65 | 978.65 |
| 10/10/2018 | 9167041049 | HD Supply | 10/10/2018 | 497 | 326.55 | 326.55 |
| 10/11/2018 | 106,108,110 | HD Supply | 10/11/2018 | 496 | 156.00 | 156.00 |
| 10/15/2018 | 259090023 | Sysco | 10/15/2018 | 492 | 92.16 | 92.16 |
| 10/18/2018 | 9167272714 | HD Supply | 10/18/2018 | 489 | 435.03 | 435.03 |
| 10/18/2018 | 9167296689 | HD Supply | 10/18/2018 | 489 | 355.28 | 355.28 |
| 10/23/2018 | 9167379808 | HD Supply | 10/23/2018 | 484 | 303.65 | 303.65 |
| 11/01/2018 | 5013796 | In The Swim | 11/01/2018 | 475 | 2,780.37 | 2,780.37 |
| 11/27/2018 | 259176866 | Sysco | 11/27/2018 | 449 | 1,042.65 | 1,042.65 |
| 11/29/2018 | | Sears Home Services | 11/29/2018 | 447 | 99.00 | 99.00 |
| 11/30/2018 | 289506 | Travel Click,Inc. | 11/30/2018 | 446 | 207.90 | 207.90 |
| 12/01/2018 | 259190193 | Sysco | 12/01/2018 | 445 | 1,215.82 | 1,215.82 |
| 12/04/2018 | 259193421 | Sysco | 12/04/2018 | 442 | 1,088.08 | 1,088.08 |
| 12/08/2018 | 259203642 | Sysco | 12/08/2018 | 438 | 1,281.50 | 1,281.50 |
| 12/11/2018 | 259206849 | Sysco | 12/11/2018 | 435 | 1,146.45 | 1,146.45 |
| 12/13/2018 | 16071186 | Uniguest | 12/13/2018 | 433 | 85.49 | 85.49 |
| 12/15/2018 | 259217258 | Sysco | 12/15/2018 | 431 | 1,360.30 | 1,360.30 |
| 12/18/2018 | 259220554 | Sysco | 12/18/2018 | 428 | 1,165.55 | 1,165.55 |
| 12/22/2018 | 259230309 | Sysco | 12/22/2018 | 424 | 1,104.63 | 1,104.63 |
| 12/26/2018 | 259233416 | Sysco | 12/26/2018 | 420 | 559.12 | 559.12 |
| 12/29/2018 | 259240623 | Sysco | 12/29/2018 | 417 | 584.32 | 584.32 |
| 01/01/2019 | 259246566 | Sysco | 01/01/2019 | 414 | 587.95 | 587.95 |
| 01/01/2019 | 9 | Otis Elevator Company | 01/31/2019 | 384 | 1,363.95 | 1,363.95 |
| 01/03/2019 | 914638182 | Insight Direct USA, Inc | 01/18/2019 | 397 | 875.62 | 875.62 |
| 01/08/2019 | 432338 | J.C. Schultz Enterprises, Inc. | 01/08/2019 | 407 | 201.78 | 201.78 |
| 01/09/2019 | tub rep | Miracle Method of Pueblo | 01/09/2019 | 406 | 2,050.00 | 2,050.00 |
| 01/15/2019 | 1459824204 | CenturyLink | 02/14/2019 | 370 | 1,861.66 | 521.70 |
| 01/16/2019 | 2701 | Commtrak | 01/16/2019 | 399 | 184.52 | 184.52 |
| 01/16/2019 | 1051109 | Plasticard-Locktech International | 01/16/2019 | 399 | 136.81 | 136.81 |
| 02/01/2019 | 1773 | Miracle Method of Pueblo | 02/01/2019 | 383 | 1,735.00 | 1,735.00 |
| 02/01/2019 | 801002400 | Tec-Exchange,Inc. | 02/01/2019 | 383 | 127.50 | 127.50 |
| 02/05/2019 | 1055829 | Plasticard-Locktech International | 02/05/2019 | 379 | 514.41 | 514.41 |
| 02/08/2019 | 180386605 | Orkin | 02/08/2019 | 376 | 106.50 | 106.50 |
| 02/19/2019 | N90789 | Harlan Graphic Arts Service, Inc. | 02/19/2019 | 365 | 155.42 | 155.42 |
| 02/20/2019 | 13761204003 | Swire Coca- Cola | 02/20/2019 | 364 | 98.91 | 98.91 |
| 02/20/2019 | | Cintas Fire | 03/22/2019 | 334 | 3,014.01 | 3,014.01 |
| 02/22/2019 | 17397 | RMS Sign Company | 02/22/2019 | 362 | 338.88 | 338.88 |
| 02/26/2019 | 6044 | Whistle Messaging Inc. | 02/26/2019 | 358 | 80.00 | 80.00 |
| 02/26/2019 | 98991631 | Superior Uniform Group | 03/28/2019 | 328 | 2,727.77 | 2,727.77 |
| 02/27/2019 | 13761204080 | Swire Coca- Cola | 02/27/2019 | 357 | 99.81 | 99.81 |
| 02/28/2019 | INV00309270 | Travel Click,Inc. | 02/28/2019 | 356 | 207.90 | 207.90 |
| 02/28/2019 | 14539753 | USA Today | 03/30/2019 | 326 | 195.00 | 195.00 |

Cheyenne Hotel Investments LLC

**1000 PB&T Checking - 6518, Period Ending 01/31/2020**

**RECONCILIATION REPORT**

Reconciled on: 02/19/2020

Reconciled by: Jessica Niles

Any changes made to transactions after this date aren't included in this report.

| Summary | USD |
|---|---|
| Statement beginning balance | 1,583.80 |
| Checks and payments cleared (9) | -10,106.07 |
| Deposits and other credits cleared (6) | 8,522.27 |
| Statement ending balance | 0.00 |
| | |
| Uncleared transactions as of 01/31/2020 | -54,576.14 |
| Register balance as of 01/31/2020 | -54,576.14 |
| Cleared transactions after 01/31/2020 | 0.00 |
| Uncleared transactions after 01/31/2020 | -9,434.90 |
| Register balance as of 02/19/2020 | -64,011.04 |

**Details**

Checks and payments cleared (9)

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 01/02/2020 | Expense | | TK Hotels | -4,670.42 |
| 01/02/2020 | Expense | | | -536.71 |
| 01/02/2020 | Expense | | | -6.84 |
| 01/06/2020 | Transfer | | | -2,500.00 |
| 01/08/2020 | Expense | | | -702.45 |
| 01/13/2020 | Expense | | DirecTV | -101.99 |
| 01/13/2020 | Expense | | Mercedes Benz Financial | -652.62 |
| 01/16/2020 | Expense | | Jonas Chorum MSI | -635.04 |
| 01/28/2020 | Check | | Carin Armstrong | -300.00 |

| Total | -10,106.07 |
|---|---|

Deposits and other credits cleared (6)

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 01/02/2020 | Deposit | | | 3,630.17 |
| 01/06/2020 | Deposit | | Samira Khan | 2,500.00 |
| 01/08/2020 | Deposit | | TK Hotels | 702.45 |
| 01/13/2020 | Deposit | | Cheyenne Hotels LLC | 1,000.00 |
| 01/16/2020 | Deposit | | TK Hotels | 389.65 |
| 01/28/2020 | Deposit | | TRN Corp | 300.00 |

| Total | 8,522.27 |
|---|---|

**Additional Information**

Uncleared checks and payments as of 01/31/2020

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 12/31/2017 | Journal | BegBal | | -100.00 |
| 02/13/2018 | Bill Payment | 1417 | Tariq Javed | -782.83 |
| 05/31/2018 | Bill Payment | 1492 | D Rock Landscaping | -280.00 |
| 06/20/2018 | Bill Payment | COSTax0720 | A-B Sales of Southern Colorado | -350.60 |
| 07/06/2018 | Bill Payment | 1514 | Joana Cruz | -200.00 |
| 07/30/2018 | Bill Payment | COSTax0721 | A-B Sales of Southern Colorado | -210.00 |
| 09/28/2018 | Bill Payment | 1584 | Cintas Fire | -750.64 |
| 09/28/2018 | Bill Payment | 1591 | Pikes Peak Regional Building … | -257.45 |
| 09/28/2018 | Bill Payment | 1587 | A-B Sales of Southern Colorado | -96.75 |
| 12/24/2018 | Bill Payment | 1624 | Hotelsigns.com | -488.91 |

