## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

IN RE: )
) CASE NO. 19-15473-KHT
CHEYENNE HOTEL INVESTMENTS, ) CHAPTER 11
LLC, )
)
DEBTOR. )

### OBJECTION TO DISCLOSURE STATEMENT FOR CREDITOR'S PLAN OF REORGANIZATION DATED JUNE 24, 2020

COMES NOW Situs Holdings, LLC, in its capacity as Special Servicer for Wells Fargo Bank, N.A., as Trustee for the registered holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2006-C1 ("*Holder*"), in the above-referenced bankruptcy case, and files this objection (the "Objection") to the *Disclosure State for Creditor's Plan of Reorganization Dated June 24, 2020* [ECF No. 157] (the "Disclosure Statement").  In support of this Objection, Holder respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.      On June 26, 2019 (the "Petition Date"), Cheyenne Hotel Investments, LLC (the "Debtor") filed its voluntary petition for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code").  Prior to the Petition Date, the Debtor operated a hotel as a Homewood Suites by Hilton near the Colorado Springs airport under a franchise agreement with Hilton Hotels, LLC ("Hilton").  Hilton gave notice that it was terminating the Debtor's franchise agreement, and the Debtor alleged that Hilton had taken actions in furtherance of the termination in violation of the automatic stay.  See *Order Denying Motion* [ECF No. 42] at 1.  On July 22, 2019, the Court entered an order

finding that no such stay violation had occurred.  See id. at 3.  During the intervening year, the Debtor has taken no steps to further its reorganization though it has continued to allow insiders to siphon off hundreds of thousands of dollars from the Debtor's estate.  See, e.g., Debtor's Monthly Operating Report for June 2020 at 21 – 24 (showing that the Debtor has paid more than $200,000 to insiders without court approval since the Petition Date).  Sensing an opportunity to take advantage of an unsophisticated Debtor, Galaxy Construction, LLC ("Galaxy") purchased a $2,388.00 unsecured claim against the Debtor, see Notice of Transfer of Claim [ECF No. 127], and filed the Creditor's Plan of Reorganization Dated June 24, 2020 [ECF No. 158] (the "Plan") and the accompanying Disclosure Statement.  As set forth below, the Court should not approve the Disclosure Statement which fails to provide adequate information about numerous issues relevant to the parties from whom Galaxy is soliciting confirmation votes on its Plan, including the basis for Galaxy's "opinion" that the Debtor's real estate is worth only $3.5 million.  Moreover, the Plan cannot be confirmed as a matter of law.  The Court should deny the Disclosure Statement.  At the August 31st hearing on the United States Trustee's motion to dismiss or convert the Debtor's case, the Court should grant the United States Trustee's motion and either dismiss the Debtor's case or appoint a fiduciary to operate the Debtor, investigate transfers to the Debtor's insiders, and sell the Debtor's property in an orderly fashion so as to maximize value to the Debtor's estate.

US2008 17339476 4

## II.    BACKGROUND

2.      Prior to the Petition Date, the Debtor operated a hotel in Colorado Springs, Colorado as the Homewood Suites by Hilton – Colorado Springs Airport.  *Order Denying Mot.* at 1.

3.      By letter dated August 15, 2017, Hilton delivered a notice of default under the Debtor's franchise agreement with Hilton.  Id.

4.      On June 7, 2019. Hilton delivered a Notice of Termination to Debtor, providing that the Debtor's franchise agreement with Hilton would terminate at 12:01 a.m. on July 1, 2019.  Id.

5.      On the Petition Date, the Debtor filed its voluntary petition apparently in an attempt to halt the termination of the Debtor's franchise agreement.

6.      Subsequently, the Court found that Hilton's actions to modify Hilton's reservation system had occurred prior to the Petition Dated, and Hilton had not violated the automatic stay.  Order Denying Mot. at 3.

7.      On December 5, 2019, the Office of the United States Trustee filed the *United States Trustee's Motion to Dismiss Chapter 11 Case or Convert Chapter 11 to Chapter 7 Under 11 U.S.C. § 1112(b)* [ECF No. 117] (the "Motion to Dismiss").

8.      On January 28, 2020, Galaxy filed a notice of transfer of claim, indicating that it had purchased a $2,388.00 unsecured claim.  See ECF No. 127.

