## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re:

CHEYENNE HOTEL INVESTMENTS, LLC,

     Debtor.

Case No. 19-15473 KHT
Chapter 11

## ORDER DENYING PLAN CONFIRMATION
## AND CONVERTING CASE TO CHAPTER 7

THIS MATTER came before the Court for confirmation of Chapter 11 Plans filed by Debtor Cheyenne Hotel Investments, LLC ("Debtor") and by Creditor Galaxy Construction, LLC ("Galaxy"). Following an evidentiary hearing, the Court took the matters under advisement. The Court is now prepared to rule, and hereby finds and concludes as follows:

## I.     JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (L) and (O) because the matter concerns Chapter 11 plan confirmation as well as conversion to Chapter 7. The Court may enter a final judgment on such matters. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

## II.    BACKGROUND AND CASE HISTORY

Debtor owns property at 2875 Zeppelin Road, Colorado Springs, Colorado on which a 104-room hotel (the "Hotel") is situated. In 2008, Debtor began operating the Hotel under the tradename "Homewood Suites by Hilton – Colorado Springs Airport," pursuant to a franchise agreement (the "Franchise Agreement") with Hilton Franchise Holding, LLC ("Hilton").

In June 2011, Debtor filed a Chapter 11 bankruptcy case, number 11-25379-ABC. Its Chapter 11 plan was confirmed in August 2013, and pursuant to that plan, Debtor assumed the Franchise Agreement. The Chapter 11 case was dismissed July 23, 2014, for failure to pay quarterly fees.

In 2016, Debtor's principal and 100% owner, Tanveer Khan, died after an extended illness. His ownership interest passed to his wife, Samira Khan ("Ms. Khan"). Ms. Khan was less familiar with Debtor's operations and understandably distracted during Mr. Khan's illness and following his death. Debtor's operations suffered.

ORDER DENYING CONFIRMATION, CONVERTING CASE
Case No. 19-15473 KHT

In August 2017, Hilton notified Debtor of defaults under the Franchise Agreement and provided Debtor an opportunity to cure.  Hilton extended Debtor's cure period, and Debtor completed some but not all the improvements Hilton required.  Debtor and Hilton continued to discuss required improvements.  Debtor attempted to obtain financing to complete the remaining required improvements, which were estimated to cost $1.8 million, but the financing required Hilton to issue a comfort letter or extend the Franchise Agreement, both of which Hilton declined to do.  Based on her discussions with Hilton's representatives and her understanding of similarly situated hotels, Ms. Khan believed Debtor had completed sufficient improvements to maintain the franchise.  But, on June 7, 2019, Hilton notified Debtor the Franchise Agreement would terminate on July 1, 2019.  Shortly thereafter, Hilton modified its reservation system so no one could reserve a room at the Hotel after July 1.

On June 26, 2019, Debtor filed its voluntary petition for relief under Chapter 11.  One week later, on July 3, 2019, Debtor filed its *Motion for Entry of Expedited Order in aid of 11 U.S.C. §§ 362 and 365* (docket #11).  In support of its Motion, Debtor argued Hilton's termination of the Franchise Agreement was wrongful, and its reservation system modification and other actions in furtherance of termination of the Franchise Agreement violated the automatic stay.  The Court held a preliminary hearing on July 9 (docket #23) and an evidentiary hearing on July 17 (docket #36).  On July 22, the Court entered its Order Denying Motion (docket #42), holding under *In re Cowen*, 849 F.3d 943, 949 (10th Cir. 2017), the automatic stay did not require Hilton to undo the pre-petition modification to its reservation system.  At that point, further relief required further proceedings (such as Debtor's filing a motion for turnover or an adversary proceeding for injunctive and other relief for wrongful termination of the Franchise Agreement, or Hilton's filing a motion for relief from stay to pursue additional actions).

Meanwhile, Debtor obtained two extensions of time to file its schedules and statement of affairs, which were not filed on its petition date.  The final extension of time (docket #38) required the documents be filed by July 22, 2019.  On July 25, 2019, when the documents were not filed, the Court entered an Order to Show Cause why the case should not be dismissed.  Debtor filed its schedules and statement of financial affairs later that day (docket ##45-50), and the Court discharged its Order to Show Cause (docket #61).

On August 16, 2019, Hilton filed its *Motion for Entry of an Order Permitting Hilton and Certain Third Party Vendors to take the Non-Debtor De-Identification Actions or, in the Alternative, Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)* (docket #65).  In its Motion, Hilton asserted the Franchise Agreement required both Debtor and Hilton to take certain actions upon termination ("De-identification Actions") so the Hotel would no longer be identified with Hilton.  Debtor's De-identification Actions included returning Hilton's proprietary materials and removing distinctive features so members of the public would not be confused as to whether they were staying at a Hilton-franchised hotel.  Hilton's De-identification Actions included removing its computer management system, which had property management, reservation system, accounting, staffing, maintenance, and sales and marketing components, as well as a program allowing guest Internet access.  Hilton's De-identification Actions required the

involvement of third parties, including IT contractors and suppliers such as Dell and AT&T. By Order entered September 12, 2019 (docket #74), the Court granted Hilton's Motion. On September 24, 2019, Debtor appealed the Court's Order denying Debtor's Motion for Entry of Expedited Order (docket #84) and sought a stay pending appeal (docket #87). By Order entered October 4, 2019 (docket #93), the Court denied a stay pending appeal.

On October 25, 2019, Hilton filed its Proof of Claim, number 10, asserting a right to payment under the Franchise Agreement, including attorney's fees and costs, of not less than $1,221,947. Hilton later amended its claim to $1,894,865.28. Hilton's claim is unsecured.