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 01/15/2019 | Bill Payment | ACH | Colorado Springs Airport | -25.00 |
| 03/11/2019 | Bill Payment | 1676 | Carin Armstrong | -300.00 |
| 04/30/2019 | Bill Payment | 1704 | Golden Malted | -920.50 |
| 05/08/2019 | Bill Payment | 1702 | ASSA ABLOY Entrance Syste… | -459.57 |
| 05/31/2019 | Bill Payment | 1705 | CenturyLink | -1,408.45 |
| 06/05/2019 | Bill Payment | 1702 | Colorado Springs Utilities | -5,612.61 |
| 06/19/2019 | Bill Payment | 1700 | HD Supply | -6,170.44 |
| 06/22/2019 | Bill Payment | 1716 | Ecolab | -1,067.59 |
| 07/30/2019 | Expense | | Colorado Springs Utilities | -5.85 |
| 10/01/2019 | Bill Payment | COSTax0729 | AT&T WiFi Services | -749.00 |
| 10/01/2019 | Bill Payment | COSTax0731 | Colorado Springs Utilities | -8,431.71 |
| 10/03/2019 | Bill Payment | COSTax0727 | Cintas Fire | -5,351.40 |
| 10/31/2019 | Bill Payment | COSTax0728 | Ascentium Capital LLC. | -3,384.75 |
| 10/31/2019 | Bill Payment | COSTax0726 | USA Today | -603.64 |
| 01/06/2020 | Expense | key bank | GFL Environmental | -702.45 |
| 01/22/2020 | Expense | key bank | Farmers Brothers CO | -866.00 |
| 01/31/2020 | Expense | key bank | Colorado Springs Utilities | -10,000.00 |
| **Total** | | | | **-54,576.14** |

Uncleared deposits and other credits as of 01/31/2020

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 04/17/2018 | Bill Payment | | Royal Media Network, Inc. | 0.00 |
| **Total** | | | | **0.00** |

Uncleared checks and payments after 01/31/2020

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 02/04/2020 | Bill Payment | paid from key bank | Ascentium Capital LLC. | -1,642.52 |
| 02/06/2020 | Expense | key bank | Colorado Springs Utilities | -6,000.00 |
| 02/11/2020 | Expense | key bank | AT&T WiFi Services | -2,445.00 |
| **Total** | | | | **-10,087.52** |

Uncleared deposits and other credits after 01/31/2020

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 02/11/2020 | Deposit | | TK Hotels | 652.62 |
| **Total** | | | | **652.62** |

Cheyenne Hotel Investments LLC

**1000 PB&T Checking - 6518, Period Ending 01/31/2020**

**RECONCILIATION REPORT**

Reconciled on: 02/19/2020

Reconciled by: Jessica Niles

Any changes made to transactions after this date aren't included in this report.

| Summary | USD |
|---|---|
| Statement beginning balance | 1,583.80 |
| Checks and payments cleared (9) | -10,106.07 |
| Deposits and other credits cleared (6) | 8,522.27 |
| Statement ending balance | 0.00 |
| | |
| Uncleared transactions as of 01/31/2020 | -54,576.14 |
| Register balance as of 01/31/2020 | -54,576.14 |
| Cleared transactions after 01/31/2020 | 0.00 |
| Uncleared transactions after 01/31/2020 | -9,434.90 |
| Register balance as of 02/19/2020 | -64,011.04 |

**Details**

Checks and payments cleared (9)

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 01/02/2020 | Expense | | TK Hotels | -4,670.42 |
| 01/02/2020 | Expense | | | -536.71 |
| 01/02/2020 | Expense | | | -6.84 |
| 01/06/2020 | Transfer | | | -2,500.00 |
| 01/08/2020 | Expense | | | -702.45 |
| 01/13/2020 | Expense | | DirecTV | -101.99 |
| 01/13/2020 | Expense | | Mercedes Benz Financial | -652.62 |
| 01/16/2020 | Expense | | Jonas Chorum MSI | -635.04 |
| 01/28/2020 | Check | | Carin Armstrong | -300.00 |

| Total | -10,106.07 |
|---|---|

Deposits and other credits cleared (6)

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 01/02/2020 | Deposit | | | 3,630.17 |
| 01/06/2020 | Deposit | | Samira Khan | 2,500.00 |
| 01/08/2020 | Deposit | | TK Hotels | 702.45 |
| 01/13/2020 | Deposit | | Cheyenne Hotels LLC | 1,000.00 |
| 01/16/2020 | Deposit | | TK Hotels | 389.65 |
| 01/28/2020 | Deposit | | TRN Corp | 300.00 |

| Total | 8,522.27 |
|---|---|

**Additional Information**

Uncleared checks and payments as of 01/31/2020

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 12/31/2017 | Journal | BegBal | | -100.00 |
| 02/13/2018 | Bill Payment | 1417 | Tariq Javed | -782.83 |
| 05/31/2018 | Bill Payment | 1492 | D Rock Landscaping | -280.00 |
| 06/20/2018 | Bill Payment | COSTax0720 | A-B Sales of Southern Colorado | -350.60 |
| 07/06/2018 | Bill Payment | 1514 | Joana Cruz | -200.00 |
| 07/30/2018 | Bill Payment | COSTax0721 | A-B Sales of Southern Colorado | -210.00 |
| 09/28/2018 | Bill Payment | 1584 | Cintas Fire | -750.64 |
| 09/28/2018 | Bill Payment | 1591 | Pikes Peak Regional Building … | -257.45 |
| 09/28/2018 | Bill Payment | 1587 | A-B Sales of Southern Colorado | -96.75 |
| 12/24/2018 | Bill Payment | 1624 | Hotelsigns.com | -488.91 |

1/2

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 01/15/2019 | Bill Payment | ACH | Colorado Springs Airport | -25.00 |
| 03/11/2019 | Bill Payment | 1676 | Carin Armstrong | -300.00 |
| 04/30/2019 | Bill Payment | 1704 | Golden Malted | -920.50 |
| 05/08/2019 | Bill Payment | 1702 | ASSA ABLOY Entrance Syste… | -459.57 |
| 05/31/2019 | Bill Payment | 1705 | CenturyLink | -1,408.45 |
| 06/05/2019 | Bill Payment | 1702 | Colorado Springs Utilities | -5,612.61 |
| 06/19/2019 | Bill Payment | 1700 | HD Supply | -6,170.44 |
| 06/22/2019 | Bill Payment | 1716 | Ecolab | -1,067.59 |
| 07/30/2019 | Expense | | Colorado Springs Utilities | -5.85 |
| 10/01/2019 | Bill Payment | COSTax0729 | AT&T WiFi Services | -749.00 |
| 10/01/2019 | Bill Payment | COSTax0731 | Colorado Springs Utilities | -8,431.71 |
| 10/03/2019 | Bill Payment | COSTax0727 | Cintas Fire | -5,351.40 |
| 10/31/2019 | Bill Payment | COSTax0728 | Ascentium Capital LLC. | -3,384.75 |
| 10/31/2019 | Bill Payment | COSTax0726 | USA Today | -603.64 |
| 01/06/2020 | Expense | key bank | GFL Environmental | -702.45 |
| 01/22/2020 | Expense | key bank | Farmers Brothers CO | -6,000.00 |
| 01/31/2020 | Expense | key bank | Colorado Springs Utilities | -10,000.00 |
| Total | | | | -54,576.14 |

Uncleared deposits and other credits as of 01/31/2020

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 04/17/2018 | Bill Payment | | Royal Media Network, Inc. | 0.00 |
| Total | | | | 0.00 |

Uncleared checks and payments after 01/31/2020

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 02/04/2020 | Bill Payment | paid from key bank | Ascentium Capital LLC. | -1,642.52 |
| 02/06/2020 | Expense | key bank | Colorado Springs Utilities | -6,000.00 |
| 02/11/2020 | Expense | key bank | AT&T WiFi Services | -2,445.00 |
| Total | | | | -10,087.52 |

Uncleared deposits and other credits after 01/31/2020

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 02/11/2020 | Deposit | | TK Hotels | 652.62 |
| Total | | | | 652.62 |



**PB&T BANK**
Local People Making Local Decisions Since 1889

PB&T Bank
301 W 5th St
Pueblo, CO 81003
(719) 545-1834
(888)728-3550

# STATEMENT OF ACCOUNT

| ACCOUNT NO. | STATEMENT PERIOD | PAGE |
|---|---|---|
| XXXXX6518 | 01/01/2020 - 01/31/2020 | 1 of 2 |

| | | |
|---|---|---|
| **PREVIOUS BALANCE** | | 1,583.80 |
| **DEPOSITS/CREDITS** | (6) | 8,522.27 |
| **CHECKS/DEBITS** | (9) | 10,106.07 |
| **ENDING BALANCE** | | 0.00 |
| **DAYS IN STATEMENT PERIOD** | | 31 |

CHEYENNE HOTEL INVESTMENTS LLC
SAMIRA A KHAN, AUTH SIGN
DBA HOMEWOOD SUITES COLORADO SPGS AIRPOR
225 E CHEYENNE MTN BLV STE 210
COLORADO SPRINGS CO 80906

It's time to make sure your information is accurate and up to date for tax reporting purposes. Please call or visit any branch to review your address, phone number, and your tax identification number for accuracy.