9.      On January 30, 2020, the Court held a hearing on the Motion to Dismiss.  At the hearing, Galaxy informed the Court that "Galaxy Construction is going to be able to come in, provide a creditor plan that other creditors can get on board with, the debtor can get on board with and actually remedy this business and

3

take it forward.  … And we do plan to put together a plan that we think will be confirmable in this Court …."  Trans. of Hearing, Jan. 30, 2020 at 16: 8-15. Additionally, Galaxy indicated that it "hope[d] to blow everybody away … with a nice plan that will … satisfy everybody."  Id. at 21:22 – 25.

### A.    The Debtor's Secured Indebtedness

10.    On or about February 1, 2006, Column Financial, Inc., a Delaware corporation ("Original Lender"), made a loan in the original principal amount of $8,560,000.00 (the "Loan") evidenced by, among other things, (i) that certain Promissory Note (Note A), dated February 1, 2006, in the original principal amount of $8,000,000.00 (the "Note A") executed by CS Hospitality, L.L.C., a Kansas limited liability company ("Original Borrower"), in favor of Original Lender, which Note A is currently owned and held by Holder, and (ii) that certain Promissory Note (Note B), dated February 1, 2006, in the original principal amount of $560,000.00 (the "Note B" and, together with the Note A, collectively, the "Notes") executed by Original Borrower in favor of Original Lender, which Note B is currently owned and held by U.S. Bank National Association, as trustee for the registered holders of Mezz Cap Commercial Mortgage Trust 2006-C4, Commercial Mortgage Pass-Through Certificates, Series 2006-C4 ("B Noteholder"), which Loan is secured by, among other things, that certain Deed of Trust, Security Agreement and Filing Statement (the "Security Instrument"), executed by Original Borrower for the benefit of Original Lender, effective as of February 1, 2006, and filed February 8, 2006 at Reception No. 206020758 in the real property records of El Paso County, Colorado, granting,

4

bargaining, selling and conveying a security interest in and encumbering, among

other things, that certain property more particularly described as the "Property" in the

Security Instrument, and that certain Assignment of Leases and Rents (the "ALR"),

executed by Original Borrower for the benefit of Original Lender, effective as of

February 1, 2006, and filed February 8, 2006 at Reception No. 206020759 in the real

property records of El Paso County, Colorado, granting, bargaining, selling and

conveying a security interest in and encumbering, among other things, that certain

property more particularly described as the "Leases" and "Rents" in the ALR, which

Loan and all other documents then evidencing or executed in connection with the

Loan were assigned and assumed from Original Borrower to Debtor, pursuant to that

certain Assumption and Release Agreement, entered into and made effective as of

May 7, 2008, and filed May 20, 2008 at Reception No. 208057692 in the real

property records of El Paso County, Colorado (the "Assumption Agreement"), which

Loan is guaranteed by certain guarantors pursuant to that certain Indemnity and

Guaranty Agreement (the "Guaranty"), executed to be effective as of May 7, 2008,

which Loan is subject to that certain Hazardous Substances Indemnity Agreement

(the "Environmental Indemnity"), effective as of May 7, 2008, and which Loan was

modified pursuant to that certain Loan Modification Agreement, dated as of October

11, 2013 (the "Modification Agreement"), that certain Loan Extension Agreement

dated October 11, 2018 (the "October 2018 Extension Agreement"), that certain Loan

Extension Agreement, made effective as of January 11, 2019 (the "January 2019

Extension Agreement"), and that certain Loan Extension Agreement dated May 10,

5

2019 (the "May 2019 Extension Agreement" and, together with the Notes, the Security Instrument, the ALR, the Assumption Agreement, the Guaranty, the Environmental Indemnity, the Modification Agreement, the October 2018 Extension Agreement, the January 2019 Extension Agreement, the May 2019 Extension Agreement, any UCC financing statements, and all other documents evidencing or executed in connection with the Loan, as the same have been amended and modified, collectively, the "Loan Documents").

11.     All of the Loan Documents (except Note B) have been endorsed, transferred, assigned and conveyed to Holder, and Holder is the current owner and holder of the Loan (except Note B), the payee of Note A, the grantee and beneficiary of the Security Instrument and the owner and holder of all the Loan Documents (except Note B).  Note B has been endorsed, transferred, assigned and conveyed to B Noteholder, and B Noteholder is the current owner and holder of, and payee of, Note B.