Also on October 25, 2019, Debtor's two senior secured lenders filed proofs of claim. Proof of Claim number 11 was filed by Situs Holdings, LLC ("Situs") as special servicer for, and on behalf of, Wells Fargo Bank, N.A., as Trustee for the registered holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates Series 2006-C1 ("Wells Fargo," also referred to as "A Noteholder"), in the amount of $7,074,780.13, secured by Debtor's real and personal property, including cash and all income arising out of operation of the Hotel. Debtor deposits its cash into a lockbox account administered by Situs and Berkadia Commercial Mortgage, Inc. for the benefit of Wells Fargo, which account has funds of $234,993.26 (as set forth in Wells Fargo's proof of claim, presumably as of the petition date) to $822,993.68 (as stated by the parties, as of an unspecified date post-petition). Proof of Claim number 12 was filed by Situs as special servicer for, and on behalf of, U.S. Bank National Association, as Trustee for the registered holders of Mezz Cap Commercial Mortgage Trust 2006 C-4 Commercial Mortgage Pass-Through Certificates, Series 2006 C-4 ("U.S. Bank," also referred to as "B Noteholder"), in the amount of $624,399.15, also secured by Debtor's real and personal property.[1]

On November 14, 2019, Debtor filed Monthly Operating Reports for periods through July 31, 2019 (docket #112); August 31, 2019 (docket #113); and September 30, 2019 (docket #114). The Monthly Operating Reports are required to be filed within 21 days after the end of each calendar month.[2] Debtor's reports were, therefore, untimely filed.

On December 5, 2019, the U.S. Trustee filed a Motion to Dismiss Debtor's bankruptcy case or convert it to one under Chapter 7 (docket ##117, 118). As cause for such relief, the U.S. Trustee noted Debtor's Monthly Operating Reports were untimely filed, incomplete, contained substantial errors, revealed inappropriate and unexplained financial transactions (including payments to Ms. Khan and to other entities owned by Ms. Khan, and payments to Berkadia under a lockbox agreement), and showed a

---

[1] The original borrower on both the A Note and the B Note was CS Hospitality, LLC. Apparently in 2008, Debtor acquired the real property and the Hotel from the original borrower and assumed the secured loans.

[2] *See* U.S. Department of Justice, Office of the United States Trustee, Districts of Colorado and Wyoming, Operating Guidelines and Reporting Requirements of the United States Trustee for Chapter 11 Debtors in Possession and Chapter 11 Trustees, available at https://www.justice.gov/ust-regions-r19/region-19-chapter-11-0.

ORDER DENYING CONFIRMATION, CONVERTING CASE
Case No. 19-15473 KHT

substantial and continuing loss and diminution of the estate. The U.S. Trustee also noted Debtor's failure to file a plan of reorganization. The 120-day exclusive period within which only a debtor may file a plan had expired in October 2019. The Court set the U.S. Trustee's Motion for preliminary hearing to be held January 30, 2020.

On January 28, 2020, Galaxy filed a Notice of Transfer of Claim other than for Security (docket #127). Ridgeway Communications Enterprises transferred its claim, number 6, in the amount of $2,388.00, to Galaxy. Galaxy then filed an Objection to the U.S. Trustee's Motion, asking that Debtor's case not be dismissed and that Galaxy be given the opportunity to propose a plan.

On January 30, 2020, the date of the preliminary hearing on the U.S. Trustee's Motion, Debtor filed an amended Monthly Operating Report for periods through July 31, 2019 (docket #132); August 31, 2019 (docket #133); and September 30, 2019 (docket #134). Debtor also filed Monthly Operating Reports for periods through October 31, 2019 (docket #135); November 30, 2019 (docket #136); and December 31, 2019 (docket #137). The Court set the U.S. Trustee's Motion for evidentiary hearing to begin April 8, 2020. On February 20, 2020, Debtor filed its Monthly Operating Report for the month ending January 31, 2020 (docket #144).

On March 20, 2020, Debtor filed a Motion to Vacate the hearing on the U.S. Trustee's Motion (docket #145). In its Motion, Debtor represented that it and Hilton had participated in mediation, and the parties were close to reaching a mutually acceptable settlement. The Court continued the hearing on the U.S. Trustee's Motion to July 15, 2020 (docket #146). Debtor also sought dismissal of its appeal of the Court's Order denying Debtor's Motion for Expedited Order, and the U.S. District Court granted dismissal (docket #148).

On April 20, 2020, the Colorado Department of Revenue ("CDR") filed a Motion for Entry of Order Requiring Return of Trust Funds Misappropriated during Bankruptcy Case (docket #150). In its Motion, CDR asserted Debtor was required to hold in trust sales tax collected from its retail activities and income tax withheld from its employees; such trust fund taxes were not property of Debtor's estate nor subject to seizure by any creditor and must be paid to CDR; Situs had swept Debtor's accounts throughout 2019 and had thereby taken possession of trust fund taxes Debtor collected in 2019; and Debtor had not filed necessary returns nor provided an accounting to show where the 2020 trust fund taxes were being held. CDR asked that both Debtor and Situs be required to release the trust fund taxes. CDR then resolved its issues with Situs (docket #151). The Court entered an order requiring Debtor to pay trust fund taxes to CDR (docket #152).

On June 8, 2020, Debtor filed a motion seeking authorization for Debtor to conduct an examination of Situs under Fed. R. Bankr. P. 2004 (docket #154). In its Motion, Debtor represented that Situs maintained a Lockbox Account into which Debtor was required to deposit all receipts from its operations; that Debtor had not received an accounting of funds received in the Lockbox Account, nor a current payoff statement for the liens. The Court granted Debtor's Motion (docket #155). The Court also continued the hearing on

ORDER DENYING CONFIRMATION, CONVERTING CASE
Case No. 19-15473 KHT

the U.S. Trustee's Motion to Dismiss or Convert to August 31, 2020, to allow time for completion of the 2004 examination of Situs (docket ##160, 161).

On June 24, 2020, Galaxy filed its Chapter 11 Plan (docket #158) and Disclosure Statement (docket #157). Perhaps nothing unites like a common enemy, and Hilton, Situs, and Debtor worked together to resolve their differences in favor of a plan to be proposed by Debtor. Situs (docket #175), Hilton (docket #176), Debtor (docket #177), and the U.S. Trustee (docket #174) objected to the adequacy of Galaxy's Disclosure Statement. Situs filed a notice of its election under 11 U.S.C. § 1111(b)(2) with respect to Galaxy's plan (docket #186-87). At the hearing on the adequacy of Galaxy's Disclosure Statement, the Court set September 11, 2020, as the deadline for Debtor to file its Chapter 11 Plan and Disclosure Statement. The Court set an October 16, 2020, hearing on the adequacy of both Galaxy's and Debtor's Disclosure Statements. Finally, the Court held the U.S. Trustee's Motion in abeyance pending further hearing on confirmation of any pending plan. See Minutes of Proceeding (docket #196).