| TRANSACTION DATE | TRANSACTION TYPE | DESCRIPTION OF TRANSACTION | AMOUNT |
|---|---|---|---|
| **Free Business Checking** | | | |

### DEPOSITS / OTHER CREDITS

| TRANSACTION DATE | TRANSACTION TYPE | DESCRIPTION OF TRANSACTION | AMOUNT |
|---|---|---|---|
| 01/02/2020 | ACH Deposit | 8035484677 MERCHANT SERVICE MERCH DEP | 3,630.17 |
| 01/06/2020 | Online Transfer | INTERNET XFR FRM Classic 50 XXXXXX3271 Neg b | 2,500.00 |
| 01/08/2020 | Transfer Deposit | From DDA  XXXXXX5954 | 702.45 |
| 01/13/2020 | Online Transfer | INTERNET XFR FRM Free Sm Bu XXXXXX9127 Neg B | 1,000.00 |
| 01/16/2020 | Transfer Deposit | From DDA  XXXXXX5954 | 389.65 |
| 01/28/2020 | Online Transfer | INTERNET XFR FRM Free Sm Bu XXXXXX7452 neg b | 300.00 |

### CHECK RECAP

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 1676 | 01/28 | 300.00 | | | | | | |

* SKIP IN CHECK NUMBER SEQUENCE

### WITHDRAWALS / OTHER DEBITS

| TRANSACTION DATE | TRANSACTION TYPE | DESCRIPTION OF TRANSACTION | AMOUNT |
|---|---|---|---|
| 01/02/2020 | Transfer Withdrawal | To  DDA  XXXXXX5954 | 4,670.42 |
| 01/02/2020 | ACH Payment | 8079169911 MERCHANT SERVICE MERCH FEE | 6.84 |
| 01/02/2020 | ACH Payment | 8035484677 MERCHANT SERVICE MERCH FEE | 536.71 |
| 01/06/2020 | ACH Payment | ***********3519 CARDMEMBER SERV ELECT PYMT | 2,500.00 |
| 01/08/2020 | ACH Payment | GFL ENV. FIRSTECH 800-800-1598 | 702.45 |
| 01/13/2020 | ACH Payment | XXXXXXXXX DIRECTV Payment | 101.99 |
| 01/13/2020 | ACH Payment | 5001191042 MBFS.COM Auto Pay | 652.62 |
| 01/16/2020 | ACH Payment | 61226087 JonasChorumMSI   PURCHASE | 635.04 |

### DAILY ENDING BALANCE

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 01/01 | 1,583.80 | 01/08 | 0.00 | 01/28 | 0.00 |
| 01/02 | 0.00 | 01/13 | 245.39 | | |
| 01/06 | 0.00 | 01/16 | 0.00 | | |

| | Total for this Period | Total Year to Date |
|---|---|---|
| Total overdraft fees | 0.00 | 0.00 |
| Total returned item fees | 0.00 | 0.00 |

**PUEBLO BANK AND TRUST**

| ACCOUNT NO. | STATEMENT PERIOD | PAGE |
|---|---|---|
| XXXXX6518 | 01/01/2020 - 01/31/2020 | 2 of 2 |

**IMPORTANT DISCLOSURES TO OUR CONSUMER CUSTOMERS**
**In Case of Errors or Questions About Your Checking or Savings Electronic Transfers**
If you think your statement or receipt is wrong or if you need more information about a transfer listed on your statement or receipt, we must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared. Telephone us at one of the numbers listed or write us at The Pueblo Bank and Trust Company, P.O. Box 639, Pueblo, CO 81002.

- Tell us your name and account number.
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will tell you the results of our investigation within 10 business days and will correct any error promptly. If we need more time, we may take up to 45 days to investigate your complaint or question. In that case, we will provisionally credit your account within 10 business days for the amount you think is in error so that you will have the use of money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not re-credit your account. If we decide there was no error, we will send you a written explanation within 3 business days after we finish our investigation. You may ask for copies of the documents that we used in our investigation. For transfers initiated outside the United States or transfers resulting from point of sale debit card transactions, the time period for provisional credit is 10 business days and the time to resolve the investigation is 90 days.

**CONSUMER BILLING RIGHTS SUMMARY**
**In Case of Errors or Questions About Your Line of Credit Statement**
If you think your statement is wrong, or if you need more information about a transaction on your statement, write us on a separate sheet at P.O Box 639, Pueblo, CO 81002 as soon as possible. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Date the transaction occurred.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about. You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your statement that are not in question. While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.

**Special Rule for Credit Card Purchases (This applies when you have a check card and a line of credit)**
If you have a problem with the quality of goods or services that you purchased with a credit card and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. You have this protection only when the purchase price was more than $50 and the purchase was made in your home state or within 100 miles of your mailing address. (If we own or operate the merchant or if we mailed you the advertisement for the property or services, all purchases are covered regardless of amount or location of purchase.)

**RESERVE LINE OF CREDIT**
We figure the FINANCE CHARGE on your account by applying the daily periodic rate to the "average daily balance" of your account (including current transactions) and multiply by the number of days in the statement cycle. To get the "average daily balance" we take the beginning balance of your account each day, add any new advances, and subtract any payments or credits. This gives us the daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. The FINANCE CHARGE begins from the date of each advance.

**IMPORTANT DISCLOSURES TO OUR BUSINESS CUSTOMERS**
Errors related to any transaction on a business account will be governed by any agreement between us and/or all applicable rules and regulations governing such transactions, including the rules of the National Automated Clearing House Association (NACHA Rules) as may be amended from time to time. If you think this statement is wrong, please telephone us at the number listed on the front of this statement immediately.

rev. 4/03

**Cheyenne Hotel Investments, LLC**                    Chapter 11 Case No.  19-15973
**Supplement to MOR**                                   Insider Accounts Payable

| DATE | ENTITY NAME | Memo | AMOUNT | CH | TRN | TK | SK |
|------|-------------|------|--------|-----|------|-----|-----|
| 06/27/2019 | Cheyenne Hotels LLC | | 8,000.00 $ | 8,000.00 | | | |
| 06/28/2019 | Cheyenne Hotels LLC | | 6,000.00 $ | 6,000.00 | | | |
| 06/30/2019 | TRN Corp | Accrued Fees | 18,679.30 | | 18,679.30 | | |
| 07/01/2019 | TK Hotels | | 500.00 | | | 500.00 | |
| 07/01/2019 | Samira Khan | | -30,000.00 | | | | -30,000.00 |
| 07/05/2019 | TRN Corp | | -12,000.00 | | -12,000.00 | | |
| 07/05/2019 | TRN Corp | Accrued Fees | 24,084.24 | | 24,084.24 | | |
| 07/10/2019 | TRN Corp | | -2,898.00 | | -2,898.00 | | |
| 07/12/2019 | Us Bank Home Mortgage | | -1,988.83 | | | | -1,988.83 |
| 07/12/2019 | Us Bank Home Mortgage | | -1,931.61 | | | | -1,931.61 |
| 07/19/2019 | TRN Corp | | -21,600.00 | | -21,600.00 | | |
| 07/19/2019 | TRN Corp | Accrued Fees | 21,614.60 | | 21,614.60 | | |
| 07/22/2019 | TK Hotels | | -1,219.82 | | | -1,219.82 | |
| 07/22/2019 | TK Hotels | | 5,000.00 | | | 5,000.00 | |
| 07/23/2019 | TK Hotels | Accrued Fees | 3,883.91 | | | 3,883.91 | |
| 07/23/2019 | Cheyenne Hotels LLC | | 11,000.00 $ | 11,000.00 | | | |
| 07/31/2019 | TRN Corp | Accrued Fees | 14,798.81 | | 14,798.81 | | |
| 07/31/2019 | Ending Balance | | 41,922.60 $ | 25,000.00 | 42,678.95 | 8,164.09 | -33,920.44 |
| | | | | | | | |
| 08/01/2019 | TRN Corp | | -22,000.00 | | -22,000.00 | | |
| 08/02/2019 | TRN Corp | Accrued Fees | 21,952.71 | | 21,952.71 | | |
| 08/05/2019 | Cheyenne Hotels LLC | | 1,862.00 $ | 1,862.00 | | | |
| 08/12/2019 | TK Hotels | | 140.73 | | | 140.73 | |
| 08/13/2019 | Samira Khan | | 2,000.00 | | | | 2,000.00 |
| 08/14/2019 | TK Hotels | | 300.00 | | | 300.00 | |
| 08/14/2019 | Cheyenne Hotels LLC | | 400.00 $ | 400.00 | | | |
| 08/16/2019 | TRN Corp | Accrued Fees | 21,463.26 | | 21,463.26 | | |
| 08/19/2019 | TK Hotels | | 400.00 | | | 400.00 | |
| 08/20/2019 | Samira Khan | | 2,000.00 | | | | 2,000.00 |
| 08/26/2019 | TK Hotels | | 80.00 | | | 80.00 | |