12.     Holder filed proofs of claim on behalf of itself and B Noteholder in the amounts of $7,074,780.13 and $624,399.15, respectively.  See Claims Register Nos. 11 and 12.  As of May 31, 2020, the last date for which a payoff was requested, Holder was owed $7,863,432.40 and B Noteholder was owed $707,931.63.  These amounts are without application of $822,993.68 of Debtor's cash collateral administered by Berkadia Commercial Mortgage, Inc. ("Berkadia") for the benefit of Holder.[1]

**B.     The Galaxy Plan**

13.     On June 24, 2020, Galaxy filed its Plan and Disclosure Statement.

---

[1] Holder intends to amend the proofs of claim to reflect these amounts.

6

14. The Plan, among other things, separately classifies the priority tax claims of the Internal Revenue Service (Class 1), the Colorado Department of Revenue (Class 2), and the El Paso County Treasurer (Class 3). It also separately classifies Holder's claims (Class 4) and the B Noteholder's claims (Class 5). Holder's and B Noteholder's deficiency claims and all other general unsecured claims are classified in a single class (Class 6), and, finally, the Debtor's equity holders are classified (Class 7). See Plan, Arts. IV & V. The Plan provides that each of the classes is impaired under the Plan. See id. at 10-14.

15. The Plan provides that Holder's Claim (referred as the "Wells Fargo Claim" in the Plan) has a first priority lien secured by $3.5 million in collateral and will be bifurcated into Class 4 (secured) and an unsecured portion (Class 6). With respect to the secured portion of Holder's claim, the Plan provides that:

> It shall be amortized over twenty (20) years, bearing interest at the rate of 5.25% per annum. Monthly payments of both principal and interest shall be made by the Reorganized [Debtor] on the Claim beginning on the first day of the first month following confirmation of the Plan, and on the first day each month thereafter. The Claim shall be due and payable in full upon the expiration of one year from the Effective Date, at which time the Reorganized Debtor shall refinance the debt with Wells Fargo or another lender. These terms shall be referred to herein as the "Note Modification."

Id. at 12. The Plan also provides that:

> "Wells Fargo Bank, N.A. shall continue to be properly perfected and secured for an Allowed Secured Claim on the Debtor's real and personal property as described in its loan document and financing statements (the "Collateral"), in the Amount of $3,500,000.00. Without further filing, Wells Fargo Bank, N.A. shall retain a first priority mortgage interest and a first priority security interest in the Collateral.

7

Id.  Elsewhere, the Plan provides "[t]he obligations under the Note Modification shall commence as of the Effective Date."  Id.  The Plan does not address Holder's escrowed funds.

16.      The Plan provides that the B Noteholder's claim (referred in the Plan as the "U.S. Bank Claim") is secured by a second priority lien in the amount of $624,399.15.  Id. at 13.  The Plan provides that "Galaxy's opinion of value of U.S. Bank's secured interests in the property is $0."  Id.  The Plan also provides that to the extent the B Noteholder's claim is "fully unsecured, the Claim should be disallowed as a Secured Claim and allowed as a Class 6 Unsecured Claim in the amount of $624,399.15 ... and [its] asserted liens shall be extinguished."  Id.

17.      Section 8.01 of the Plan provides:

> Except as otherwise released pursuant to the Plan, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of the Debtor or Reorganized Debtor or the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by the Reorganized Debtor for the benefit of the Creditors subsequent to the Effective Date.

Id. § 8.01.

18.      With respect to general unsecured claims, the Plan provides that they will be paid a total of five percent of their respective allowed amounts (without interest), payable in 24 equal monthly installments.  Id. at 13-14.

**C.      The Galaxy Disclosure Statement**

19.      Section 1.09 of the Disclosure Statement Provides:  "[t]he Class 1, 2, 3, 4, 6 and 7 Claimants and Equity Interest Holders are impaired as defined by Section 1124 of

the Code.  Galaxy is seeking the acceptance of the Plan by Claimants in Classes 1, 2, 3, 4,

6 and 7.  Each holder of an Allowed Claim in Classes 1, 2, 3, 4, 6, and 7 may vote on the

Plan. …"[2]  Disclosure Statement § 1.09.[3]

     20.    Section 3.02 of the Disclosure Statement provides:

> In the Schedules of Assets and Liabilities filed in the bankruptcy case, the
> Debtor lists assets with an aggregate value of $13,887,961.77 of the
> Petition Date.  This amount consists of (i) real property in the amount of
> $12,800,000.00 (**Galaxy disagrees with this figure and believes the
> value of the real property is approximately $3,500,000.00**), (ii) cash
> and cash equivalents in the amount of $559,961.77 (of which $557,286.85
> is stated as a reserve account at Berkadia Commercial Loan Servcing, (iii)
> accounts receivable in the amount of $0.00, (iv) equipment, furnishings,
> supplies, and fixtures in the amount of $325,000.00; (v) inventory in the
> amount of $3,000.00, and (vi) intellectual property in the amount of
> $200,000.00.  Id. § 3.02 (emphasis in original).