Meanwhile, on July 23, 2020, Debtor filed its Monthly Operating Reports for periods ending February 29, 2020 (docket #166); March 31, 2020 (docket #167); April 30, 2020 (docket #168); May 31, 2020 (docket #169); and June 30, 2020 (docket #171), and an amended Monthly Operating Report for the period ending February 29, 2020 (docket #170).

By the next hearing, October 16, 2020, Galaxy had filed its Second Amended Chapter 11 Plan (docket #202) and Disclosure Statement (docket #201), to which Hilton (docket #205), Situs (docket #206), and Debtor (docket #209) objected, and Situs filed a notice of § 1111(b) election with respect to Galaxy's plan (docket ##214, 215). And, Debtor had filed its Chapter 11 Plan (docket #199) and Disclosure Statement (docket #200), to which the U.S. Trustee (docket #203) filed an objection, and Hilton (docket #204) and Situs (docket #207) filed responses reserving their rights. The Court granted parties time to amend their plans and disclosure statements, and the Court set November 30, 2020, for hearing on the adequacy of Debtor's and Galaxy's Disclosure Statements (docket #218). The Court also entered an Order to Show Cause (docket #216), requiring Debtor to file all outstanding Monthly Operating Reports by October 23, 2020, failing which the case would be converted to one under Chapter 7 without further opportunity for hearing.

On October 22, 2020, Debtor filed its Monthly Operating Reports for the periods ending July 31, 2020 (docket #220); August 31, 2020 (docket #221); and September 30, 2020 (docket #222); and an Amended Monthly Operating Report for the period ending August 31, 2020 (docket #223). On October 27, at the hearing on the Court's Show Cause Order, the Court instructed Debtor and its representatives that failure to timely file any future report would result in immediate conversion of the case (docket #227).

During November 2020 and into December 2020, Debtor and Galaxy continued to file amended and modified plans and disclosure statements, which drew continued objections. By December 11, 2020, the objections to the adequacy of each party's disclosure statement had largely been resolved. The Court set deadlines for Debtor to

ORDER DENYING CONFIRMATION, CONVERTING CASE
Case No. 19-15473 KHT

submit its amended disclosure statement and for the parties to submit an agreed-upon order regarding solicitation materials and procedures, and the Court set an evidentiary hearing on confirmation of both plans, to be held February 3 and 4, 2021 (docket #263). By Order entered December 14, 2020 (docket #269), the Court approved the adequacy of Galaxy's Fifth Amended Disclosure Statement filed December 10, 2020 (docket #258), and Debtor's [Third] Amended Disclosure Statement filed December 11, 2020 (docket #265). Galaxy's Plan and Disclosure Statement were sent to creditors and parties in interest December 15-16, 2020 (docket ## 272-275); Debtor's were sent December 17, 2020 (docket ##276-278).

Meanwhile, Debtor timely filed its October (docket #238) and November (docket #271) Monthly Operating Reports.

On January 14, 2021, Debtor filed a Notice of Plan Supplement (docket #279). Galaxy filed its Modification to its Fifth Amended Chapter 11 Plan (docket #280). On January 19, 2021, Debtor filed its Third Amended Chapter 11 Plan (docket #283). Debtor timely filed its December Monthly Operating Report (docket #284).

On January 25, 2021, the parties filed their ballot reports. Galaxy reported the following (docket #285):

- Class 1-A, secured tax claims, received no votes.
- Class 1-B, priority claims, received no votes.
- Class 2-A, Wells Fargo [Situs], voted to reject the plan.
- Class 2-B, U.S. Bank [Situs], voted to reject the plan.
- Class 3-A, small unsecured claims, an impaired class, four creditors with claims totaling $2,647.06 voted, with all voting to accept.
- Class 3-B, general unsecured claims, an impaired class, three creditors (including Galaxy) with claims totaling $114,122.88 voted, with all voting to accept.
- Class 3-C, Hilton, voted to reject the plan.

Debtor reported the following (docket #286):

- Class 1-A, secured tax claims, received no votes.
- Class 1-B, priority claims, received no votes.
- Class 2-A, Wells Fargo [Situs], an impaired class, voted to accept the plan.
- Class 2-B, U.S. Bank [Situs], an impaired class, voted to accept the plan.
- Class 3-A, small unsecured claims, an unimpaired class, one creditor with a claim of $998.22 voted, with a vote to accept.
- Class 3-B, general unsecured claims, an unimpaired class, one creditor with a claim of $4,181.02 voted to accept, and two creditors with claims totaling $109,941.86 voted to reject.
- Class 3-C, Hilton, an impaired class, voted to accept.

Also on January 25, parties filed objections to confirmation, with the U.S. Trustee (docket #289) and Galaxy (docket #291) objecting to Debtor's plan (docket #283), and the U.S.

ORDER DENYING CONFIRMATION, CONVERTING CASE
Case No. 19-15473 KHT

Trustee (docket #290), Debtor (docket #292), Situs (docket #287), and Hilton (docket #299) objecting to Galaxy's plan (docket #257).

Interstate Roofing had voted to accept Galaxy's plan and to reject Debtor's plan. Although he presumably does not represent Barlow Inc., d/b/a Interstate Roofing, Inc. ("Interstate Roofing"), on January 28, 2021, Debtor's counsel improperly filed a Notice of Withdrawal of Ballots (docket #293), in which Interstate Roofing purportedly withdrew all ballots it had submitted on Debtor's plan and Galaxy's plan. A few days later, on February 2, 2021, Debtor's counsel filed a Notice of Withdrawal of Claim (docket #303) on behalf of Interstate Roofing, in which Interstate Roofing purportedly acknowledged its claims against Debtor were satisfied. Galaxy objected to the withdrawal (docket #305), arguing it was an improperly motivated change in vote. Attached to Galaxy's objection was an email from Interstate Roofing's counsel stating Interstate Roofing had not received prior notice of Debtor's bankruptcy filing, and Interstate Roofing intended to pursue recovery from Ms. Khan, against whom Interstate Roofing held a civil theft judgment, including foreclosing on Ms. Khan's home.

On February 2, 2021, Debtor filed its Fourth Amended Plan (docket #304). The principal modification made by the Third Amended Plan was to provide for Classes 3-A (Small Unsecured Creditors) and 3-B (General Unsecured Creditors) to be paid in full concurrently with the confirmation of the Plan. Debtor submits that this change means that those classes of creditors are unimpaired.