| Date | Entity | Type | | | | | |
|------|--------|------|---|---|---|---|---|
| 08/27/2019 | TK Hotels | | 1,030.00 | | | 1,030.00 | |
| 08/27/2019 | Samira Khan | | 11,000.00 | | | | 11,000.00 |
| 08/30/2019 | TRN Corp | Accrued Fees | 17,983.57 | | 17,983.57 | | |
| 08/31/2019 | TRN Corp | Accrued Fees | 11,458.80 | | 11,458.80 | | |
| 08/31/2019 | Ending Balance (Month) | | 70,071.07 $ | 2,262.00 | 50,858.34 | 1,950.73 | 15,000.00 |
| 08/31/2019 | Ending Balance (Cumulative) | | 111,993.67 $ | 27,262.00 | 93,537.29 | 10,114.82 | -18,920.44 |
| | | | | | | | |
| 09/04/2019 | Cheyenne Hotels LLC | | 705.00 $ | 705.00 | | | |
| 09/05/2019 | TRN Corp | | -17,985.00 | | -17,985.00 | | |
| 09/12/2019 | TRN Corp | | -10,000.00 | | -10,000.00 | | |
| 09/13/2019 | TRN Corp | Accrued Fees | 15,882.26 | | 15,882.26 | | |
| 09/17/2019 | Cheyenne Hotels LLC | | 3,000.00 $ | 3,000.00 | | | |
| 09/19/2019 | TK Hotels | | 923.90 | | | 923.90 | |
| 09/05/2019 | Cheyenne Hotels LLC | | -2,500.00 $ | (2,500.00) | | | |
| 09/20/2019 | Cheyenne Hotels LLC | | 600.00 $ | 600.00 | | | |
| 09/20/2019 | Cheyenne Hotels LLC | | 15,000.00 $ | 15,000.00 | | | |
| 09/23/2019 | TK Hotels | | 3,000.00 | | | 3,000.00 | |
| 09/24/2019 | TK Hotels | | 600.00 | | | 600.00 | |
| 09/27/2019 | TRN Corp | Accrued Fees | 14,274.67 | | 14,274.67 | | |
| 09/30/2019 | TK Hotels | | 11,368.71 | | | 11,368.71 | |
| 09/30/2019 | TRN Corp | Accrued Fees | 10,529.50 | | 10,529.50 | | |
| 09/30/2019 | Ending Balance (Month) | | 45,399.04 $ | 16,805.00 | 12,701.43 | 15,892.61 | 0.00 |
| 09/30/2019 | Ending Balance (Cumulative) | | 157,392.71 $ | 44,067.00 | 106,238.72 | 26,007.43 | -18,920.44 |
| | | | | | | | |
| 10/01/2019 | TK Hotels | | 1,500.40 | | | 1,500.40 | |
| 10/02/2019 | TK Hotels | | 348.75 | | | 348.75 | |
| 10/02/2019 | Cheyenne Hotels LLC | | 400.00 $ | 400.00 | | | |
| 10/04/2019 | Cheyenne Hotels LLC | | 100.00 $ | 100.00 | | | |
| 10/08/2019 | Cheyenne Hotels LLC | | 1,100.00 $ | 1,100.00 | | | |
| 10/11/2019 | Cheyenne Hotels LLC | | 980.00 $ | 980.00 | | | |
| 10/11/2019 | TRN Corp | Accrued Fees | 10,634.02 | | 10,634.02 | | |
| 10/15/2019 | Samira Khan | | 7,000.00 | | | | 7,000.00 |
| 10/23/2019 | Samira Khan | | 9,000.00 | | | | 9,000.00 |
| 10/23/2019 | Samira Khan | | 2,000.00 | | | | 2,000.00 |

| Date | Name | Type | Amount | | | | |
|------|------|------|--------|--|--|--|--|
| 10/25/2019 | TRN Corp | Accrued Fees | 10,396.09 | | 10,396.09 | | |
| 10/25/2019 | Samira Khan | | 700.00 | | | | 700.00 |
| 10/31/2019 | TRN Corp | Accrued Fees | 9,501.79 | | 9,501.79 | | |
| 10/31/2019 | Ending Balance (Month) | | 53,661.05 | $ 2,580.00 | 30,531.90 | 1,849.15 | 18,700.00 |
| 10/31/2019 | Ending Balance (Cumulative) | | 211,053.76 | $ 46,647.00 | 136,770.62 | 27,856.58 | -220.44 |
| | | | | | | | |
| 11/04/2019 | Samira Khan | | 1,000.00 | | | | 1,000.00 |
| 11/05/2019 | Samira Khan | | 100.00 | | | | 100.00 |
| 11/08/2019 | TRN Corp | Accrued Fees | 9,070.41 | | 9,070.41 | | |
| 11/12/2019 | Samira Khan | | 700.00 | | | | 700.00 |
| 11/22/2019 | TRN Corp | Accrued Fees | 8,624.40 | | 8,624.40 | | |
| 11/25/2019 | TRN Corp | | -7,000.00 | | -7,000.00 | | |
| 11/27/2019 | Cheyenne Hotels LLC | | 1,300.00 | $ 1,300.00 | | | |
| 11/27/2019 | | | -12,000.00 | | | | -12,000.00 |
| 11/29/2019 | TRN Corp | | -5,000.00 | | -5,000.00 | | |
| 11/30/2019 | TRN Corp | Accrued Fees | 4,026.60 | | 4,026.60 | | |
| 11/30/2019 | Ending Balance (Month) | | 821.41 | $ 1,300.00 | 9,721.41 | 0.00 | -10,200.00 |
| 11/30/2019 | Ending Balance (Cumulative) | | 211,875.17 | $ 47,947.00 | 146,492.03 | 27,856.58 | -10,420.44 |
| | | | | | | | |
| 12/02/2019 | TRN Corp | | -1,000.00 | | -1,000.00 | | |
| 12/03/2019 | TRN Corp | | -1,000.00 | | -1,000.00 | | |
| 12/04/2019 | TRN Corp | | -1,000.00 | | -1,000.00 | | |
| 12/04/2019 | TRN Corp | | -1,000.00 | | -1,000.00 | | |
| 12/06/2019 | TRN Corp | | -5,000.00 | | -5,000.00 | | |
| 12/06/2019 | TRN Corp | Accrued Fees | 7,265.04 | | 7,265.04 | | |
| 12/17/2019 | TK Hotels | | -3,000.00 | | | -3,000.00 | |
| 12/20/2019 | TRN Corp | Accrued Fees | 7,310.57 | | 7,310.57 | | |
| 12/23/2019 | TRN Corp | | -3,800.00 | | -3,800.00 | | |
| 12/24/2019 | TRN Corp | | -1,000.00 | | -1,000.00 | | |
| 12/26/2019 | TRN Corp | | -1,000.00 | | -1,000.00 | | |
| 12/27/2019 | TRN Corp | | -4,000.00 | | -4,000.00 | | |
| 12/31/2019 | TRN Corp | Accrued Fees | 2,946.13 | | 2,946.13 | | |
| 12/31/2019 | TRN Corp | | -500.00 | | -500.00 | | |
| 12/31/2019 | Ending Balance (Month) | | -4,778.26 | $ - | -1,778.26 | -3,000.00 | 0.00 |

| Date | Description | | | | | |
|---|---|---:|---|---:|---:|---:|---:|
| 12/31/2019 | Ending Balance (Cumulative) | 207,096.91 | $ | 47,947.00 | 144,713.77 | 24,856.58 | -10,420.44 |
| | | | | | | | |
| 01/13/2020 | Cheyenne Hotels LLC | 1,000.00 | $ | 1,000.00 | | | |
| 01/02/2020 | TK Hotels | -4,670.42 | | | | -4,670.42 | |
| 01/08/2020 | TK Hotels | 702.45 | | | | 702.45 | |
| 01/16/2020 | TK Hotels | 389.65 | | | | 389.65 | |
| 01/28/2020 | TK Hotels | 5,000.00 | | | | 5,000.00 | |
| 01/21/2020 | TRN Corp | -4,000.00 | | | -4,000.00 | | |
| 01/23/2020 | TRN Corp | -5,866.00 | | | -5,866.00 | | |
| 01/28/2020 | TRN Corp | 300.00 | | | 300.00 | | |
| 01/31/2020 | TRN Corp | -4,000.00 | | | -4,000.00 | | |
| 01/03/2020 | TRN Corp | 7,843.04 | | | 7,843.04 | | |
| 01/17/2020 | TRN Corp | 8,291.00 | | | 8,291.00 | | |
| 01/31/2020 | TRN Corp | 9,195.80 | | | 9,195.80 | | |
| 01/31/2020 | TRN Corp | 3,354.61 | | | 3,354.61 | | |
| 01/01/2020 | Samira Khan | 250.00 | | | | | 250.00 |
| 01/06/2020 | Samira Khan | 2,500.00 | | | | | 2,500.00 |
| 01/31/2020 | Ending Balance (Month) | 20,290.13 | $ | 1,000.00 | 15,118.45 | 1,421.68 | 2,750.00 |
| 01/31/2020 | Ending Balance (Cumulative) | 227,387.04 | $ | 48,947.00 | 159,832.22 | 26,278.26 | -7,670.44 |