     21.    Section 4.01 of the Disclosure Statement provides:  "[t]he Debtor

scheduled the value of the Hotel as $12,800,000.00 but Galaxy believes the value is

approximately $3,500,000.00."  Id. § 4.01.  The basis for Galaxy's disagreement as to the

value of the Debtor's real property is not provided in the Disclosure Statement (or in the

Plan).

     22.    Section 6.02 of the Disclosure Statement provides:  "Galaxy estimates it

will contribute $2,000,000 to $3,000,000.00 to the Debtor within 90 days after the

Effective Date of the Plan, with further contributions to follow as needed."  Id. § 6.02.

## III.   DISCUSSION

     23.    The Disclosure Statement should not be approved for a number of reasons,

most prominently:  (1) that the Disclosure Statement fails to provide adequate

---

[2] Class 7 is a class of interests not claims.

[3] It is not clear why Galaxy is not seeking acceptance from Class 5 when it is seeking acceptance from the
other six classes.

US2008 17339476 4

information on numerous issues relevant to the parties from whom the Debtors are soliciting confirmation votes on their Plan, including the basis for Galaxy's $3.5 million lowball valuation of the Debtor's real property; and (2) that the Plan is patently unconfirmable.

**A.  The Disclosure Statement Cannot Be Approved Because It Does Not Provide Adequate Disclosure**

24.   Section 1125(b) of the Bankruptcy Code provides:

> An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information.  The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.

11 U.S.C. § 1125(b).  "Adequate Information" is defined to mean:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan.

11 U.S.C. § 1125(a).  Several courts have used the following nonexclusive list of information to be included in a disclosure statement as a guideline to determine whether a disclosure statement contains "adequate information":

A.   The circumstances that gave rise to the filing of the bankruptcy petition(s);

B.   A complete description of the available assets and their value;

C.   The anticipated future of the debtor(s);

D.   The source of the information provided in the disclosure statement;

10

E.      A disclaimer, which typically indicates that no statements of information concerning the debtor(s) or its (their) assets or securities are authorized, other than those set forth in the disclosure statement;

F.      The condition and performance of the debtor(s) while in chapter 11;

G.      Information regarding claims against the estate(s);

H.      A liquidation analysis setting forth the estimated return that creditors would receive under a chapter 7 case;

I.      The accounting and valuation methods used to produce the financial information in the disclosure statement;

J.      Information regarding the future management of the debtor(s), including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor(s);

K.      A summary of the plan of reorganization;

L.      An estimate of all administrative expenses, including attorneys' fees and accountants' fees;

M.      The collectability of any accounts receivable;

N.      Any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations to accept or reject the plan;

O.      Information relevant to the risks being taken by the creditors and interest holders;

P.      The actual or projected value that can be obtained from avoidable transfers;

Q.      The existence, likelihood and possible success of nonbankruptcy litigation;

R.      The tax consequences of the plan; and

S.      The relationship of the debtor(s) with affiliates.

In re Puff, No. 10-01877, 2011 WL 2604759, *3-4 (Bankr. N.D. Iowa June 30, 2011); In re Cardinal Congregate I, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990); In re Dakota Rail, Inc., 104 B.R. 138, 142-43 (Bankr. D. Minn. 1984); In re Scioto Valley Mortgage Co., 88

11

B.R. 168 (Bankr. S.D. Ohio 1988); In re Metrocraft Publishing Servs., Inc., 39 B.R. 567 (Bankr. N.D. Ga. 1984).