From February 4-10, the Court held a four-day evidentiary hearing on confirmation of both Debtor's Plan and Galaxy's Plan, following which the matters were taken under advisement (docket ##308, 309, 310, 313). The Court will discuss each plan further below.

## III.   DISCUSSION

### A.   Confirmation Requirements.

Section 1129 (a) of the Bankruptcy Code sets forth the following requirements of plan confirmation:

(1)   The plan complies with the applicable provisions of this title.

(2)   The proponent of the plan complies with the applicable provisions of this title.

(3)   The plan has been proposed in good faith and not by any means forbidden by law.

(4)   Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

(5)   (A)   (i)   The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after

ORDER DENYING CONFIRMATION, CONVERTING CASE
Case No. 19-15473 KHT

> confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and
>
> (ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and
>
> (B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

(6) Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

(7) With respect to each impaired class of claims or interests—

> (A) each holder of a claim or interest of such class or interests
>
> (i) has accepted the plan; or
>
> (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; or
>
> (B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

(8) With respect to each class of claims or interests—

> (A) such class has accepted the plan; or
>
> (B) such class is not impaired under the plan.

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

> (A) with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;
>
> (B) with respect to a class of claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, each holder of a claim of such class will receive—
>
> (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
>
> (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;

ORDER DENYING CONFIRMATION, CONVERTING CASE
Case No. 19-15473 KHT

    (C)  with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim regular installment payments in cash—

       (i)  of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

      (ii)  over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and

     (iii)  in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b)); and

    (D)  with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in subparagraph (C).

(10)  If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

(11)  Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

(12)  All fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan.

(13)  The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of this title, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of this title, at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits.

(14)  If the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.

(15)  In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan—

    (A)  the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

    (B)  the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year

period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

(16) All transfers of property under the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

11 U.S.C. § 1129(a). If all requirements other than section 8 are met, the plan may be confirmed under the "cramdown" provisions of 11 U.S.C. § 1129(b). As discussed below, because the Court cannot find all requirements other than section 8 are met as to either plan, the Court need not discuss the requirements of § 1129(b).

Each plan proponent bears the burden of proving the above requirements by a preponderance of the evidence. *In re Paige*, 685 F.3d 1160, 1177 (10th Cir. 2012). The Court will discuss each plan proponent's plan separately.

**B.    Galaxy's Plan.**

The Court will discuss each requirement of § 1129(a) in turn.

1.    <u>Plan complies with the Bankruptcy Code</u>.

To satisfy this requirement, Galaxy must show it has satisfied applicable provisions of the Bankruptcy Code, including § 1122(a), which provides the plan "may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of the class." 11 U.S.C. § 1122(a).

Section 1122(a) does not require a plan proponent to place all similar claims in the same class, but it does require plan proponents to articulate a reasonable basis for separate classification. *See, e.g., In re LightSquared Inc.*, 513 B.R. 56, 83 (Bankr. S.D.N.Y. 2014) ("[S]eparate classification of otherwise substantially similar claims and interests is appropriate so long as the plan proponent can articulate a 'reasonable' (or 'rational') justification for separate classification"). And, § 1122(a) prohibits a plan proponent from separately classifying similar claims to "gerrymander" a consenting class. *In re Deming Hospitality, LLC*, No. 11-12-13377 TA, 2013 WL 1397458 (Bankr. D.N.M. April 5, 2013) (quoting *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1279 (5th Cir.1991)); *In re Autterson*, 547 B.R. 372, 397-98 (Bankr. D. Colo. 2016) (following *Deming Hospitality*).

Galaxy's Plan creates three separate classes of unsecured claims. Class 3-A, an administrative convenience class for claims not exceeding $1,000, will be paid 80% of their claims shortly after the plan's effective date. Class 3-B, general unsecured claims, will be paid in full in six quarterly installments. Class 3-C is Hilton's claim. Hilton will receive payment of $200,000 on or before the Effective Date, and payment in the amount of $1,000,000 on or before December 31, 2021. Hilton's recovery is thereby capped at $1,200,000, regardless of the allowed amount of its claim. The Court finds Galaxy has

ORDER DENYING CONFIRMATION, CONVERTING CASE
Case No. 19-15473 KHT

not satisfied the requirements of the Bankruptcy Code for its separate classification of Classes 3-A and 3-C.

Regarding Class 3-A, Galaxy has not articulated a reasonable basis for separating out an administrative convenience class to be paid 80% of their claims when the general unsecured creditors will be paid their claims in full within 1.5 years. Galaxy appears to have sufficient cash available to it to satisfy the claims of this class in full. The Court finds the separate classification and treatment was proposed for the purpose of gerrymandering an impaired, consenting class.

Regarding Class 3-C, Galaxy has not articulated a reasonable basis for separating out the claim of Hilton from the claims of general unsecured creditors. The origin of the claim, under the Franchise Agreement, does not affect its priority or treatment under the Bankruptcy Code and therefore does not provide a reasonable basis for separation. Further, Galaxy's intent to object to the claim does not provide a reasonable basis for separation. *See Bustop Shelters of Louisville, Inc. v. Classic Homes, Inc.*, 914 F.2d 810, 814 (6th Cir. 1990) (rejecting separate treatment of claims subject to an adversary proceeding); *In re Paolini*, 312 B.R. 295, 314 (Bankr. E.D. Va. 2004) (collecting cases); *In re Midway Invs.*, 187 B.R. 382, 392 (Bankr. S.D. Fla. 1995) (holding the separate classification of a disputed unsecured claim was an improper classification and an attempt to gerrymander the voting process). The Court finds separating Hilton into its own class was an improper attempt to remove Hilton from the general unsecured creditor class.

The Court further finds Galaxy's proposed treatment of Hilton's claim violates § 1123(a)(4), which requires a plan to "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." Here, Hilton's claim is treated less favorably than similarly situated unsecured creditors.[3]

The Court finds Galaxy has not shown compliance with applicable sections of the Bankruptcy Code. This requirement is not satisfied.