KeyBank
P.O. Box 93885
Cleveland, OH 44101-5885

**Business Banking Statement**
**January 31, 2020**
page 1 of 3

760181003277

1          T   18 00000 R EM T1
CHEYENNE HOTEL INVESTMENTS, LLC
SAMIRA A KHAN TRUSTEE
CASE #19-15473-KHT
225 E CHEYENNE MOUNTAIN BLVD
COLORADO SPRINGS CO 80906-3700

*Questions or comments?*
Call our Key Business Resource Center
1-888-KEY4BIZ (1-888-539-4249)

---

*Enroll in Online Banking today at Key.com.*
*Access your available accounts, transfer funds and view your transactions right from your PC.*

---

**KeyBank Basic Business Checking    760181003277**

CHEYENNE HOTEL INVESTMENTS, LLC
SAMIRA A KHAN TRUSTEE
CASE #19-15473-KHT

| | |
|---|---:|
| Beginning balance 12-31-19 | $136.44 |
| 8 Additions | +26,022.01 |
| 5 Subtractions | -25,534.45 |
| Net fees and charges | -3.00 |
| **Ending balance 1-31-20** | **$621.00** |

## Additions

| Deposits | Date | Serial # | Source | |
|---|---|---|---|---:|
| | 1-6 | | Direct Deposit,    Merchant Servicemerch Dep | $1,648.37 |
| | 1-13 | | Direct Deposit,    Merchant Servicemerch Dep | 2,964.26 |
| | 1-16 | | Direct Deposit,    Merchant Servicemerch Dep | 1,139.63 |
| | 1-22 | | Direct Deposit,    Merchant Servicemerch Dep | 5,845.94 |
| | 1-27 | | Direct Deposit,    Merchant Servicemerch Dep | 2,702.61 |
| | 1-28 | | Deposit   Branch 0018 Colorado | 5,000.00 |
| | 1-29 | | Direct Deposit,    Merchant Servicemerch Dep | 5,902.96 |
| | 1-30 | | Direct Deposit,    Merchant Servicemerch Dep | 818.24 |
| | | | **Total additions** | **$26,022.01** |

## Subtractions

Paper Checks          * check missing from sequence

| Check | Date | Amount |
|---|---|---|
| 104 | 1-29 | $10,000.00 |

**Paper Checks Paid**          **$10,000.00**

760181003277 - 00618
5816

**Business Banking Statement**
**January 31, 2020**
**page 2 of 3**

760181003277

| Withdrawals | Date | Serial # | Location | |
|---|---|---|---|---|
| | 1-16 | | Direct Withdrawal, Ascentiumcapitalleasechg | $1,668.45 |
| | 1-21 | | Withdrawal Branch 0018 Colorado | 4,000.00 |
| | 1-23 | | Withdrawal Branch 0018 Colorado | 5,866.00 |
| | 1-31 | | Withdrawal Branch 0018 Colorado | 4,000.00 |
| | | | **Total subtractions** | **$25,534.45** |

| Fees and charges | Date | | Quantity | Unit Charge | |
|---|---|---|---|---|---|
| | 1-31-20 | Paper Statement Fee | 1 | 3.00 | -$3.00 |
| | | **Fees and charges   assessed this period** | | | **-$3.00** |

760181003277 - 00618
5816

## CUSTOMER ACCOUNT DISCLOSURES

The following disclosures apply only to accounts covered by the Federal Truth-in-Lending Act or the Federal Electronic Funds Transfer Act, as amended, or similar state laws.

**IN CASE OF ERROR OR QUESTIONS ABOUT YOUR ELECTRONIC TRANSFERS:**

Call us at the phone number indicated on the first page of this statement, OR write us at the address listed below*, as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than sixty (60) days after we sent you the FIRST statement on which the problem or error appeared.

* KeyBank
Customer Disputes
NY-31-17-0128
17 Corporate Woods Blvd
Albany, NY 12211

- Tell us your name and Account number;
- Describe the error or transfer that you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information;
- Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within ten (10) business days.

We will investigate your complaint and will correct any error promptly. If we take more than ten (10) business days to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

**COMMON ELECTRONIC TRANSACTION DESCRIPTIONS:**

XFER TO SAV     - Transfer to Savings Account
XFER FROM SAV   - Transfer from Savings Account
XFER TO CKG     - Transfer to Checking Account
XFER FROM CKG   - Transfer from Checking Account
PMT TO CR CARD  - Payment to Credit Card
ADV CR CARD     - Advance from Credit Card

**Preauthorized Credits:** If you have arranged to have direct deposits made to your Account at least once every sixty (60) days from the same person or company, you can call us at the number indicated on the reverse side to find out whether or not the deposit has been made.

**IMPORTANT LINE OF CREDIT INFORMATION**

**What To Do If You Think You Find A Mistake on Your Statement:** If you think there is an error on your statement, write us at: KeyBank N.A, P.O Box 93885, Cleveland, OH 44101- 4825.

In your letter, give us the following information:

- Account Information : Your name and account number.
- Dollar Amount : The dollar amount of the suspected error.
- Description of the Problem : If you think there is an error on your bill, describe what you believe is wrong and why you believe it was a mistake.

You must contact us within 60 days after the error appeared on your statement. You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or any interest or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

**Explanation of Finance Charge:** Your Finance Charge attributable to interest (hereinafter referred to as interest) is computed using the Average Daily Balance method.

**Average Daily Balance method (Balance Subject to Interest Rate):** Your interest is computed on all purchases and cash advances (collectively "advances") from the date each advance is posted until we receive payment in full (there is no grace period). We figure the interest on your line of credit by multiplying the daily periodic rate by the "Average Daily Balance" of your line of credit (including current transactions) and multiplying by the number of days in the billing cycle. To get the Average Daily Balance we take the beginning balance of your line of credit each day, add any new advances or debits, and subtract any payments and credits, any non-financed fees and unpaid interest. This gives us the daily balance. Then we add up all of your daily balances in the billing cycle and divide this total by the number of days in the billing cycle to get your Average Daily Balance.

**CREDIT INFORMATION:** If you believe we have reported inaccurate information about your account to a credit reporting agency, you may contact the credit reporting agency or write to us at:

Key Credit Research Department
P.O. Box 94518
Cleveland, Ohio 44101-4518

Please include your account number, a copy of your credit report reflecting the inaccurate information, name, address, city, state, and zip code, and an explanation of why you believe the information is inaccurate.

760181003277 - 00618
5816

### BALANCING YOUR ACCOUNT

Please examine your statement and paid check information upon receipt. Erasures, alterations or irregularities should be reported promptly in accordance with your account agreement. The suggested steps below will help you balance your account.

### INSTRUCTIONS

**❶ Verify and check off in your check register** each deposit, check or other transaction shown on this statement.

Enter into your check register and SUBTRACT:
- Checks or other deductions shown on our statement that you have *not* already entered.
- The "Service charges", if any, shown on your statement.

Enter into your check register and ADD:
- Deposits or other credits shown on our statement that you have *not* already entered.
- The "Interest earned" shown on your statement, if any.

**❹** List from your check register any checks or other deductions that are *not* shown on your statement.

| Check # or Date | Amount |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **TOTAL ➔** | $ |

**❺** List any deposits from your check register that are *not* shown on your statement.

| Date | Amount |
|---|---|
| | |
| | |
| | |
| **TOTAL ➔** | $ |

**❻** Enter ending balance shown on your statement.

$

**❼** Add 5 and 6 and enter total here.

$

**❽** Enter total from 4.

$

**❾** Subtract 8 from 7 and enter difference here.

This amount should agree with your check register balance.