25.     Fundamentally, a disclosure statement should not be approved where it contains inaccurate or misleading information.  See In re Nat'l Health & Safety Corp., No. 99-18339DWS, 2000 WL 968778, at *1 (Bankr. E.D. Pa. July 5, 2000) (disclosure statement not acceptable when it contains statements that are "misleading and/or slanted" and "omit[s] material information and misrepresented other information in a heavy-handed sales job."); Dakota Rail, Inc., 104 B.R. 138 (disclosure statement is misleading where it contains glowing opinions or projections, having little or no basis in fact or contradicted by known fact); In re New Haven Radio, Inc., 18 B.R. 977 (Bankr. D. Conn. 1982) (cumulative effect of inaccurate, misleading, inappropriate or defamatory claims and statements in disclosure statement offered sufficient basis to warrant rejection of entire statement).

26.     The Disclosure Statement fails to provide adequate or accurate information regarding, among other things, the following:

- The value of the Debtors' assets;

- The priority of the B Noteholder's liens;

- Potential causes of action against the Debtor's insiders;

- The treatment of Holder's cash collateral;

- The source of Galaxy's proposed capital contributions; and

- The anticipated future of the reorganized debtors.

27.     The Disclosure Statement fails to provide adequate or accurate (or in certain circumstances, any) information regarding the items listed above.  Therefore, the

Disclosure Statement does not meet the requirements of section 1125 of the Bankruptcy Code.  See Scioto Valley Mortgage Co., 88 B.R. at 172; Metrocraft Publishing Servs., Inc., 39 B.R. at 568.

       **1.      The Disclosure Statement does not provide adequate or accurate information regarding the value of Debtors' assets.**

28.     Galaxy asserts that the Debtor's real property is worth only $3.5 million. However, Galaxy provides no basis for this valuation other than it is Galaxy's "opinion." See Plan at 12; see also Disclosure Statement § 3.02 (Galaxy "disagrees" with Debtor's scheduled value of $12.8 million because it "believes" the value of the real property is "approximately $3,500,000.00").  Galaxy has provided no explanation for the apparent precipitous decline in the value of the Debtor's hotel.

29.     Galaxy's entire plan is predicated on it being able to show the Debtor's hotel is worth $3.5 million.  The fact that Galaxy has filed the Plan and Disclosure Statement without providing any evidence regarding the value of the Debtor's property – only Galaxy's "belief" that the Debtor's real property is worth $3.5 million – smacks of bad faith and is entirely misleading.  If Galaxy had no basis for its belief, it should reveal this to the Court and the Debtor's creditors (at which point the Court should decline to approve the Disclosure Statement).  As the Court is no doubt aware, if the deficiencies with the Disclosure Statement and Plan were somehow cured, and Galaxy were to continue to insist on its exceptionally low value, there will be extensive litigation regarding the value of the Debtor's real property.[4]  If the Court is going to allow Galaxy to burden the Court, the estate, and the Debtor's creditors with a valuation fight based

---

[4] Even if Holder or the B Noteholder make an election under section 1111(b) of the Bankruptcy Code, valuation will still be an issue as Galaxy will be required to provide Holder and the B Noteholder with the present value of their interests in the Debtor's Property.  Holder is in the process of obtaining an appraisal in the event that the value of the Debtor's property continues to be an issue.

merely on the "belief" of a party who acquired a *de minimus* claim for the sole purpose of lowballing the Debtor and its creditors, then the Court should require Galaxy to provide the basis for its "belief," and if it is based upon an appraisal or some other report, include such supporting documents with the Disclosure Statement.  If Galaxy cannot, the Court should decline to approve the Disclosure Statement.

> **2.  The Disclosure Statement is misleading and fails to provide adequate information regarding the B Noteholder's liens.**

30.     The Disclosure Statement contains inaccuracies and/or misleading statements concerning the B Noteholder's claim.  In particular, the Disclosure Statement provides that the B Noteholder's claim is junior to Holder's claim.  See, e.g., Disclosure Statement at 13, n.5 (providing that B Noteholder's liens are second in priority to Holder's liens).  Galaxy is mistaken.  Holder's claim and the B Noteholder's claim are secured by the same security documents and mortgage.  The Disclosure Statement cannot be approved until it is revised to reflect this.