2.      Plan proponent complies with the Bankruptcy Code.

To satisfy this requirement, Galaxy must show it has complied with applicable disclosure and solicitation requirements of § 1125. *See In re Cajun Elec. Power Coop., Inc.*, 150 F.3d 503, 513 n.3 (5th Cir. 1998). Here, the Court finds Galaxy has provided sufficient information in the Disclosure Statement approved by this Court. Situs argues the modified plan Galaxy filed renders the Disclosure Statement insufficient, because the change in maturity date impacts the feasibility of the plan. The Court disagrees. The Court finds Galaxy has shown its compliance with the Bankruptcy Code, and this requirement is satisfied.

---

[3]  Similarly, Galaxy's treatment of Hilton's claim would constitute unfair discrimination in violation of § 1129(b)(1). *See, e.g., In re Dow Corning Corp.*, 244 B.R. 696 (Bankr. E.D. Mich. 1999). As discussed above, the Court does not discuss § 1129(b) because the applicable requirements of § 1129(a) are not satisfied.

ORDER DENYING CONFIRMATION, CONVERTING CASE
Case No. 19-15473 KHT

3.      Good faith.

In determining whether Galaxy has proceeded in good faith, the Court considers the standards set forth in *In re Madison Hotel Associates*, 749 F.2d 410, 424-25 (7th Cir. 1984):

> Though the term "good faith," as used in section 1129(a)(3), is not defined in the Bankruptcy Code, . . . the term is generally interpreted to mean that there exists "a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code." . . . Thus, for purposes of determining good faith under section 1129(a)(3), . . . the important point of inquiry is the plan itself and whether such plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

*Id.*

The objecting parties argue Galaxy has acted in bad faith because it was not an original creditor involved in the case; instead, it chose to become involved when it purchased a relatively small claim.  The Court finds the purchase of the claim to be a business decision not indicative of bad faith, particularly given the posture of the case at the time of the claim purchase:  Debtor's exclusivity period had expired, no plan had been filed, and the U.S. Trustee had filed a motion to dismiss.

The objecting parties further argue Galaxy's plan does not require Galaxy to implement its plan, and Galaxy is improperly attempting to gain control of Debtor's equity. The Court disagrees.  As an initial matter, the Court finds it unlikely Debtor's equity would have substantial value to any potential purchaser, but it would have particularly low value to Galaxy, which is already well established in the hotel industry and would not need a corporate shell nor any remaining goodwill of a hotel company with no existing flag and a poor operational history.  But more importantly, the Court found Galaxy's representatives to be credible witnesses who appear committed to successful operation of the Hotel.  The Court further finds sufficient indicia of good faith in Galaxy's efforts to obtain confirmation, including the expenditure of substantial amounts of time and attorney's fees, to support a conclusion Galaxy intends to consummate its plan if confirmed.

While courts have held classification gerrymandering is an indicia of a lack of good faith, good faith is to be determined by the totality of the circumstances.  *See, e.g., In re Sandy Ridge Dev. Corp.*, 881 F.2d 1346 (5th Cir. 1989) (citing *In re Texas Extrusion Corp.,* 844 F.2d 1142, 1160 (5th Cir.), *cert. denied,* 488 U.S. 926 (1988).  While the Court held Galaxy's plan improperly gerrymandered the classes, that finding alone does not support a finding of bad faith.  Accordingly, the Court finds Galaxy has sufficiently shown it is proceeding in good faith, and this requirement is satisfied.

4.      Plan payments to be approved by the Court.

Section 1129(a)(4) requires this Court exercise substantive control over fees and

ORDER DENYING CONFIRMATION, CONVERTING CASE
Case No. 19-15473 KHT

costs related to confirmation and the Chapter 11 case.  The Court has some concerns about the fees and costs to be paid in this case, as discussed below in connection with Debtor's plan, but those concerns have nothing to do with Galaxy's plan.  The Court finds this requirement satisfied.

### 5.    Individuals to serve for Debtor.

This section requires disclosure the management of the reorganized debtor, the appointment of which must be consistent with the interests of creditors, equity holders, and public policy.  Galaxy has disclosed its proposed management, which has substantial experience with successful hotel operations.  The Court finds Galaxy has satisfied this requirement.

### 6.    Governmental rate approval.

This requirement is inapplicable.

### 7.    Best interests of creditors.

To satisfy this requirement, Galaxy must show each impaired creditor or interest holder will receive at least as much in reorganization as it would in liquidation.  Situs argues Galaxy does not satisfy this requirement as to Wells Fargo and U.S. Bank.  The Court first considers whether Wells Fargo and U.S. Bank are "impaired" under § 1124.

Section 1124(1) provides a class is not impaired if the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest."  11 U.S.C. § 1124(1).  Any alteration of a creditor's rights constitutes impairment.  *See, e.g., In re Union Meeting Partners*, 160 B.R. 757, 771 (Bankr. E.D. Pa. 1993) ("'[I]mpairment' is a term of art and includes virtually any alteration of a claimant's rights . . . even where a creditor's rights are improved by a plan.").  Galaxy's plan, including the most recent modification, does alter Wells Fargo's and U.S. Bank's rights.  Accordingly, those claims and classes are impaired.

Wells Fargo and U.S. Bank both filed elections under § 1111(b).  Galaxy must therefore show they "will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims."  11 U.S.C. § 1129(a)(7)(B).  Galaxy has not met its burden of proving Wells Fargo and U.S. Bank are receiving the present value of their interests in the estate's interest in the property securing their claims, including the Hotel, fixtures, cash held by Debtor, cash held by Berkadia, and proceeds of causes of action, given the delay inherent in the claims objection and allowance process and the time value of money.  "A debtor's promise of future payments is worth less than an immediate payment of the same total amount because the creditor cannot use the money right away, inflation may cause the value of the dollar to decline before the debtor pays, and there is always some risk of nonpayment."  *Till v. SCS Credit Corp.*, 541 U.S. 465, 472 (2004).  Galaxy has, therefore not satisfied this requirement.

13

ORDER DENYING CONFIRMATION, CONVERTING CASE
Case No. 19-15473 KHT

      8.    <u>Acceptance</u>.

To satisfy this requirement, Galaxy must show each impaired class has accepted the plan. Wells Fargo, U.S. Bank, and Hilton are impaired classes that did not accept the plan. This section is not satisfied.

      9.    <u>Administrative Claims</u>.