Cheyenne Hotel Investments LLC

**Key Bank Checking, Period Ending 01/31/2020**

**RECONCILIATION REPORT**

Reconciled on: 02/19/2020

Reconciled by: Jessica Niles

Any changes made to transactions after this date aren't included in this report.

| Summary | USD |
|---|---|
| Statement beginning balance | 0.00 |
| Checks and payments cleared (8) | -25,651.01 |
| Deposits and other credits cleared (9) | 26,272.01 |
| Statement ending balance | 621.00 |
| | |
| Register balance as of 01/31/2020 | 621.00 |

**Details**

Checks and payments cleared (8)

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 01/01/2020 | Expense | | Key Bank | -113.56 |
| 01/14/2020 | Bill Payment | ACH | Ascentium Capital LLC. | -1,630.25 |
| 01/16/2020 | Expense | | Ascentium Capital LLC. | -38.20 |
| 01/21/2020 | Expense | | TRN Corp | -4,000.00 |
| 01/23/2020 | Expense | | TRN Corp | -5,866.00 |
| 01/31/2020 | Expense | | Key Bank | -3.00 |
| 01/31/2020 | Expense | | TRN Corp | -4,000.00 |
| 01/31/2020 | Expense | 104 | Colorado Springs Utilities | -10,000.00 |

| Total | | | | -25,651.01 |
|---|---|---|---|---|

Deposits and other credits cleared (9)

| DATE | TYPE | REF NO. | PAYEE | AMOUNT (USD) |
|---|---|---|---|---|
| 01/01/2020 | Deposit | | Samira Khan | 250.00 |
| 01/06/2020 | Deposit | | Merchant Services | 1,648.37 |
| 01/13/2020 | Deposit | | | 2,964.26 |
| 01/16/2020 | Deposit | | Merchant Services | 1,139.63 |
| 01/22/2020 | Deposit | | Merchant Services | 5,845.94 |
| 01/27/2020 | Deposit | | Merchant Services | 2,702.61 |
| 01/28/2020 | Deposit | | TK Hotels | 5,000.00 |
| 01/29/2020 | Deposit | | Merchant Services | 5,902.96 |
| 01/30/2020 | Deposit | | Merchant Services | 818.24 |

| Total | | | | 26,272.01 |
|---|---|---|---|---|



**PB&T BANK**
Local People Making Local Decisions Since 1889

PB&T Bank
301 W 5th St
Pueblo, CO 81003
(719) 545-1834
(888)728-3550

CHEYENNE HOTEL INVESTMENTS LLC
225 E CHEYENNE MTN BLV STE 210
COLORADO SPRINGS CO 80906

## STATEMENT OF ACCOUNT

| ACCOUNT NO. | STATEMENT PERIOD | PAGE |
|---|---|---|
| XXXXX6195 | 01/01/2020 - 01/31/2020 | 1 of 2 |

| | | |
|---|---|---|
| PREVIOUS BALANCE | | 118.86 |
| DEPOSITS/CREDITS | (0) | 0.00 |
| CHECKS/DEBITS | (0) | 0.00 |
| ENDING BALANCE | | 118.86 |
| DAYS IN STATEMENT PERIOD | | 31 |

It's time to make sure your information is accurate and up to date for tax reporting purposes. Please call or visit any branch to review your address, phone number, and your tax identification number for accuracy.

| TRANSACTION DATE | TRANSACTION TYPE | DESCRIPTION OF TRANSACTION | AMOUNT |
|---|---|---|---|
| Free Business Checking | | | |
| | | DEPOSITS / OTHER CREDITS | |
| | | WITHDRAWALS / OTHER DEBITS | |
| | | DAILY ENDING BALANCE | |

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 01/01 | 118.86 | | | | |

| | Total for this Period | Total Year to Date |
|---|---|---|
| Total overdraft fees | 0.00 | 0.00 |
| Total returned item fees | 0.00 | 0.00 |

# PUEBLO BANK AND TRUST

| ACCOUNT NO. | STATEMENT PERIOD | PAGE |
|---|---|---|
| XXXXX6195 | 01/01/2020 - 01/31/2020 | 2 of 2 |

**IMPORTANT DISCLOSURES TO OUR CONSUMER CUSTOMERS**
**In Case of Errors or Questions About Your Checking or Savings Electronic Transfers**
If you think your statement or receipt is wrong or if you need more information about a transfer listed on your statement or receipt, we must hear from you no later than 60 days after we sent the FIRST statement on which the problem or error appeared.  Telephone us at one of the numbers listed or write us at The Pueblo Bank and Trust Company, P.O. Box 639, Pueblo, CO 81002.
- Tell us your name and account number.
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.
We will tell you the results of our investigation within 10 business days and will correct any error promptly.  If we need more time, we may take up to 45 days to investigate your complaint or question.  In that case, we will provisionally credit your account within 10 business days for the amount you think is in error so that you will have the use of money during the time it takes us to complete our investigation.  If we ask you to put your complaint or question in writing and we do not receive it within 10 business days, we may not re-credit your account.  If we decide there was no error, we will send you a written explanation within 3 business days after we finish our investigation.  You may ask for copies of the documents that we used in our investigation.  For transfers initiated outside the United States or transfers resulting from point of sale debit card transactions, the time period for provisional credit is 10 business days and the time to resolve the investigation is 90 days.

**CONSUMER BILLING RIGHTS SUMMARY**
**In Case of Errors or Questions About Your Line of Credit Statement**
If you think your statement is wrong, or if you need more information about a transaction on your statement, write us on a separate sheet at P.O Box 639, Pueblo, CO 81002 as soon as possible.  We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.  You can telephone us, but doing so will not preserve your rights.  In your letter, give us the following information:
- Your name and account number.
- The dollar amount of the suspected error.
- Date the transaction occurred.
- Describe the error and explain, if you can, why you believe there is an error.  If you need more information, describe the item you are unsure about. You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your statement that are not in question.  While we investigate your question, we cannot report you as delinquent or take any action to collect the amount you question.
**Special Rule for Credit Card Purchases (This applies when you have a check card and a line of credit)**
If you have a problem with the quality of goods or services that you purchased with a credit card and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services.  You have this protection only when the purchase price was more than $50 and the purchase was made in your home state or within 100 miles of your mailing address.  (If we own or operate the merchant or if we mailed you the advertisement for the property or services, all purchases are covered regardless of amount or location of purchase.)

**RESERVE LINE OF CREDIT**
We figure the FINANCE CHARGE on your account by applying the daily periodic rate to the "average daily balance" of your account (including current transactions) and multiply by the number of days in the statement cycle.  To get the "average daily balance" we take the beginning balance of your account each day, add any new advances, and subtract any payments or credits.  This gives us the daily balance.  Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle.  The FINANCE CHARGE begins from the date of each advance.

**IMPORTANT DISCLOSURES TO OUR BUSINESS CUSTOMERS**
Errors related to any transaction on a business account will be governed by any agreement between us and/or all applicable rules and regulations governing such transactions, including the rules of the National Automated Clearing House Association (NACHA Rules) as may be amended from time to time.  If you think this statement is wrong, please telephone us at the number listed on the front of this statement immediately.