> **3.  The Disclosure Statement fails to provide information regarding the claims against the Debtor's insiders.**

31.     The Disclosure Statement does not provide any information regarding the value of potential causes of action against the Debtor's insiders, including avoidance actions.  Although the Plan provides that the Reorganized Debtor will retain the estate's causes of action, see Plan §8.01, it does not include this asset in the Disclosure Statement's liquidation analysis.  A cursory review of the Debtor's operating reports reflects that the Debtor has made more than $200,000 in payments to insiders during the pendency of the Debtor's case (some portion of which would have been the secured creditors' cash collateral), see, e.g., Debtor's Monthly Operating Report for June 2020

14

[ECF No. 171] at 21-24, as well as made payments to third parties for the benefit of the Debtor's prinicipal.  See, e.g., id. at 13 (reflecting a payment of $652.52 on June 24, 2020 to Mercedes Benz Financing, which Holder understands was for the benefit of Samira Khan).  None of these transfers have been authorized by the Court and likely support, at a minimum, causes of action for avoidance and recovery under sections 549 and 550 of the Bankruptcy Code – such claims might either inure to the benefit of the Debtor's secured creditors or general unsecured creditors – and should disclosed and considered in the Disclosure Statement's chapter 7 liquidation analysis.[5]

### 4.     The Disclosure Statement fails to provide adequate information regarding Holder's cash collateral.

32.     As noted above, Holder's cash collateral totaling $822,993.68 is administered by Berkadia for the benefit of Holder.  The Debtor's Plan and Disclosure Statement provide no information regarding how these funds are to be treated under the Plan.  (Holder submits that the only permissible treatment of such funds is to allow Holder to apply them to Holder's claim upon the effective date of a plan.)  The Disclosure Statement cannot be approved until the Disclosure Statement and Plan are amended to reflect this treatment.

### 5.     The Disclosure Statement fails to provide adequate information regarding the anticipated future of the Reorganized Debtor or the source of Galaxy's proposed capital contributions.

33.     Regarding the Reorganized Debtor's future operations and sources of funding, the Disclosure Statement provides only that Galaxy will contribute $2 million - $3 million to rehabilitate and reopen the hotel and obtain a "new nationally-recognized brand name franchise."  Disclosure Statement § 6.02.  No information has been provided

---

[5] Section 8.01 of the Plan provides that Galaxy will receive the benefit of those claims.

US2008 17339476 4

about the source of Galaxy's anticipated capital contributions (and if such contributions have to be financed, whether Galaxy has actually obtained commitments for the financing).  Similarly, the Disclosure Statement provides no information regarding whether another "nationally-recognized brand name franchise" is available for this hotel. This is especially important as the Plan proposes to pay unsecured creditors from capital contributions and future operations.  Furthermore, it is unclear what the Debtor's projected revenues and expenses, including any rehabilitation costs, will be.

34.     The Disclosure Statement should provide information regarding the Reorganized Debtor's future business operations, projected performance, and the basis for such predictions, as well as the sources of any capital contributions, the ability of Galaxy to make such contributions and the terms of any potential financing and commitments related to the same.

**B.      The Disclosure Statement Cannot Be Approved Because the Plan is Patently Unconfirmable.**

35.     The Disclosure Statement cannot be approved because significant portions of the Debtor's Plan are patently unconfirmable and should be disapproved pursuant to Sections 1125 and 1129 of the Bankruptcy Code.

36.     A court may refuse to approve a disclosure statement when it is apparent that the plan accompanying the disclosure statement is not confirmable.  In re Atlanta West VI, 91 B.R. 620, 622 (Bankr. N.D. Ga. 1988).  To confirm a plan that is patently unconfirmable on its face would be a wasteful and fruitless exercise that only serves to further delay the debtors' plan to reorganize.  Id.

37.     The Plan is patently unconfirmable for, among others, the following reasons:

16

- Improper subordination of B Noteholder's secured claim;

- Failure to properly classify claims, resulting in a plan with no impaired class that can satisfy section 1129(a)(10) of the Bankruptcy Code;

- Failure to provide for application of Holder's collateral to Holder's secured claim; and

- Failure to provide Holder and the B Noteholder with the indubitable equivalent of their interests in the Debtor's property. Therefore, the Court should not approve the Disclosure Statement.

### 1.    The Plan improperly Subordinates B Noteholder's Liens.

38.     As noted above, the Plan provides that B Noteholder's claim is secured by a second priority lien in the Debtor's property.  <u>See</u> Plan at 13.  B Noteholder's claim is secured by the same mortgage and security documents as Holder's claim.  <u>See</u> Claims Register No. 12.  Any treatment of B Noteholder's liens that subordinates it to Holder's liens is impermissible and must be revised.

### 2.    The Plan Improperly Seeks to Solicit the Votes of Priority Tax Claimants and will not have an impair accepting class.