Section 1129(a)(9)(A) requires that holders of administrative claims be paid "cash equal to the allowed amount of such claim" on the "effective date of the plan," unless the holder of a particular claim agrees to different treatment. It is difficult to determine what the administrative claims will be in this case, because Debtor's counsel has not filed an application for approval of his fees, and Debtor's accounts payable records are not reliable as to post-petition expenses. But, the Court found Galaxy's witnesses to be credible as to Galaxy's intent and ability to pay administrative claims in this case, whatever amount they may reasonably be allowed. The Court therefore finds Galaxy has satisfied this requirement.

      10.    <u>Acceptance by Impaired Class</u>.

Section 1129(a)(10) requires the affirmative acceptance of the plan by at least one impaired class of claims, with acceptance determined without counting any acceptance by an insider. While Galaxy's ballot report shows acceptance by two impaired classes, 3-A and 3-B, the Court finds if the claims were properly classified, Galaxy's plan would not have been accepted by the class of all unsecured creditors, given Hilton's vote to reject. The Court cannot find Galaxy has satisfied this requirement.

      11.    <u>Feasibility</u>.

To satisfy this requirement, Galaxy must show confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

Courts have considered the following factors when determining whether a plan is feasible:

> (1) the adequacy of the capital structure; (2) the earning power of the business; (3) economic conditions; (4) the ability of management; (5) the probability of the continuation of the same management; and (6) any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan.

*In re Rocky Mountain Land Co. LLC*, Case No. 12–21643 HRT, 2014 WL 1338292, at *11-12 (Bankr. D. Colo. Apr. 3, 2014) (citing *Teamsters Nat'l Freight Ind. Negotiating Comm. v. U.S. Truck Co., Inc. (In re U.S. Truck Co., Inc.)*, 800 F.2d 581, 589 (6th Cir.

ORDER DENYING CONFIRMATION, CONVERTING CASE
Case No. 19-15473 KHT

1986); *In re Gulph Woods Corp.*, 84 B.R. 961, 973 (Bankr. E.D. Pa.1988)); *In re Valley View Shopping Ctr., L.P.*, 260 B.R. 10, 33 (Bankr. D. Kan. 2001).

Here, the Court found Galaxy's witnesses credible. The Court finds Galaxy has shown it is a well-established company with substantial experience in the hotel industry and substantial access to cash, financing, and capital contributions. The Court specifically finds Galaxy has shown it would be able to meet the financial commitments required of its plan. The objecting parties point out Galaxy has not yet secured a flag commitment from Hyatt House. But, Galaxy's choice to wait for plan confirmation before completing the application process is appropriate, given the time and expense required to submit an application, which would be wasted if the plan were not confirmed. And, Galaxy's experience in the hotel industry and initial letter from Hyatt House support Galaxy's belief it will be successful in obtaining the flag of its choice. While the economy in general, and the hospitality industry in particular, is still rebounding from the effects of COVID, it appears likely the Hotel's occupancy and revenues will increase, given the anticipated increase in travel once vaccination is more widespread, and particularly given the desirability of the Hotel's location and the Colorado Springs area. The Court finds it much more likely than not that Galaxy would be able to obtain a Hyatt House or equivalent flag, and that Galaxy would be able to accomplish the upgrades required of any PIP Hyatt House or any other franchisor would require. Considering all the evidence before it, the Court finds Galaxy's plan to be feasible. Galaxy has satisfied this requirement.

           12.    <u>Payment of U.S. Trustee fees</u>.

Galaxy has satisfied the U.S. Trustee's objections and has satisfied this requirement.

           13.    <u>Payment of retiree benefits</u>.

This section is inapplicable.

           14.    <u>Domestic Support Obligations</u>.

This section is inapplicable.

           15.    <u>Individual Debtor's Disposable Income</u>.

This section is inapplicable.

           16.    <u>Nonprofit entities</u>.

This section is inapplicable.

**C.    Debtor's Plan.**

Here, too, the Court will discuss each requirement in turn.

ORDER DENYING CONFIRMATION, CONVERTING CASE
Case No. 19-15473 KHT

    1.    <u>Plan complies with the Bankruptcy Code</u>.

While Debtor's plan proposes the same classifications as Galaxy's plan, Debtor had a reasonable basis for making those classifications, which are based on different treatment to which each affected creditor has consented. Prior to Debtor's post-solicitation modification, class 3-A, the administrative convenience class, would be paid 80% of their claims, which the Court questions for Debtor just as it did for Galaxy. But, Debtor satisfied this concern by modifying the plan to pay both class 3-A and 3-B in full. And, the Court cannot find Debtor gerrymandered class 3-A to obtain a consenting class when Debtor had the impaired consenting classes of Wells Fargo, U.S. Bank, and Hilton. The Court finds Debtor's classification complies with § 1122(a). Debtor has satisfied this requirement.

    2.    <u>Plan proponent complies with the Bankruptcy Code</u>.

Debtor has failed to comply with the requirements of the Bankruptcy Code throughout this case. Debtor filed its schedules late, and its representatives now maintain the financial information contained on the schedules was substantially inaccurate. Debtor filed its monthly operating reports late, and its representatives now maintain the financial information contained in the monthly reports was substantially inaccurate. Postpetition taxes have not been paid. Debtor did not obtain approval of its use of cash collateral. Debtor paid an outside accountant without making required disclosures or obtaining court approval of employment. The list of Debtor's failures to comply with the Bankruptcy Code is extensive and inexcusable, particularly for a debtor in its second Chapter 11 case with experienced bankruptcy counsel.

Hilton and Situs both acknowledged Debtor's failures to comply with the Bankruptcy Code, but they argue the Court should not consider any failure other than those related to plan confirmation. Even if the Court were to limit its consideration to issues of disclosure and solicitation, the Court would still find Debtor has not complied with the requirements of the Bankruptcy Code.