rev. 4/03

Cheyenne Hotel Investments,
Case No. 19-15473-KHT

MOR 20200131 Supplement
Accounts Payable Aging

| 03/04/2019 | INV214023 | Uniguest | 03/04/2019 | 352 | 1,631.92 | 1,631.92 |
|---|---|---|---|---|---|---|
| 03/05/2019 | | Orkin | 03/05/2019 | 351 | 106.50 | 106.50 |
| 03/06/2019 | 6094054 | The Robert Allen Duralee group | 03/06/2019 | 350 | 4,335.23 | 4,335.23 |
| 03/19/2019 | TMC15831001 | Otis Elevator Company | 04/18/2019 | 307 | 622.50 | 622.50 |
| 03/19/2019 | | CenturyLink | 04/18/2019 | 307 | 52.43 | 52.43 |
| 03/20/2019 | 13761204295 | Swire Coca- Cola | 03/20/2019 | 336 | 49.90 | 49.90 |
| 03/20/2019 | TMC05630419 | Otis Elevator Company | 04/19/2019 | 306 | 1,363.95 | 1,363.95 |
| 03/26/2019 | 5690A | Judd's Glass & Mirror | 03/26/2019 | 330 | 691.18 | 691.18 |
| 03/26/2019 | 5690B | Judd's Glass & Mirror | 03/26/2019 | 330 | 329.90 | 329.90 |
| 03/27/2019 | 186031130 | Orkin | 03/27/2019 | 329 | 1,050.00 | 1,050.00 |
| 03/27/2019 | 914998666 | Insight Direct USA, Inc | 04/11/2019 | 314 | 2,787.42 | 2,787.42 |
| 03/31/2019 | 14590159 | USA Today | 04/30/2019 | 295 | 243.75 | 243.75 |
| 04/01/2019 | 182915261 | Orkin | 04/01/2019 | 324 | 106.50 | 106.50 |
| 04/03/2019 | 13761204435 | Swire Coca- Cola | 04/03/2019 | 322 | 165.97 | 165.97 |
| 04/10/2019 | 99071937 | Superior Uniform Group | 05/10/2019 | 285 | 139.11 | 139.11 |
| 04/11/2019 | 17452 | RMS Sign Company | 04/11/2019 | 314 | 595.05 | 595.05 |
| 04/11/2019 | 17453 | RMS Sign Company | 04/11/2019 | 314 | 70.40 | 70.40 |
| 04/11/2019 | 68983384 | Farmers Brothers CO | 05/11/2019 | 284 | 218.24 | 218.24 |
| 04/17/2019 | 186345813 | Orkin | 04/17/2019 | 308 | 1,500.00 | 1,500.00 |
| 04/18/2019 | 68983419 | Farmers Brothers CO | 05/18/2019 | 277 | 145.64 | 145.64 |
| 04/19/2019 | 186416547 | Orkin | 04/19/2019 | 306 | 1,050.00 | 1,050.00 |
| 04/19/2019 | | CenturyLink | 05/19/2019 | 276 | 47.57 | 47.57 |
| 04/25/2019 | 69007465 | Farmers Brothers CO | 05/25/2019 | 270 | 304.38 | 304.38 |
| 04/28/2019 | 14635845 | USA Today | 05/28/2019 | 267 | 243.75 | 243.75 |
| 04/29/2019 | 42917 | Cintas Fire | 05/29/2019 | 266 | 420.00 | 420.00 |
| 05/01/2019 | 183861614 | Orkin | 05/01/2019 | 294 | 106.50 | 106.50 |
| 05/02/2019 | 69032503 | Farmers Brothers CO | 05/25/2019 | 263 | 145.64 | 145.64 |
| 05/03/2019 | INV0030689 | El Paso County Public Health | 05/03/2019 | 292 | 242.00 | 242.00 |
| 05/07/2019 | A-02799 | Commtrak | 05/07/2019 | 288 | 813.70 | 813.70 |
| 05/09/2019 | 69059202 | Farmers Brothers CO | 06/08/2019 | 256 | 146.99 | 146.99 |
| 05/10/2019 | SEI/01268162 | US INC. | 06/09/2019 | 255 | 300.56 | 300.56 |
| 05/15/2019 | 13761204900 | Swire Coca- Cola | 05/15/2019 | 280 | 147.79 | 147.79 |
| 05/16/2019 | 69082333 | Farmers Brothers CO | 06/15/2019 | 249 | 74.39 | 74.39 |
| 05/19/2019 | | CenturyLink | 06/18/2019 | 246 | 55.17 | 55.17 |
| 05/23/2019 | 69082378 | Farmers Brothers CO | 06/22/2019 | 242 | 294.26 | 294.26 |
| 05/24/2019 | 1271241 | US INC. | 06/23/2019 | 241 | 1,324.31 | 1,324.31 |
| 05/28/2019 | SKUA8A | City of Colorado Springs | 05/28/2019 | 267 | 897.60 | 897.60 |
| 05/29/2019 | 13761205044 | Swire Coca- Cola | 05/29/2019 | 266 | 151.67 | 151.67 |
| 05/30/2019 | | Hilton Hotels Corporation | 06/29/2019 | 235 | 36,965.52 | 36,965.52 |
| 05/30/2019 | 69114514 | Farmers Brothers CO | 06/29/2019 | 235 | 218.24 | 218.24 |
| 05/31/2019 | 328345 | Travel Click,Inc. | 05/31/2019 | 264 | 207.90 | 207.90 |
| 05/31/2019 | | USA Today | 06/30/2019 | 234 | 234.00 | 234.00 |
| 06/01/2019 | 184813654 | Orkin | 06/01/2019 | 263 | 113.96 | 113.96 |
| 06/04/2019 | | Enterprises | 06/04/2019 | 260 | 2,202.05 | 2,202.05 |
| 06/04/2019 | 100025965 | GM Girvin Marketing | 06/04/2019 | 260 | 279.14 | 279.14 |
| 06/04/2019 | O | Golden Malted | 06/04/2019 | 260 | 206.00 | 206.00 |
| 06/05/2019 | 839490 | The Regal Press,Inc. | 06/05/2019 | 259 | 136.74 | 136.74 |

Cheyenne Hotel Investments,
Case No. 19-15473-KHT

MOR 20200131  Supplement
Accounts Payable Aging

| Date | Ref | Vendor | Date 2 | Days | Amount | Balance |
|---|---|---|---|---|---|---|
| 06/06/2019 | | Guest Supply | 06/06/2019 | 258 | 2,376.17 | 2,376.17 |
| 06/06/2019 | 69134816 | Farmers Brothers CO | 07/06/2019 | 228 | 145.64 | 145.64 |
| 06/10/2019 | 141368882 | Edward Don&Company | 06/10/2019 | 254 | 60.80 | 60.80 |
| 06/12/2019 | | Oztek Commercial service | 06/12/2019 | 252 | 1,232.73 | 1,232.73 |
| 06/13/2019 | | Colorado Springs Utilities | 07/13/2019 | 221 | 9,613.93 | 9,613.93 |
| 06/13/2019 | 69161100 | Farmers Brothers CO | 07/13/2019 | 221 | 223.01 | 223.01 |
| 06/18/2019 | 10412282 | Guest Supply | 06/18/2019 | 246 | 76.43 | 76.43 |
| 06/19/2019 | 13761205295 | Swire Coca- Cola | 06/19/2019 | 245 | 153.45 | 153.45 |
| 06/19/2019 | | CenturyLink | 07/19/2019 | 215 | 59.11 | 59.11 |
| 06/20/2019 | 719 | Otis Elevator Company | 07/20/2019 | 214 | 1,363.95 | 1,363.95 |
| 06/20/2019 | 69184948 | Farmers Brothers CO | 07/20/2019 | 214 | 231.50 | 231.50 |
| 06/21/2019 | 10428014 | Guest Supply | 06/21/2019 | 243 | 1,801.58 | 1,801.58 |
| 06/21/2019 | 10425188 | Guest Supply | 06/21/2019 | 243 | 106.80 | 106.80 |
| 06/25/2019 | 259596429 | Sysco | 06/25/2019 | 239 | 1,431.41 | 1,431.41 |
| | | | | | Pre-Petition | 115,572.19 |
| | | | | | | |
| 06/29/2019 | | Sysco | 06/29/2019 | 235 | 1,798.77 | 50.99 |
| 06/30/2019 | | Hilton Hotels Corporation | 07/30/2019 | 204 | 45,439.85 | 45,439.85 |
| 07/01/2019 | | Johnson Controls, Inc. | 07/01/2019 | 233 | 491.00 | 491.00 |
| 07/01/2019 | | CenturyLink | 07/31/2019 | 203 | 757.76 | 757.76 |
| 07/02/2019 | I47674IIKEPF | Golden Malted | 07/02/2019 | 232 | 509.75 | 509.75 |
| 07/05/2019 | | Ccomputer Techrepair | 07/05/2019 | 229 | 729.42 | 729.42 |
| 07/15/2019 | | CenturyLink | 08/14/2019 | 189 | 1,333.14 | 1,333.14 |
| 07/17/2019 | | US INC. | 08/16/2019 | 187 | 300.56 | 300.56 |
| 07/19/2019 | | Johnson Controls, Inc. | 07/19/2019 | 215 | 3,339.01 | 3,339.01 |
| 07/19/2019 | 6042391 | Guest Supply | 07/19/2019 | 215 | 2,754.04 | 2,754.04 |
| 07/19/2019 | | CenturyLink | 08/18/2019 | 185 | 59.20 | 59.20 |
| 07/31/2019 | U5 | Golden Malted | 07/31/2019 | 203 | 354.00 | 354.00 |
| 07/31/2019 | | Hilton Hotels Corporation | 08/30/2019 | 173 | 47,408.28 | 47,408.28 |
| 08/01/2019 | | City of Colorado Springs | 08/01/2019 | 202 | 163.20 | 163.20 |
| 08/01/2019 | 187192318 | Orkin | 08/01/2019 | 202 | 113.96 | 113.96 |
| 08/01/2019 | | CenturyLink | 08/31/2019 | 172 | 605.51 | 605.51 |
| 08/15/2019 | | Rfid Hotel | 08/15/2019 | 188 | 338.59 | 338.59 |
| 08/15/2019 | 1474660328 | CenturyLink | 09/14/2019 | 158 | 1,173.65 | 1,173.65 |
| 08/19/2019 | | CenturyLink | 09/18/2019 | 154 | 62.16 | 62.16 |
| 08/22/2019 | 69356247 | Farmers Brothers CO | 09/21/2019 | 151 | 376.48 | 210.38 |
| 08/31/2019 | 347937 | Travel Click,Inc. | 08/31/2019 | 172 | 207.90 | 207.90 |
| 09/01/2019 | 188455283 | Orkin | 09/01/2019 | 171 | 113.96 | 113.96 |
| 09/01/2019 | | CenturyLink | 10/01/2019 | 141 | 606.28 | 606.28 |
| 10/01/2019 | | Orkin | 10/01/2019 | 141 | 113.96 | 113.96 |
| 10/01/2019 | | CenturyLink | 10/31/2019 | 111 | 606.28 | 606.28 |
| 10/01/2019 | | RR Donnelley | 10/31/2019 | 111 | 164.32 | 164.32 |
| 10/20/2019 | | Otis Elevator Company | 11/19/2019 | 92 | 1,363.95 | 1,363.95 |
| 10/22/2019 | | CenturyLink | 11/21/2019 | 90 | 1,181.17 | 1,181.17 |
| 10/22/2019 | | Farmers Brothers CO | 11/21/2019 | 90 | 814.26 | 814.26 |
| 10/24/2019 | | Farmers Brothers CO | 11/23/2019 | 88 | 71.25 | 71.25 |
| 10/30/2019 | | GFL Environmental | 11/14/2019 | 97 | 232.50 | 232.50 |