39.     The Plan classifies three separate priority tax claimants as impaired classes.  <u>See</u> Plan, Arts. IV & V.  The Disclosure Statement provides that Galaxy intends to rely on the votes of these impaired classes and Class 7 (equity interests) to satisfy Bankruptcy Code section 1129(a)(10) (emphasis added).  Bankruptcy Code section 1129(a)(10) requires that at least one class of claims that is impaired under a plan has accepted the plan, without consideration of acceptance by any insider.  For the reasons set forth below, there will be no such class that supports the Plan.

17

40.     Section 1123(a) of the Bankruptcy Code provides that a plan shall "designate, subject to section 1122 of this title, classes of claims, <u>other than claims of a kind specified in section 507(a)(2), 507(a)(3), or 507(a)(8) of this title</u>, and classes of interests." 11 U.S.C. § 1123(a)(1).  As a result, tax claims asserting priority under section 507(a)(8) cannot be classified in a plan and their claims cannot be considered for purposes of 1129(a)(10).  <u>Cf.</u> <u>In re Gregory Boat Co.</u>, 144 B.R. 361, 364-65 (Bankr. E.D. Mich. 1992) (holding that section 507(a)(8) claims do not constitute a class under 1123(a)(1) and therefore the Court would not consider whether they had accepted the plan under section 1126(c)).  Moreover, the Debtor's sole equity holder makes up Class 7 under the Plan – and is therefore, an insider under section 101(31) of the Bankruptcy Code.  As a result, Class 7's claims cannot be relied upon to satisfy section 1129(a)(10). Classes 4 and 5 will not support the Plan – leaving Class 6 as the only possible accepting class.  However, under the terms of the Plan as proposed by Galaxy, the deficiency claims of Holder and the B Noteholder will vote with Class 6 – meaning that Class 6 will not accept the Plan either.  Even if Classes 4 and 5 make elections under section 1111(b), Holder understands that there will not be sufficient support from the holders of Class 6 claims to carry the class.  As a result, Galaxy is submitting a Plan that will not have an impaired accepting class – there is no point in wasting the Court's, the estate's, and creditors' time with soliciting this Plan.

>        **3.      Failure to provide Holder and the B Noteholder with the indubitable equivalent of their interests in the Debtor's property.**

41.     The Debtor's Plan does not appear to allow Holder to apply the $822,993.68 of Debtor's cash collateral administered by Berkadia for the benefit of

18

Holder.  To the extent the Plan does not allow Holder to apply these funds to its claim, the Plan violates section 1129(b) by not providing for the return of Holder's collateral or providing Holder with the indubitable equivalent of its secured claim.

42.     Moreover, the Plan impermissibly values the real property securing the Holder's and the B Noteholder's liens at $3.5 million based on the "opinion" of Galaxy. The Plan purports to provide Holder with a note in the amount of $3.5 million, payable in one year.  As noted above, Holder is in the process of obtaining an appraisal.  Although the Debtor's property may not be worth its scheduled amount, it is surely worth significantly more than $3.5 million.  In any event, to be confirmed over the objections of Holder or the B Noteholder, under section 1129(b), the Plan must provide the claimants with the present value of their interests or provide them with the indubitable equivalent of their claims – something the Plan does not do.[6]  If the Court is prepared to invite a valuation dispute based solely on an unsubstantiated opinion of an opportunistic developer that purchased a claim merely to give itself standing in the Debtor's case, then Holder requests that, in addition to requiring Galaxy to provide the basis for lowball valuation and otherwise correct the Disclosure Statement and Plan, the Court provide Holder with an opportunity to take discovery regarding the value of the Debtor's property as well any other issues relevant to confirmation, such as feasibility.

## III.  Conclusion

For all of the foregoing reasons, Holder respectfully requests that the Court: (a) deny Galaxy's request for approval of the Disclosure Statement; and (b) grant such

---

[6] Holder reserves its rights to object to confirmation of the Plan for this and any other reason stated in this Objection or otherwise.

other relief as the Court deems just, equitable, and proper.

Date:    August 19, 2020.

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP


/s/ *Colin M. Bernardino*
Colin M. Bernardino
Georgia Bar No. 054879
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile:  (404) 815-6555

*Counsel for Holder*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 19, 2020, true and correct copies of the foregoing were served electronically via the Court's CM/ECF notice system to all parties of record.

/s/ *Colin M. Bernardino*
Colin M. Bernardino