Regarding disclosure, the basic financial information sent to creditors in this case and incorporated into Debtor's disclosure statement was later revealed to be materially inaccurate. Debtor's disclosure of potential avoidance actions against Debtor's insiders was revealed to be insufficient. Debtor's disclosure of its potential administrative claims was insufficient because Debtor was unable to state accurately what amounts it may owe postpetition creditors. Debtor's counsel has not filed an application to approve his fees, which reduced the amount of information available to creditors. Debtor's disclosure statement asserts Debtor has an agreement in place with Radisson, and Debtor and Radisson have successfully negotiated a favorable PIP. In truth, Debtor has no agreement with Radisson. The application to Radisson was made in the name of TK Hospitality LLC, a separate entity owned by Ms. Khan. When Radisson realized the Hotel was not owned by TK Hospitality LLC but was in fact owned by Debtor, Radisson suspended the application, as set forth in a letter to Ms. Khan and Debtor's counsel. Debtor's failure to make full and accurate disclosures is "antithetical to the spirit of the Bankruptcy Code. The three most important words in the bankruptcy system are:

disclose, disclose, disclose." *In re Sanchez*, 372 B.R. 289, 305 (Bankr. S.D. Tex. 2007). The fundamental inaccuracies and nondisclosures nullify every vote cast on Debtor's plan.

Regarding solicitation, the Court finds a high likelihood of impropriety in Debtor's communications with Interstate Roofing, a creditor that had voted in favor of Galaxy's plan and against Debtor's plan, but then withdrew its votes after Ms. Khan promised to pay its claim in full. Ms. Khan initially testified the money to pay Interstate Roofing's claim would come from the Hotel's operations, from room revenues. The next day, on redirect, Ms. Khan testified the money would come from her own funds. She made no attempt to explain her prior testimony to the contrary. The Court finds Ms. Khan completely incredible. But, the Court does believe she would have paid Interstate Roofing from Debtor's funds if given the opportunity to do so. Ms. Khan has failed to honor any distinction among Debtor, herself, and her other companies.

Whether the Court limits its consideration to issues relating to disclosure and solicitation, or whether the Court considers Debtor's conduct throughout the case, Debtor has not shown it has complied with the Bankruptcy Code. This factor is not satisfied.

3.    <u>Good faith</u>.

Debtor has the burden of proving "a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re Madison Hotel Associates*, 749 F.2d 410, 424-25 (7th Cir. 1984). "[C]ourts have looked to whether the debtor intended to abuse the judicial process and the purposes of the reorganization provisions," *Travelers Ins. Co. v. Pikes Peak Water Co. (In re Pikes Peak Water Co.)*, 779 F.2d 1456, 1460 (10th Cir. 1985), and "whether a plan is proposed with honesty and sincerity." *In re Riviera Drilling & Exploration Co.*, No. 10-11902-HRT, 2012 WL 6719591, at *5 (Bankr. D. Colo. Dec. 19, 2012) (citing *In re Global Water Techs., Inc.*, 311 B.R. 896, 903 (Bankr. D. Colo. 2004)).

Throughout this bankruptcy case, money has flowed freely among Debtor and its insiders – Ms. Khan, TRN Hotel Management & Development Group (a single-member LLC owned by Ms. Khan), TK Hotels, LLC (which owns and operates a hotel in Canon City, Colorado), and Cheyenne Hotels, LLC (which owns and operates a hotel in Salida, Colorado). Debtor's financial records are so inaccurate, and each of Debtor's representatives so incredible, that the Court finds it likely the insider transactions are much higher than represented in the schedules and monthly operating reports. Debtor has not operated as a fiduciary for its creditors, but instead has operated as a piggybank for Ms. Khan and her related entities. Critical components of Debtor's plan are the settlements Debtor has reached with Situs and Hilton. Those settlements provide in the event of default (which is likely, as discussed below), a receiver will be appointed for the Hotel, and the receiver is required to retain the services of TRN Hotel Management, resulting in more funds funneled into the hands of Ms. Khan. This is not consistent with the objectives and purposes of the Bankruptcy Code. Debtor, acting through Ms. Khan, has not proposed a plan with honesty and sincerity, but instead has abused the judicial process and the purposes of the reorganization provisions. Debtor has not acted in good

ORDER DENYING CONFIRMATION, CONVERTING CASE
Case No. 19-15473 KHT

faith.  This requirement is not satisfied.

4.    <u>Plan payments to be approved by the Court</u>.

Section 1129(a)(4) requires the Court to exercise substantive control over fees and costs related to confirmation and the chapter 11 case.  All professionals employed by the estate must have their employment approved and fees reviewed.  Here, Debtor did not seek approval of the employment of its accountant, and the Court has not been able to review those fees.  The Court did seek approval of the employment of counsel, but counsel has not yet submitted a fee application.  And it is not clear Debtor's settlements with Hilton and Situs would allow the Court to review the fees and charges of those entities.  While some or all of the Court's concerns may be able to be addressed with future filings, the Court cannot at this time find Debtor has satisfied this requirement.

5.    <u>Individuals to serve for Debtor</u>.

This section requires disclosure the management of the reorganized debtor, the appointment of which must be "consistent with the interests of creditors . . . and with public policy."  11 U.S.C. § 1129(a)(5).  "[I]f the bankruptcy court is to have a role beyond the ministerial one of counting ballots, then the public policy requirement would enable it to disapprove plans in which demonstrated incompetence or malevolence is a hallmark of the proposed management."  7 *Collier on Bankruptcy* ¶ 1129.02(5)(b).

Here, demonstrated incompetence has been a hallmark of Debtor's management.  From the initial evidentiary hearing on Debtor's Motion for Expedited Order, through the evidentiary hearing on confirmation of Debtor's plan, Ms. Khan has demonstrated an inability to portray accurately Debtor's financial condition.  At a minimum, the sworn statements of Ms. Khan, Doug Davidson (CPA) and Sonia Rathour (Debtor's executive assistant) demonstrated a fundamental lack of knowledge regarding Debtor's operations and financial condition.  As such, the Court must conclude Debtor's management is unfit to serve as a fiduciary for its creditors.  The Court cannot find continued appointment of Ms. Khan and TRN Hotel Management to be in the best interests of creditors or consistent with public policy.  This factor is not satisfied.

6.    <u>Governmental rate approval</u>.

This requirement is inapplicable.

7.    <u>Best interests of creditors</u>.

To satisfy this requirement, Debtor must show each impaired creditor or interest holder who has not accepted the plan will receive at least as much in reorganization as it would in liquidation.  Here, the unsecured creditors are the only ones who are impaired and did not accept the plan, and Debtor now proposes to pay them in full, with interest, on the effective date of the plan.  Debtor has satisfied this requirement.

18

ORDER DENYING CONFIRMATION, CONVERTING CASE
Case No. 19-15473 KHT

        8.    <u>Acceptance</u>.

To satisfy this requirement, Debtor must show each impaired class has accepted the plan. Initially, Debtor's unsecured creditor class did not accept the plan. But, Debtor subsequently modified its plan to provide for payment in full to its unsecured creditors other than Hilton. Debtor's efforts to accomplish acceptance and lack of impairment may provide further evidence of a lack of good faith, but the Court finds Debtor has satisfied the requirement of acceptance.

        9.    <u>Administrative Claims</u>.

This section 1129(a)(9)(A) requires that holders of administrative claims be paid "cash equal to the allowed amount of such claim" on the "effective date of the plan," unless the holder of a particular claim agrees to different treatment. Here, the party likely to hold the largest administrative claim, Debtor's counsel, has agreed to be paid at a later time. It is difficult to determine what the other administrative claims will be in this case, because Debtor's accounts payable records do not reliably reflect post-petition expenses. But, the Court finds it more likely than not that the other administrative claims would be paid or their holders would agree to different treatment. The Court therefore finds Debtor has satisfied this requirement.

        10.    <u>Acceptance by Impaired Class</u>.

Section 1129(a)(10) requires the affirmative acceptance of the plan by at least one impaired class of claims, with acceptance determined without counting any acceptance by an insider. Debtor has satisfied this requirement.

        11.    <u>Feasibility</u>.

Section 1129(a)(11) requires as a condition of confirmation that the court find that confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."

Here, the Court finds Debtor has no likelihood of successful reorganization. Debtor was operating unprofitably even before COVID. Debtor lacks competent management and accurate financial records. Debtor lacks a nationally-recognized flag, which is a key component of a successful hotel operation. Debtor has not shown a likelihood that it will successfully obtain a nationally-recognized flag within a reasonable time following confirmation of its plan. Radisson, which initially approved a flag on the false representation that the Hotel was owned by TK Hospitality, has placed Debtor's application on hold and will require further review. Even if Debtor were to obtain a nationally-recognized flag, Debtor would need to refinance its debts to pay Wells Fargo, U.S. Bank, and Hilton. Debtor has demonstrated no present or future ability to obtain financing. Ms. Khan does not have the personal resources to provide substantial assistance. Ms. Khan's other hotels are themselves struggling and unable to offer assistance.

ORDER DENYING CONFIRMATION, CONVERTING CASE
Case No. 19-15473 KHT

In this case, confirmation will be followed swiftly by default and the subsequent appointment of a receiver. That may be acceptable to Wells Fargo and U.S. Bank, which would be placed in the same position as before the bankruptcy case was filed, and to Hilton, which would improve its position by becoming a secured creditor, but it is not acceptable to the Court. Providing for the eventuality of receivership does not make the plan feasible. *See In re Danny Thomas Properties II Ltd. P'ship*, 241 F.3d 959, 964 (8th Cir. 2001) ("We do not believe that the 'drop dead' provisions of the reorganization plan can save this otherwise infeasible plan."). This requirement is not satisfied.

12.    Payment of U.S. Trustee fees.

Debtor has satisfied the U.S. Trustee's objections and has satisfied this requirement.

13.    Payment of retiree benefits.

This section is inapplicable.

14.    Domestic Support Obligations.

This section is inapplicable.

15.    Individual Debtor's Disposable Income.

This section is inapplicable.

16.    Nonprofit entities.

This section is inapplicable.

**D.    Conversion to Chapter 7.**

The Court has not yet held a hearing on the U.S. Trustee's Motion to Dismiss or Convert, but the Court finds further evidence and argument on the issue is not needed. Further, 11 U.S.C. § 105(a) allows the Court to raise the issue *sua sponte*. *See, e.g., Finney v. Smith (In re Finney)*, 992 F.2d 43, 45 (4th Cir.1993) ("A bankruptcy court may act under § 1112(b) on the motion of a party in interest or *sua sponte* as 'necessary and appropriate' under § 105.") (citation omitted); *In re Congoleum Corp.*, 414 B.R. 44, 60 (D.N.J. 2009) ("Under § 105(a), a court may convert or dismiss a case for cause *sua sponte*."); *In re Starmark Clinics, LP*, 388 B.R. 729, 736 (Bankr. S.D. Tex. 2008) (after the 2005 amendment to 11 U.S.C. § 1112(b) and the 1986 amendment to 11 U.S.C. § 105, the bankruptcy court has the power to dismiss a Chapter 11 case *sua sponte*). Here, the Court finds *sua sponte* conversion of Debtor's case to one under Chapter 7 to be both necessary and appropriate.

Evidence admitted at the confirmation hearing demonstrated "cause" for dismissal or conversion under § 1112(b). The Court finds Debtor has suffered substantial and

ORDER DENYING CONFIRMATION, CONVERTING CASE
Case No. 19-15473 KHT

continuing loss to the estate, as well as diminution of the estate, and has no reasonable likelihood of rehabilitation.  Debtor has failed to pay taxes owed post-petition.  Debtor has failed to confirm a Chapter 11 plan.  Debtor has failed to file timely and accurate monthly operating reports.  Finally, Debtor, through its principal, has acted in bad faith throughout the pendency of this case.

  The Court has considered whether dismissal or conversion would be in the best interest of creditors.  In this case, creditors would best be served by conversion, rather than dismissal, as a Chapter 7 trustee would be able to liquidate Debtor's assets efficiently and make appropriate distributions to creditors.  More importantly, a Chapter 7 trustee would be able to conduct a full investigation of Debtor's financial condition, determine the status and amount of Debtor's liabilities, and pursue recovery of any avoidable transfers that may have been made.  The Court will therefore convert Debtor's case to one under Chapter 7.

## IV. CONCLUSION

  For the reasons discussed above, the Court cannot confirm Galaxy's Plan or Debtor's Plan.  The Court finds cause to convert Debtor's case to one under Chapter 7 and finds conversion to be in the best interest of creditors and the estate.

  Accordingly,

  IT IS HEREBY ORDERED that confirmation of Galaxy's Plan is DENIED.

  IT IS FURTHER ORDERED that confirmation of Debtor's Plan is DENIED.

  IT IS FURTHER ORDERED that Debtor's case is CONVERTED TO CHAPTER 7.

Dated March 23, 2021      BY THE COURT:

                Kimberley H. Tyson
                United States Bankruptcy Judge