Cheyenne Hotel Investments,
Case No. 19-15473-KHT

MOR 20200131 Supplement
Accounts Payable Aging

| Date | Ref | Vendor | Date | Days | Amount | Total |
|---|---|---|---|---|---|---|
| 10/31/2019 | 7 | Carbon's Golden Malted | 10/31/2019 | 111 | 415.75 | 415.75 |
| 10/31/2019 | 13761206876 | Swire Coca- Cola | 10/31/2019 | 111 | 74.85 | 74.85 |
| | | | | +90 Days | | 112,160.88 |
| | | | | | | |
| 11/01/2019 | | Orkin | 11/01/2019 | 110 | 113.96 | 113.96 |
| 11/01/2019 | | CenturyLink | 12/01/2019 | 80 | 737.73 | 737.73 |
| 11/05/2019 | | Carbon's Golden Malted | 11/05/2019 | 106 | 581.25 | 581.25 |
| 11/13/2019 | | Hotel Planner | 11/13/2019 | 98 | 612.84 | 612.84 |
| 11/13/2019 | | Swire Coca- Cola | 11/13/2019 | 98 | 49.90 | 49.90 |
| | | | | 60-90 Days | | 2,095.68 |
| | | | | | | |
| 12/01/2019 | | Colorado Springs Utilities | 12/31/2019 | 50 | 9,385.71 | 9,385.71 |
| 12/01/2019 | | CenturyLink | 12/31/2019 | 50 | 1,186.87 | 1,186.87 |
| 12/01/2019 | | CenturyLink | 12/31/2019 | 50 | 774.61 | 774.61 |
| 12/01/2019 | | USA Today | 12/31/2019 | 50 | 255.06 | 255.06 |
| 12/11/2019 | 13761207386 | Swire Coca- Cola | 12/11/2019 | 70 | 74.85 | 74.85 |
| 12/12/2019 | | CenturyLink | 01/11/2020 | 39 | 148.52 | 148.52 |
| 12/18/2019 | | Swire Coca- Cola | 12/18/2019 | 63 | 49.90 | 49.90 |
| 12/19/2019 | | Johnson Controls Fire Protection | 12/19/2019 | 62 | 589.24 | 589.24 |
| 12/30/2019 | | AT&T WiFi Services | 01/29/2020 | 21 | 3,707.00 | 3,332.50 |
| | | | | 31-60 Days | | 15,797.26 |
| | | | | | | |
| 01/01/2020 | | Ascentium Capital LLC. | 01/01/2020 | 49 | 1,642.52 | 1,642.52 |
| 01/01/2020 | | GFL Environmental | 01/16/2020 | 34 | 232.50 | 232.50 |
| 01/01/2020 | | CenturyLink | 01/31/2020 | 19 | 1,179.15 | 1,179.15 |
| 01/10/2020 | | AT&T WiFi Services | 02/09/2020 | 10 | 374.50 | 374.50 |
| 01/13/2020 | | CenturyLink | 02/12/2020 | 7 | 765.61 | 765.61 |
| 01/13/2020 | | CenturyLink | 02/12/2020 | 7 | 75.61 | 75.61 |
| 01/15/2020 | | Colorado Springs Utilities | 02/14/2020 | 5 | 9,440.78 | 9,440.78 |
| 01/22/2020 | | Swire Coca- Cola | 01/22/2020 | 28 | 59.90 | 59.90 |
| 01/22/2020 | | USA Today | 02/21/2020 | -2 | 147.28 | 147.28 |
| | | | | 0-30 days | | 13,917.85 |

Total Post-Petition 143,971.67

# EXHIBIT "C"

## CHAPTER 11 DEBTOR PROJECTIONS
## Cheyenne Hotel Investments LLC

| | | | August | September | October | November | December |
|---|---|---|---|---|---|---|---|
| | | | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 |
| **INCOME** | | | | | | | |
| | | Owner Contributions | 60,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 |
| | | Operating Revenue (*) | | | | | |
| | | **NET INCOME** | 60,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 |
| **EXPENSES** | | | | | | | |
| | | Operating Expenses (*) | | | | | |
| | | **TOTAL EXPENSES** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **PLAN PAYMENTS** | **Class** | | | | | | |
| | 0 | Allowed Administrative Expenses and UST Fees | 20,000.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 1 | Priority Claim of IRS | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 2 | Priority Claim of Colorado Dept of Revenue | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 3 | Priority Claim of El Paso County Treasurer | 7,651.13 | 7,651.13 | 7,651.13 | 7,651.13 | 7,651.13 |
| | 4 | Secured Claim of Wells Fargo | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 |
| | 5 | Secured Claim of US Bank | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 6 | Unsecured Claims | 9,352.38 | 9,352.38 | 9,352.38 | 9,352.38 | 9,352.38 |
| | 7 | Equity Interests | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | **TOTAL PLAN PAYMENTS** | 60,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 |
| **NET INCOME** | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **CUMULATIVE INCOME** | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

(*) Galaxy's estimate of operating revenue and
expenses is uncertain pending reopening of the Hotel.

| January | February | March | April | May | June | July | August | September | October |
|---|---|---|---|---|---|---|---|---|---|
| Month | Month | Month | Month | Month | Month | Month | Month | Month | Month |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| | | | | | | | | | |
| 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 |
| | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| 40,588.06 | 90,588.06 | 90,588.06 | 90,588.06 | 90,588.06 | 90,588.06 | 90,588.06 | 90,588.06 | 90,588.06 | 90,588.06 |
| | | | | | | | | | |
| | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| 0.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| | | | | | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7,651.13 | 7,651.13 | 7,651.13 | 7,651.13 | 7,651.13 | 7,651.13 | 7,651.13 | 7,651.13 | 7,651.13 | 7,651.13 |
| 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 9,352.38 | 9,352.38 | 9,352.38 | 9,352.38 | 9,352.38 | 9,352.38 | 9,352.38 | 9,352.38 | 9,352.38 | 9,352.38 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

| November | December | January | February | March | April | May | June | July | August |
|---|---|---|---|---|---|---|---|---|---|
| Month | Month | Month | Month | Month | Month | Month | Month | Month | Month |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 23,584.55 |
| 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| 90,588.06 | 90,588.06 | 90,588.06 | 90,588.06 | 90,588.06 | 90,588.06 | 90,588.06 | 90,588.06 | 90,588.06 | 73,584.55 |
| 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 7,651.13 | 7,651.13 | 7,651.13 | 7,651.13 | 7,651.13 | 7,651.13 | 7,651.13 | 7,651.13 | 7,651.13 | 0.00 |
| 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 9,352.38 | 9,352.38 | 9,352.38 | 9,352.38 | 9,352.38 | 9,352.38 | 9,352.38 | 9,352.38 | 9,352.38 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 40,588.06 | 23,584.55 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

| September | October | November | December | January | February | March | April | May | June |
|---|---|---|---|---|---|---|---|---|---|
| Month 26 | Month 27 | Month 28 | Month 29 | Month 30 | Month 31 | Month 32 | Month 33 | Month 34 | Month 35 |
| 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 |
| 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| 73,584.55 | 73,584.55 | 73,584.55 | 73,584.55 | 73,584.55 | 73,584.55 | 73,584.55 | 73,584.55 | 73,584.55 | 73,584.55 |
| 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

| July | August | September | October | November | December | January | February | March | April |
|---|---|---|---|---|---|---|---|---|---|
| Month | Month | Month | Month | Month | Month | Month | Month | Month | Month |
| 36 | 37 | 38 | 39 | 40 | 41 | 42 | 43 | 44 | 45 |
| | | | | | | | | | |
| 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 |
| 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| 73,584.55 | 73,584.55 | 73,584.55 | 73,584.55 | 73,584.55 | 73,584.55 | 73,584.55 | 73,584.55 | 73,584.55 | 73,584.55 |
| | | | | | | | | | |
| 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| | | | | | | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

| May | June | July | August | September | October | November | December | January | February |
|---|---|---|---|---|---|---|---|---|---|
| Month 46 | Month 47 | Month 48 | Month 49 | Month 50 | Month 51 | Month 52 | Month 53 | Month 54 | Month 55 |
| 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 |
| 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| 73,584.55 | 73,584.55 | 73,584.55 | 73,584.55 | 73,584.55 | 73,584.55 | 73,584.55 | 73,584.55 | 73,584.55 | 73,584.55 |
| 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

| March | April | May | June | July |
|---|---|---|---|---|
| Month | Month | Month | Month | Month |
| 56 | 57 | 58 | 59 | 60 |
| | | | | |
| 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 |
| 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| 73,584.55 | 73,584.55 | 73,584.55 | 73,584.55 | 73,584.55 |
| | | | | |
| 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| | | | | |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 | 23,584.55 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |